UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ODDO, HARRY HYADUCK,SR.,LARRY KAHHAN and GERALD DWYER, on Behalf of Themselves and All Other Persons Similarly Situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>T-MOBILE USA INC.<br><br>          Defendant. | Civil Action No.:<br><br><br>*Civil Action*<br><br><br>CLASS ACTION COMPLAINT AND JURY DEMAND |

Plaintiffs Christopher Oddo, Harry Hyaduck, Sr., Larry Kahhan and Gerald Dwyer, by and through their undersigned counsel, Nagel Rice, LLP, individually and on behalf of all others similarly situated individuals (the "Class"), as defined below, allege the following facts and claims upon personal knowledge and upon information and belief as to all other matters as follows:

I.    IDENTIFICATION OF PARTIES

1.    The parties to this action are (i) Christopher Oddo ("Oddo"), a citizen of New Jersey, residing in the town of West New York, New Jersey 07093, (ii) Harry Hyaduck, Sr.("Hyaduck"), a citizen of Georgia, residing in the town of Jonesboro, Georgia, 30236, (iii) Larry Kahhan ("Kahhan"), a citizen of Nevada, residing in the town of Henderson, Nevada 89044, and Gerald

1

Dwyer ("Dwyer"), a citizen of Pennsylvania, residing in the town of Phoenixville, Pennsylvania, 19460.

2. Defendant, T-Mobile USA Inc. ("T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington 98006.

## II.  THE NATURE OF THE ACTION

3. This is a class action lawsuit brought for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits and all other relief on behalf of Plaintiffs and all other similarly situated individuals (the "Class" or "Class Members").

4. Based upon T-Mobile's representations that the rates offered with respect to certain plans were guaranteed to last for life or as long as the customer wanted to remain with that plan, each Plaintiff and the Class Members agreed to these plans for wireless cellphone service from T-Mobile. However, in May 2024, T-Mobile, unilaterally did away with these legacy phone plans and switched Plaintiffs and the Class to more expensive plans without their consent.

5. Plaintiffs bring this action on behalf of themselves and all other persons who were injured by T-Mobile's failure to abide by the expressly stated and advertised promise that customers who signed up and paid for the T-Mobile ONE Plan, Simple-Choice Plan, Magenta®Plan, Magenta®Max Plan, Magenta® 55 + Plan, Magenta® Amplified Plan or ,Magenta® Military Plan would pay the promised rates for life.

6.    On January 5, 2017, then CEO John Legere and COO Mike Sievert kicked off T-Mobile's "Un-carrier Next" press event during the Consumer Electronics Show, an annual trade show organized by the Consumer Technology Association (CTA) and held at the Las Vegas Convention Center. During his presentation, Legere stated: "Today, T-Mobile introduced the Un-contract for T-Mobile ONE – and notched another industry first with the first-ever price guarantee on an unlimited 4G LTE plan. With the Un-contract, T-Mobile signs, and customers hold all the power. Now, T-Mobile ONE customers keep their price until THEY decide to change it. T-Mobile will never change the price you pay for your T-Mobile ONE plan. When you sign up for T-Mobile ONE, only YOU have the power to change the price you pay.(Emphasis added)

7.    At that time, T-Mobile US was providing wireless services to 71.5 million customers through the T-Mobile and Metro PCS brands.

8.    In 2020 T-Mobile and Sprint completed their merger, making T-Mobile the country's second largest of the three remaining nationwide cell phone networks. To obtain regulatory approval for the Sprint takeover, T-Mobile pledged not to raise rates on plans for three years.

9.    Now that the three years have elapsed and the wireless network landscape has continued to contract leaving consumers with less choices, T-Mobile has reneged on its promises to its customers and raised rates for all the plans with rates that were promised to be guaranteed for life.

### III.   JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), because at least one class member is of diverse citizenship from the Defendant, a corporation incorporated in the State of Delaware, with its principal place of business in Washington, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

11.   The court has personal jurisdiction over the parties because T-Mobile is registered to do business in the State of New Jersey and can be served with process through its registered agent, Corporation Service Company located at Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard, Ewing New Jersey 08628. Additionally, T-Mobile conducts substantial business in New Jersey and T-Mobile has purposefully availed itself of the benefits and protections of the District of New Jersey by continuously and systematically conducting substantial business in this judicial district and has agents and representatives that can be found in this State. More specifically, T-Mobile has caused injury to Plaintiffs and class members in New Jersey, has numerous stores and other sales facilities in New Jersey, directs advertising to New Jersey, and has systematic and continuous contacts with New Jersey.

12.    Venue is proper in this District under 28 U.S.C. §
1391 because Plaintiff Oddo and numerous class members reside
in New Jersey, T-Mobile's conduct has injured Class Members
residing in this District. T-Mobile transacts business within
this District, and has sales facilities in this District
including, but not limited to, stores in Newark, Edison,
Clifton, Union, and Jersey City. Accordingly, this court has
jurisdiction over this action and venue is proper in this
Judicial District.

13.    The Federal Courthouse located in Newark, New Jersey
is the proper vicinage for this matter because a Class
Representative is located in this vicinage as is a large T-
Mobile store in Newark, New Jersey.

### IV.    <u>PLAINTIFFS' EXPERIENCES</u>

14.    Plaintiff Christopher Oddo ("Oddo") has been a T-
Mobile customer since 2010. In 2017, he signed up for the 2
Lines ONE Plan with "All In" Promo when it was first offered.
He was impressed with the press release issued on January 5,
2017 which provided: "Today, T-Mobile introduced the Un-contract
for T-Mobile ONE- and notched another industry first with the
first-ever price guarantee on an unlimited 4G LTE plan. With the
Un-contract, T-Mobile signs, and customers hold all the power
. . "Now, T-Mobile ONE customers keep their price until THEY
decide to change it. T-Mobile will never change the price you
pay for your T-Mobile ONE plan. When you sign up for T-Mobile

ONE, only YOU have the power to change the price you pay." See
**https://www.t-mobile.com/news/press/un-carrier-next**)

15.    Further, although T-Mobile indicated that they could
change, suspend or terminate services, the company specifically
excluded "Rate Plans with the price-lock guarantee (including
the "Un-Contract Promise")" from the right to change, suspend,
or terminate services.

16.    Despite these promises, on May 22, 2024, Oddo
received a text message from T-Mobile stating:



17.    As Oddo currently has three lines, he is now being
charged an additional $15 per month which violates the price
lock guarantee.

18.   On May 23, 2024, Oddo filed a complaint with the FCC which was recorded as Request #7051841. That Complaint was forwarded to T-Mobile, which responded on June 4, 2024.

19.   In that response, T-Mobile contends that "As costs and inflation continue to rise, for the first time in nearly a decade, T-Mobile has made some small adjustments to the pricing of some of our older rate plans. . . With Un-contract, T-Mobile committed to its customers that if we were to increase prices and customers chose to leave as a result, T-Mobile would pay the customers' final month's recurring service charge, as long as we are notified within 60 days. Consistent with that commitment, customers who activated on an eligible rate plan between January 5, 2017 and April 27, 2022, can request to have their final months' qualifying service charge reimbursed if their rate plan price increases and they choose to cancel service. Customers simply need to request reimbursement within 60 days of the price increase." . . "As for customers with concerns about T-Mobile's Price Lock guarantee, it is important to note that customers with Price Lock are not impacted by the change. On April 28, 2022, T-Mobile began offering Price Lock on new account activations on qualifying rate plans. For customers who activated on a qualifying plan between April 28, 2022 and January 17, 2024, Price Lock guarantees that accounts activated with a qualifying rate plan, within the enrollment period, would not be subject to a price increase, so long as the account remained

in good standing and the customer remained on the qualifying rate plan…" (see letter attached as <u>Exhibit A</u>)

20.    This language is contrary to the language provided at the time Oddo obtained his Plan in 2017 which stated that the Un-Contract promise precluded T-Mobile from changing the rates and was treated as having a Price Lock. Now T-Mobile is merely willing to reimburse a qualifying service charge if you decide to leave because of the price increase.

21.    T-Mobile has breached its agreement with Oddo who has suffered monetary injury as a result of T-Mobile's false representations and bait and switch tactics.

22.    Harry Hyaduck, Sr. ("Hyaduck") had been a Sprint customer since May 14, 2000, but switched to T-Mobile more than three years ago after seeing a television commercial advertising that he was eligible for a Plan that would never increase in price, included all fees and taxes and could only be cancelled at his option. Since he learned of its availability, Hyaduck has had a Magenta® 1.0 Military Plan at a cost of $100 per month for four lines. That price was inclusive of all discounts and taxes.

23.    Hyaduck received an email from T-Mobile stating that on July 5, 2024 his plan, which was to never increase, would increase to $120 per month.

24.    When he called customer service they agreed that he understood the plan correctly, but they were going to increase their price anyway.

25.  On June 5, 2024 his monthly AutoPay was $138.50 but his bill scheduled for payment on July 5, 2024 will be $158.50[1].

26.  T-Mobile has breached its agreement with Hyaduck who has suffered monetary injury as a result of T-Mobile's false representations.

27.  Larry Kahhan had two different plans with T-Mobile prior to January 2017, when he viewed the video announcement by then CEO John Legere about the ONE Plan. See : **https://www.youtube.com/watch?v=LVQuD_fTpcE**

28.  He switched to the ONE Plan as soon as it became available to him on or about August 28, 2017 when he enrolled in the ONE Plan Unlimited 55+ Plan. He paid $60 a month (which included $5/line autopay discount). His bill has remained the same $60 price through June 14, 2024.

29.  On May 22, 2024 he received a text informing him of the price increase. See below:

---

[1] **This price included his internet and discounted Netflix which he got through T-Mobile as well.**

T-Mobile: For the first time in nearly a decade, we're making a change to the price of some of our monthly service plans. Starting on 06/05/24, your rate plan(s) will increase by $5 per line per month. You'll keep all the benefits you currently enjoy, and your rate plan type and bill due date remain the same. For more information, visit sms.t-mobile.com/RO4SsYPz

30.   On June 25, 2024, Kahhan received an email from T-Mobile indicating that his bill was ready for review, and it indicated that he owed $70 per month. This was the first increase since August 28, 2017.

31.   The only other emails Kahhan has received from T-Mobile, other than billing notices, concerned special offers and promotions. He never received any notification from T-Mobile regarding their Terms and Conditions. After receiving notice of

the price increase, he requested a copy of the terms and conditions that were in effect at the time he signed up for the ONE Plan Unlimited 55+, which has not been provided. He also requested proof that the price change was authorized after T-Mobile contacted him subsequent to his filing of complaints with the FCC, the FTA, the Better Business Bureau, the DOJ (anti-trust division) and the Nevada Attorney General about the price increase. T-Mobile has never provided him with this information.

32. **T-Mobile continues to insist that its sole obligation is to pay his final bill if he cancels within 60 days due to a price increase. However, that was not part of the advertising that he relied upon or one of the terms when he signed up for his plan.**

33. T-Mobile has breached its agreement with Kahhan, who has suffered monetary injury as a consequence of T-Mobile's false representations.

**34.** Gerald Dwyer signed up at a T-Mobile kiosk in person at Costco in 2017 because he heard about the great deal the company was offering. He was told that the 55+rate plan would be $60 for two lines tax and fees included and that the price would never change. **This incentive was the primary reason that he switched from AT&T to T-Mobile.**

35. After having this Plan for 7 years he was notified of a rate increase via text message. See below:

11





36.  Dwyer is now paying an additional $10 a month which is not consistent with the promised terms.

37.  T-Mobile has breached its agreement with Dwyer, who has suffered monetary injury as a result of T-Mobile's false representations.

38.  None  of  the  four  proposed  Class  Representatives received  a  copy  of  T-Mobile's  Terms  and  Conditions  indicating that  there  was  a  mandatory  arbitration  provision  and  class action  waiver  either  when  they  signed  up  for  their  plans  or  via mail,  email  or  text  message  at  any  time  since  through  the present.

39.  Each  of  the  proposed  Class  Representatives  has  opted out  of  the  mandatory  arbitration  provision  and  class  action waiver  upon  counsel's  conducting  a  google  search  and  finding this  provision  in  the  "Terms  and  Condition"  dated  May  15,  2023.

### V.   T-MOBILE ENGAGED IN DELIBERATELY MISLEADING BEHAVIOR

40.  The  experiences  of  the  named  Plaintiffs  is  not  unique. Numerous  wireless  customers  were  motivated  to  switch  to  T-Mobile based  upon  the  Press  Events  and  Videos  first  promoted  at  the  Las Vegas  Trade  Show.  See  https://www.t-mobile.com/news/press/un-carrier-next)  The  extensive  advertising  by  T-Mobile  in  print  and on  television  also  motivated  customers  to  switch  to  what  have now  become  legacy  plans  that  T-Mobile  customers  are  no  longer able  to  keep.

41.  T-Mobile  is  well  aware  that  its  customers  are  angry at  being  duped  by  its  false  advertising.

42.  Numerous  customer  have  posted  complaints  on  T-Mobile's website.  For  example:

**Why did I get a text about an increase for the One plan?**

- **magenta10266661**
**This is illegal by T-Mobile we.all l have contracts with price locks I spoke to a representative today. She confirmed. I did have a price lock plan that they could not**

**change the price until I changed it. I never changed the plan. Need to contact class action lawsuit, Hagens Berman They did the last class action lawsuit against T-Mobile for data breach . If enough people  file a complaint or request the class action lawsuit There should be a class action lawsuit. Our contracts are illegally binding and this is illegal. We all have contracts. We all have voice recordings of the contracts. T mobile is doing this illegally.**

- **magenta10266661**

**I have the senior plan two lines for $70 Which has price locked guaranteed until I changed the plan? I never changed my plan if you have not changed your plan. And they are charging you extra money. You need to contact class action lawsuit. I recommend Hagen Bergman I know they did a class action against t mobile in won. If everybody Contacts this law firm. I'm sure we can get a class action going and fight for what's right. We have contracts and they are legally binding. And they all been voice recorded, so get on that phone or go ahead and contact the attorneys HAGENS BERMAN If they can't do it, I'm sure they will find Somebody who will. Wehave to fight, don't just take this. You have contracts.**

**AI_Flipflop**

**Never believe to anyone including T-Mobile. The promise is broken so that T-Mobile can get money to pay for the new acquired the U.S. Cellular for $4.4 billion**

- **rickp**
- 

**I'm still not fully convinced they can do this even if they are ok with the  reputational damage that comes with it. My clear memory of signing up for the One plan in 2018 was that it could never change, that "T-Mobile was signing on the dotted line" and all this weasel-wording about just paying your last month if they break the promise must have come way later and shouldn't be enforceable for those older plans. The original un-contract language even says, in part,**

**CAN T-MOBILE CHANGE OR TERMINATE MY SERVICES OR THIS AGREEMENT?**

**Yes. Except as described below for Rate Plans with the price-lock guarantee (including the "Un-Contract Promise"),**

**...**

**If you are on a price-lock guaranteed Rate Plan, we will not increase your monthly recurring Service charge ("Recurring Charge") for the period that applies to your Rate Plan, or, if no specific period applies, for as long as you continuously remain a customer in good standing on a qualifying Rate Plan.**

**"**

**Which appears to bind T-Mobile to the original terms.**

- **T-Mobile breaking promises to seniors who were offered price-lock guarantee for life on 55+ rate plans**

# T-Mobile breaking promises to seniors who were offered price-lock guarantee for life on 55+ rate plans

- **WFREYVOGEL**

In 2017, I signed up for a 55+ rate plan with the assurance that my monthly rate was price-locked for life. This incentive was a primary reason that I switched from AT&T to T-Mobile. Now, T-Mobile is trying to raise my monthly rate by $10.00. When I spoke to their customer service people this morning they told me that there was nothing that they could do to fix the problem. I also noted that they changed all of the marketing information on their web site to delete all references to the price-lock guarantee which I was offered when I set up the account. We need to find a way to complain loudly to T-Mobile about this breach of contract and breach of trust. If we do nothing, they will raise our rates again in the future. Let's fight back. Thanks for listening.

- **Price lock guarantee**

I highly recommend filing a complaint against T-Mobile with the Federal Communications Commission. The online process only takes five (5) minutes. If enough T-Mobile customers complain loudly and forcefully, perhaps the FCC will do something. We have nothing to lose by taking a shot. Here is the link:  **https://consumercomplaints.fcc.gov/hc/en-us**

T-Mobile says one thing then does another, trying to hide behind "well the price of everything is going up" - I wasted 45 mins listening to BS from a rep in the Philippines likely getting paid $3 an hour…..    You would think their costs should be going down by moving customer service to a 3rd world country.   I was with ATT for almost 20 years, then switched to T-Mobile 7 years ago….   I am on a grandfathered 55+ plan and I was told it would be price locked unless I changed to another plan.    They are LIARS……. They used to be a great company, but not anymore - with less than 10 days notice they are increasing the price of my service by almost 17%   ($60 two lines / $10 increase).  I don't need a Pilipino telling me its only $5  a line.  I will file FCC/ State Board of Public Utilities & State Attorney General & State Consumer Affairs (unfair business practices).  Plus, BBB / YELP/ PissedConsumer/ FB/ X/ Tick Tock/ & Insta.  They went from Hero to Zero ….   I doubt T-Mobile will do anything until they realize they are hemorrhaging loyal customers and become inundated with complaints.  There are better, lower priced choices. from other carriers and resellers. I intend on switching

- **Monthehoops**

T-Mobile new slogan. "Price lock for life and other temporary agreements"

- **Bill Kapra**Same exact thing! Spent an hour on live chat to get runaround. Called customer service and they said "it wasn't a contract". Honestly?? Will be contacting state attorney general's office and fcc

- **Jmattioli**

Same thing happened to me. Switched from Verizon to T-Mobile to get One plan 55+ with price lock for life (2 lines $60 with auto pay and now told price is increasing and that plan is not included with price lock. Filed FCC complaint also. Maybe we should take them to small claim court individually? They won't show and be ordered to pay.

- **Mooseman77**

**They have changed for the bad since x-ceo John Legere left in 2020. Under him they wanted to be a different- customer oriented cell company with a guaranteed for life plan for 55 & over!  Now they are just another greedy cell carrier just like the others. I too called in & talked with a rep asking how they could not keep their word with guaranteed for life & she said there was nothing she could do about it! I live in the mountains & Tmobiles service isn't that great anyway so I will be switching carriers.. I don't give repeat business to unethical companies!!**

- **tickedoffcustomer**

**Hello,**

**I was also sold the 55+ price for life plan some years back. I signed up because it sounded like a great deal not having to worry about rate increases on a low income. T-Mobile is a liar company that used bait and switch tactics, or so it appears. I am going to file a complaint with my state Attorney General and any other agency that will listen. I will also be emailing my representatives and local media to expose this company as a predator company using fraud tactics to sell their service. Everyone being affected by this, please do the same. They are breaking a promise so they can open the door to future rate increases and more frequently. I have kept my part of the deal all these years, so should they. I am sick of these big companies screwing over customers and not being held accountable.**

## 10 people like this

- **Woody NE FL**

**Just went thru the same "Your current plan says nothing about a Price-Lock" goat rope with a young T-Mobile Customer Svc Rep. Sadly, he's the one that has to endure our rath. Anyway, after sharing I'd enrolled in the (Then) Senior Unlimited 55+ Plan, that included a "Guaranteed Never to Go Up" Price-Lock back in December 2017 AND I needed to know why it's now called "One Plan 55+" and there's no longer a lock. Told him I wanted an email address that I could send my concerns to, toward resolution, and was informed there are NO T-Mobile email addresses, but he would be happy to transfer me to his Tampa Supervisor. I gladly accepted that offer and eagerly awaited the end of the Elevator Music, which not surprisingly never ended,  I hung up after 15 minutes. I will be doing the 611 thing AGAIN, and this time tell a Supervisor (among other things) to Read the discuss on their Community Page. I may need to give him/her the link to the page.**

- **Jeffy2b**

**Similarly, I signed up for the fixed plan.  Called about the rate hike and was told there never was a lifetime guarantee.  The CSR on the other end of the line, obviously well trained, told me it is only $!0.  That keeps it still cheaper than any other plan.  It's not the $$$.  $10 will not break the bank, it's the knowledge that t-mobile lied to me - continues to lie to me - and they will undoubtedly get away with it.  Got the same guarantee on my internet price.  How long will it take them to deny they ever promised that???  How does a larger company get to lie about such a thing.  I will never trust t-mobile again.**

- **wisconsinlauren**

**I transferred to T-Mobile at my local Costco store in 2017. I will be contacting Costco about this issue. They have been excellent about standing behind their products as well as those from their contractors.**
## 5 people like this

- **Themichelob**

First, they changed the rules regarding auto-pay so we couldn't use our credit cards. Now this!! I will be filing appropriate complaints as well as switching carriers. Even if they reverse this decision, I won't be doing business with this type of company. I figured something was up when I stopped receiving the weekly updates and surveys from them.

- **SpookWarrior**

     If T-Mobile doesn't do anything about their "Bait & Switch" attitude, we MUST all get together and get a good lawyer and bring a class-action lawsuit against T-Mobile.  Also, a BOYCOTT of T-Mobile .can be started in social media - hate to do it, but they "drew first blood" (Rambo).

- **SpookWarrior**

Small claim court is very limited as to punishment and we need to hit T-Mobile deep in their pockets... FCC isn't going to do a thing.  You guys have an opt out and can use if they changed the price. That's what the guarantee is.  They will tell you to use the opt out penalty free and go another provider.

- **SpookWarrior**

You can also start a "Boycott T-Mobil" campaign in social media or seek legal help to do a Class Action lawsuit as there are many of us affected by this action from T-Mobil - that could be considered an ageism discrimination on their part...


     **wisconsinlauren**

In 2017, we signed up for the T-Mobile One program at Costco. I just spoke with a Costco rep, and he spent quite a lot of time looking into this. His suggestion is that I (and any of you who signed up at Costco) complete the online Feedback form on the Costco.com website home page. This is the comment I left: You are welcome to use it (or a version of it):

In 2017, we signed up for the T-Mobile One program at Costco, a rate plan for customers 55+ that promised the $30 per month rate would "never" go up. We switched from AT&T and moved my mother over, also. This past week T-Mobile One customers were advised that their plan was going to be increased $5 per line per month. I have spoken to T-Mobile, but there are no options for us at the same rate.

I just spoke to a Costco rep, and he spent quite a lot of time looking into this. His suggestion is that I (and anyone who signed up at Costco) complete the online Feedback form on the Costco.com website home page. This is clearly a T-Mobile issue, but having engaged in a contract with a Costco contract vendor, we expect the same adherence to contractual promises made as we do with any Costco product.

We hope you can help us and the thousands of other Costco customers who signed up for this plan at a Costco store.


Let's hope all contact FCC, secretary of state you live in, your congressperson and two senators and AARP.


- **Winsted**

I have encountered the same problems. They dance around the fact that they have lied to their customers who all happens to be senior citizens.  I sent the T-Mobile CEO an email, he also danced around the issue that we had been lied to. Below is his name and number, send him an email.

Mike Sievert

Mike.sievert@t-mobile.com

We are on the senior unlimited plan guaranteed ( for the life of -- hmmm ). We use less that a GB of cell data/mo. Our texts mostly go over wi fi as do most of our calls.  Can't see how this is a drag on their profits. Seems like we are laying golden eggs at $30/line but we are on the chopping block.
3 people like this

- **Sir Duke**

I'm very disappointed with T-Mobile's decision to shaft the Senior 55+ participants. I am in lockstep with the other contributors preceding my comments. I would welcome a class action lawsuit to straighten this mess out, considering others that called the company to express concerns fell on deaf ears. I too am looking for a better place to land.

- **EANDE**

Don't get me started. I was extremely frustrated to hear this news on top of all the other things that I've been going on with T-Mobile. I have spent hours each month in the store, trying to correct the overbilling the assurance claims the adding numbers adding additional lines to my account without, approving it overcharging, losing phones directing complaints to assurance only to find that assurance won't deal with it and now this I have removed my auto payment because they were overcharging me for phones that the store lost. They were also charging me $75 additional for a phone line that I did not approve , it's taking a long time to correct all of this. I have removed assurance and I've removed auto payment so they cannot abuse now they decided to charge this plan. That is the only reason why I've stayed with T-Mobile. They've tried to get me to change this plan and upgrade, but I have kept this plan because it was locked because it was never supposed to go up , I'm supposed to get a phone call from a supervisor I spoke to this morning in the Philippines. He is going to ask L and escalate my case of requesting it not to be increased and I should hear back tomorrow. I am going to escalate this outside of T-Mobile as these companies should not be taking advantage of people over 55. I am now 66 and  Should be able to rely on companies that I have been a loyal customer for more than eight years.
I am interested in others who would like to take action steps. Please let me know. Thank you.
1 person likes this

- **SpookWarrior**

Ask anyone on the meaning of 55+ and they will answer that 55+ just means SENIORS.

For T-Mobile to rescind on their promise of the 55+ "$30 per month rate plan would "never" go up is simply a BREACH OF CONTRACT and to do it to the 55+ group is simply AGEISM DISCRIMINATION.

We need to have a concerted effort to bring T-Mobile to its senses - these are some:

1. File a complaint with the FCC

... **https://consumercomplaints.fcc.gov/hc/en-us**

**2. File a complaint with the BBB**

**... https://www.bbb.org/file-a-complaint**

**3. Contact your state attorney's general office.**

**4. Contact your congressperson and two senators.**

**5. Contact AARP.**

**6. Contact Costco, if you got your service through them.**

**7. Start a "Boycott T-Mobile" campaign in social media.**

**8.Contact your favorite law office to bring a class action lawsuit against them.**

**You may also try sending an email to Pres/CEO Mike Sievert**

**... Mike.Sievert@t-mobile.com**

**Remember... UNITED WE STAND, DIVIDED WE FALL !!!**
**4 people like this**

- **KTN**

I am really disappointed with T-Mobile raising prices for seniors when we were told they wouldn't ever increase our rates. We cannot let them get away with this. My internet also came with a price guarantee and they will most likely try and raise that next. Flood the Better Business Bureau with complaints because their rating will go down with them if they don't try to resolve customer complaints. Also contact agencies and president mentioned above. We need to have our voices heard!

- **Christine.Taylorlongtime**

Can we start a class action lawsuit for this ? I was told my rate would not increase. I have been with T-Mobile for 14 years and now find the never to increase 55+ magenta plan is going up by $12 a month for me. Living on only social security that is a huge price hike. Let me know if we can do anything.

Christine Taylor

# T-Mobile breaking promises to seniors who were offered price-lock guarantee for life on 55+ rate plans

Reply after submitting formal complaint to the FCC.  What was T-Mobiles CEO thinking would happen? Hopefully this gets national attention.  Oh that's right, T-Mobile had to do this because of inflation ... wait ... inflation? what inflation? .... CBS, ABC, NBC, MSNBC, CNN says inflation is more right wing propaganda.  This story will never make any news.

Thank you for your submission. Based on our review, your Ticket No. xxxxxxx was served on your provider on May 24, 2024.

Here's what you can expect from the FCC's informal complaint process:

- Your provider should contact you directly in an effort to resolve your issue.
- The FCC's role in this process is to facilitate a conversation between you and your

provider.

**- Your provider is required to submit to the FCC a written response regarding your issue no later than 30 days from today.**
**- The FCC will not contact you until we receive a response from your provider.**

- **SpookWarrior**

  - **magenta8632570**

**We have been with T-Mobile for many years, never missed a payment,  and felt that we had finally found a company worth doing our business with.  Most of the store reps have delivered excellent customer service over the years.  But now it appears that the top leadership of the company has just *flushed* all those "trusted" years down the corporate toilet.  We, as thousands of other seniors signed a contract that stated that the Senior Unlimited 55+ Plan had a "Guaranteed Never to Go Up" price lock.  Now we are being told that each line will go up $5.  And this is the second time that T-Mobile has purposely taken the liberty to raise our agreed contractual price lock (credit card to debit card change penalty).  We, as most seniors, are on a very tight budget; obviously not reaping the rewards of T-Mobile's yearly profits, which is evident in its top executive salaries (easy to google).  We will not only be forwarding this letter to Mike Sievert (CEO)(mike.siever@t-mobile.com) and the other top executives; but will be encouraging all our friends, neighbors, and any others to do the same.  And if this increase is not reversed, and T-Mobile no longer honors its contractual obligations – we will be looking elsewhere to do our business.  And we will be encouraging others to do the same.  Our trust level with T-Mobile has greatly diminished with this rate increase.**

- **forejoe**

*Woody NE FL wrote:*
*Just went thru the same "Your current plan says nothing about a Price-Lock" goat rope with a young T-Mobile Customer Svc Rep. Sadly, he's the one that has to to endure our rath. Anyway, after sharing I'd enrolled in the (Then) Senior Unlimited 55+ Plan, that included a "Guaranteed Never to Go Up" Price-Lock back in December 2017 AND I needed to know why it's now called "One Plan 55+" and there's no longer a lock. Told him I wanted an email address that I could send my concerns to, toward resolution, and was informed there are NO T-Mobile email addresses, but he would be happy to transfer me to his Tampa Supervisor. I gladly accepted that offer and eagerly awaited the end of the Elevator Music, which not surprisingly never ended,  I hung up after 15 minutes. I will be doing the 611 thing AGAIN, and this time tell a Supervisor (among other things) to Read the discuss on their Community Page. I may need to give him/her the link to the page.*

**I also spoke to a customer rep and was told it's far above his pay grade. Told me to write to corporate.**

T-Mobile  Wireless                                                                    PO  Box
37380.                                        Albuquerque, NM  87176

I intend to treat this as "False Advertising" and may seek an attorney for this, if not satisfied with their answer. When a corporation advertises "For life", I expect them to honor it. They,  most likely, would save many dollars in legal cost if they would just honor what they say. I get so angry when these large corporations think that they can get away with nickel and diming their customers. They just finished hitting us with fee's for using credit card auto-pay. They could save millions of dollars, by simply reducing or eliminating, the amount of free stuff that they think we are interested in.


**Manofintegrity**


For what it's worth:  I received a call earlier this afternoon from Alex at T-Mobile.  He basically said that "with honesty and being upfront, we cannot lower the price of your plan".  I see that many of the thread entries on this site have been removed.  I'm getting "you are not authorized" at this site.


I have received replies from the FCC and the South Carolina Dept of Consumer Affairs … both saying they have received my complaint.  I also heard from my US Congressman who, while polite, says he can do nothing.

I hope this all gets resolved and I hope T-Mobile decides to stick with their word.  I doubt it.  Even if I end up paying more, I'll NOT do business with a company that has not integrity.


Best of luck to all.  I hope I'm able to keep posting, and I will keep this community informed if I can.


- **Gobaligoop**


*WFREYVOGEL wrote:*
*In 2017, I signed up for a 55+ rate plan with the assurance that my monthly rate was price-locked for life.  This incentive was a primary reason that I switched from AT&T to T-Mobile.  Now, T-Mobile is trying to raise my monthly rate by $10.00.  When I spoke to their customer service people this morning they told me that there was nothing that they could do to fix the problem.  I also noted that they changed all of the marketing information on their web site to delete all references to the price-lock guarantee which I was offered when I set up the account.  We need to find a way to complain loudly to T-Mobile about this breach of contract and breach of trust.  If we do nothing, they will raise our rates again in the future.  Let's fight back.  Thanks for listening.*

This has happened to me and thousands of us.  We somehow need to get a CLASS ACTION LAWSUIT against T Mobile…that is a $120.00 year increase what is right is right

**and this is BREACH OF CONTRACT. If anyone is or knows any class action attorney  sadly this is what needs to be done to stop this crap and have them enforce what they sold us**

- **nydave246**

**This has happened to me and thousands of us.  We somehow need to get a CLASS ACTION LAWSUIT against T Mobile...that is a $120.00 year increase what is right is right and this is BREACH OF CONTRACT. If anyone is or knows any class action attorney  sadly this is what needs to be done to stop this crap and have them enforce what they sold us**

- **magenta9171786**

*SpookWarrior wrote:*
*Ask anyone on the meaning of 55+ and they will answer that 55+ just means SENIORS.*

*For T-Mobile to rescind on their promise of the 55+ "$30 per month rate plan would "never" go up is simply a BREACH OF CONTRACT and to do it to the 55+ group is simply AGEISM DISCRIMINATION.*

*We need to have a concerted effort to bring T-Mobile to its senses - these are some:*

*1. File a complaint with the FCC*

*... https://consumercomplaints.fcc.gov/hc/en-us*

*2. File a complaint with the BBB*

*... https://www.bbb.org/file-a-complaint*

*3. Contact your state attorney's general office.*

*4. Contact your congressperson and two senators.*

*5. Contact AARP.*

*6. Contact Costco, if you got your service through them.*

*7. Start a "Boycott T-Mobile" campaign in social media.*

*8.Contact your favorite law office to bring a class action lawsuit against them.*

*You may also try sending an email to Pres/CEO Mike Sievert*

*... Mike.Sievert@t-mobile.com*

*Remember... UNITED WE STAND, DIVIDED WE FALL !!!*

**And for good measure, file a fraud complaint with the FTC. I also have one on file with DOJ's anti-trust division.**

**This morning, I heard back from "Karen" from T-Mobile. They received my BBB complaint and wanted to review it with me. I got nowhere with her, of course. She told**

me there was nothing they could do about the price of my plan, told me the effective date, and that if I decide to leave within 60 days, they'd cover my final bill. She asked if I intended to leave, and I replied, Oh no... I fully expect there to be a class action suit againt T-Mobile for breach of contract over this, and I want to be here when that happens.

Clearly, we all see that T-Mobile is no longer the same company it was under John Legere, where they were much more customer friendly. Since his departure, we've seen the company discontinue the use of credit cards for auto pay, and requiring debit cards or other direct access to your bank account, which has fewer protections than credit cards. Now we see T-Mobile pissing off a very large portion of their customer base with this price increase. I've seen a lot of subscribers like myself talking about a class action lawsuit, but don't know if anyone has moved forward with this idea. I certainy hope there is a law firm out there willing to take this up.

- **WFREYVOGEL**

IMPORTANT UPDATE!!!!!  After my original post, I filed a complaint against T-Mobile with the Federal Communications Commission using the link provided by another customer in this thread.  The FCC sent me a follow-up e-mail confirming that they had forwarded my complaint to T-Mobile.  Earlier today, I noticed that T-Mobile had changed my monthly bill back to the original amount of $60.00 for two (2) lines.  This is the same price that I have been paying since 2017.  No notice or response from T-Mobile, but they are no longer trying to increase my monthly rate.  It could be a coincidence, but it sounds like filing the FCC complaint may have worked.  I urge all of you to give it a try.  Only takes five (5) minutes online.  Nothing to lose.  Let us know whether it works for you too.  Good luck!

- **magenta9171786**

*WFREYVOGEL wrote:*
*IMPORTANT UPDATE!!!!!  After my original post, I filed a complaint against T-Mobile with the Federal Communications Commission using the link provided by another customer in this thread.  The FCC sent me a follow-up e-mail confirming that they had forwarded my complaint to T-Mobile.  Earlier today, I noticed that T-Mobile had changed my monthly bill back to the original amount of $60.00 for two (2) lines.  This is the same price that I have been paying since 2017.  No notice or response from T-Mobile, but they are no longer trying to increase my monthly rate.  It could be a coincidence, but it sounds like filing the FCC complaint may have worked.  I urge all of you to give it a try.  Only takes five (5) minutes online.  Nothing to lose.  Let us know whether it works for you too.  Good luck!*

I filed a complaint with the FCC as well, but have yet to hear back. I could try using the link that you used, but it might not be a good idea to have duplicate complaints on file with them.

- **MVH-WNC**
  - **First activity**

I am in the same boat as everyone else in this thread.  I called T-Mobile twice.  First to complain about the price increase that was guaranteed to never go up and being told after speaking to the rep who passed my call onto a manager named Rodney who told me he would investigate and call me back today (June 4).  That call lasted almost 1 hour and I was told that the plan I had did not include a rate lock and was not in place until a month after I entered the agreement.

The second call was today when I spoke with a rep who was unable to find a note in Rodney's post about when he would return my call.  I asked to escalate again and spoke with Valerie who told me that rate locks only began in January this year (2024) and I could switch to the new plan that was $15 more per line than the magenta 55+ plan or stay with the current plan.

As mentioned in other posts I spoke to Valerie about contacting FCC and the local ABC News and Fox News stations about the issue and she said she was sorry to hear that.  That leaves me with the solutions mentioned - FCC complaint and speaking with News stations about the attempt to discriminate against seniors.

I fully understand that prices go up but baiting seniors into a fixed price program to steal them from other carriers and then ending the very programs put in place is wrong.  They need to hold the line with promises and prices.  So, I am going to follow another suggestion.  I am going to contact AT&T and Verizon to see if they would like to get seniors to talk about the way their accounts were lured away with false promises.

I will give T-Mobile the chance to correct this big mistake before going to the media and competitors.  Independence Day is coming soon.

- **Dazedandconfused1943**

In one single move, by reneging on the "we won't raise your rate" promise, T-Mobile has erased decades of trust.  I always recommended T-Mobile because of superior customer service and the impression I had that they put their customers first.  Sadly, they now have become no better (or worse) than their competitors.  I will be shopping.

- **NKC777**

Same issue here with 55+ senior plan.  Rep told me when I signed up that my rate would never increase so long as I did not change plans, and kept my account in good standing.  I have not changed plans, and my account is, and has always been in good standing.  I contacted T Mobile customer service today about the issue, and they tried to gaslight me by telling me that my plan never included a lifetime price lock guarantee.  Frauds and liars.  I see a class action lawsuit coming on this one.  Any good lawyers out there?  I also just filed a complaint with the FCC.  If anyone else would like to make a complaint, here is the link:  **https://consumercomplaints.fcc.gov/hc/en-us**  Takes about 5 minutes or less.

- **magenta9171786**

*NKC777 wrote:*

*Same issue here with 55+ senior plan. Rep told me when I signed up that my rate would never increase so long as I did not change plans, and kept my account in good standing. I have not changed plans, and my account is, and has always been in good standing. I contacted T Mobile customer service today about the issue, and they tried to gaslight me by telling me that my plan never included a lifetime price lock guarantee. Frauds and liars. I see a class action lawsuit coming on this one. Any good lawyers out there? I also just filed a complaint with the FCC. If anyone else would like to make a complaint, here is the link:* [https://consumercomplaints.fcc.gov/hc/en-us](https://consumercomplaints.fcc.gov/hc/en-us) *Takes about 5 minutes or less.*

You might want to also file a fraud complaint with the FTC, file a complaint with the BBB, and also your state's attorney general, especially if your state was one of the 13 that sued to try to block the Sprint merger. Now T-Mobile wants to merge with U.S. Cellular, reducing competition even further…. now that they've shown their true colors after the Sprint merger, the U.S. Cellular merger should be blocked.

- **SpookWarrior**

File a complaint against T-Mobile with your state Attorney General… reasons for complaint: Breach of Contract, Fraud, Discrimination Against Seniors (ageism). Also suggest to your state AG to contact other state's AG and as a group to convince T-Mobile that they (TM) needs to Honor Their Contract !!!

- **RenegadePastor**

Like so many others on this thread, I signed up for this 55+ plan years ago, banking on the guarantee that T-Mobile provided which was that the only one who could change this plan was me. I filed a complaint with the FCC (received an acknowledgement that they received my complaint) also filed a complaint with my state's Attorney General, and with every local TV station that has a consumer reporter and with every tech show I could think of. I also contacted T-Mobile, first by phone and then by email, to let them know that I am not willing to accept the change to my plan. I called a local radio station who has a show hosted by an attorney that dispenses 'marginal legal advice' - he cautioned me that if I do nothing and just go along with the price increase, T-Mobile could later use that against me, saying in effect that when they raised the rate and I paid the increased rate, that was a sign that I accepted the price increase.  On May 29th I received a phone call from Brandi Ware in the T-Mobile corporate office, offering me a one time credit of $120, (i.e. $5 per line for 12 months) to offset the increase and to give me time to find another carrier. I thanked her for the offer, and told her (by email) that while her offer might seem generous to her, it was unacceptable to me. What I wanted to see was 'specific performance' - i.e. T-Mobile honoring their guarantee of no price increase for life. I told her that failing that, when the price increase appeared on my bill, I would file a claim in small claims court against T-Mobile. I told her that based on my estimates (and I still need to crunch the numbers to come up with an exact figure) I have lost about $2,000 by sticking with T-Mobile over the past seven years (84 months), and not switching back and forth between other carriers to take advantage of their artificially low introductory rates.  I'm in a waiting game right now, because I can't do anything until the rate increase shows up on my bill. And even

**though the text notification I received from T-Mobile told me that it would be effective on my first bill after June 5 - my latest bill was today (June 6) and it was at the old $60 a month rate for two lines, so until the rate increase shows up, I have no damages to recover, but when it does I will plan to file a small claims action to try and recover what I lost by taking T-Mobile at their word that they would never raise my rate.**

`ttps://community.t-mobile.com/billing-61/t-mobile-breaking-promises-to-seniors-who-were-offered-price-lock-guarantee-for-life-on-55-rate-plans-57587/index3.html`

## VI.  CLASS ACTION ALLEGATIONS

43.  Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

### The Nationwide Class

All persons residing in the United States who entered into a T-Mobile ONE Plan, Simple-Choice plan, Magenta®, Magenta® Max, Magenta® 55 + , Magenta® Amplified or ,Magenta® Military Plan with T-Mobile which included a promised life-time price guarantee but had their price increased without their consent and in violation of the promises made by T-Mobile and relied upon by Plaintiffs and the proposed class.

### *The New Jersey Subclass*

All persons residing in New Jersey who entered into a T-Mobile ONE Plan, Simple-Choice plan, Magenta®, Magenta® Max, Magenta® 55 + , Magenta® Amplified or Magenta® Military Plan with T-Mobile which included a promised life-

time price guarantee but had their price increased without their consent and in violation of the promises made by T-Mobile and relied upon by Plaintiffs and the proposed class.

**The Georgia Subclass**

All persons residing in Georgia who entered into a T-Mobile ONE Plan, Simple-Choice plan, Magenta®, Magenta® Max, Magenta® 55 + , Magenta® Amplified orMagenta® Military Plan with T-Mobile which included a promised life-time price guarantee but had their price increased without their consent and in violation of the promises made by T-Mobile and relied upon by Plaintiffs and the proposed class.

**The Pennsylvania Subclass**

All persons residing in Pennsylvania who entered into a T-Mobile ONE Plan, Simple-Choice plan, Magenta®, Magenta® Max, Magenta® 55 + , Magenta® Amplified or ,Magenta® Military Plan with T-Mobile which included a promised life-time price guarantee but had their price increased without their consent and in violation of the promises made by T-Mobile and relied upon by Plaintiffs and the proposed class.

**The Nevada Subclass**

All persons residing in Nevada who entered into a T-Mobile ONE Plan, Simple-Choice plan, Magenta®, Magenta® Max, Magenta® 55 + , Magenta® Amplified or Magenta® Military Plan with T-Mobile which included a promised life-time

price guarantee but had their price increased without their consent and in violation of the promises made by T-Mobile and relied upon by Plaintiffs and the proposed class.

44. Excluded from the "Class" are: (i) Defendant, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) Defendants' employees, officers, directors, agents, and representatives and their family members; (iii) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family; (iv) any person who has an action for damages for personal injury or death or property damage against Defendants.

45. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal the Class should be expanded or otherwise modified.

46. This action has been brought and may properly be maintained as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3), because there is a well-defined community of interest in the litigation in which common issues predominate and the proposed class is easily ascertainable:

a) <u>Numerosity</u>. T-Mobile entered into these various Plans starting in or around 2017 until in or around May 2024. Plaintiffs are informed and believe that the proposed putative Class is made-up of many thousands of T-Mobile customers.

b) <u>Commonality and Predominance</u>.  Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class. The terms of the T-Mobile Plans are virtually all the same and do not differ in any manner that is relevant to Plaintiff's allegations, or the damage and harm caused thereby. There is a well-defined community of interest in the questions of law and fact involved and that affect T-Mobile customers who entered into one of the affected plans. These questions of law and fact predominate over questions that affect only individual class members.

The common questions of law and fact include, without limitation:

(1)  Whether T-Mobile has a policy or practice of refusing to honor its promise to permit its customers to keep their plans at the current prices for as long as they want including for life.

(2)  Whether T-Mobile made false or misleading statements, or representations of fact;

(3)  Whether T-Mobile's acts actually deceived or had a tendency to deceive its customers;

(4)  Whether T-Mobile violated the consumer protection laws of New Jersey, Pennsylvania, Georgia and Nevada.

(5)  Whether class members are entitled to injunctive relief compelling T-Mobile to honor its commitments;

(6)  Whether Class Members are entitled to actual damages

and if so, what is the appropriate amount;

(7) Whether T-Mobile deliberately misrepresented or failed to disclose material facts to Plaintiffs and the Class Members;

(8) Whether T-Mobile violated other state's false advertising laws;

(9) Whether T-Mobile could impose an arbitration and class action waiver clause years after Plaintiffs and the class members purchased their plans and without providing the Terms and Conditions to its customers and clearly advising them of these Terms and Conditions.

These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the questions of law and fact involved and that affect the Class.

c) **Typicality**. Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs and the Class members have entered into T-Mobile wireless agreements based upon the same promises and the same uniform misrepresentations of fact and material omissions. Therefore, the claims of Plaintiffs are and will be typical of Class members.

d) **The Class(es) is Ascertainable**. Plaintiffs have adequately and objectively defined the Class, as detailed above, so the Court and Class members will be able to use the definition to determine Class membership and T-Mobile has all the records

to determine who is in the class and what their monetary losses are.

e) <u>Adequacy</u>.   Plaintiffs will fairly and adequately represent the interests of all Class members.   Plaintiffs have entered into  T-Mobile plans and suffered injury by virtue of T-Mobile's failing and refusing honor its lifetime commitments and instead forcing Plaintiffs and the Class to pay more for their wireless phone service.   Plaintiffs are adequate representatives of the Class as they have no interests which are adverse to the interests of absent Class members.   Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex consumer protection class action litigation.

f) <u>Superiority</u>.   A class action is superior to other available means for the fair and efficient adjudication of this controversy.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.   The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the discovery, retention and analysis

by specialized experts and presentation of evidence, the burden of individual litigation would make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendant and result in the impairment of, and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

CLAIMS FOR RELIEF

FIRST COUNT

(Violations of New Jersey's Consumer Fraud Act,<br>N.J.S.A. § 56:8-2, et seq.)

47. Plaintiff Oddo, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

48. This claim is brought on behalf of the Nationwide Class and New Jersey Subclass.

49. T-Mobile has engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing and selling of its T-Mobile ONE Plan, Simple-Choice plan, Magenta®, Magenta®

Max,  Magenta® 55 + , Magenta® Amplified and ,Magenta® Military
Plan with T-Mobile which included a promised life-time price
guarantee that the Company reneged on and failed to honor shortly
after the expiration of the three year period following the  T-
Mobile/Sprint merger which was a condition of the approval of
the merger by regulators

50.  T-Mobile  intentionally  misrepresented  that  its
wireless phone services would not go up in price for life or
until the customer decided to cancel or change plans.

51.  T-Mobile had a duty to Plaintiffs and the Nationwide
Class and New Jersey Subclass to disclose its real intent to
raise  prices  once  the  three-year  period  following  the  T-
Mobile/Sprint merger expired because:

a.   T-Mobile was in a superior position to know the true
state of facts about the wireless plans it was offering and its
intent regarding same.

b.   Plaintiffs and the Nationwide Class and New Jersey
Subclass could not reasonably have been expected to learn or
discover T-Mobile's actual intent in advance of their switching
T-Mobile's plans.

52.  In failing to disclose the falsity of the lifetime
promise to maintain rates, T-Mobile intentionally concealed its
plan to raise rates, and has concealed, failed to disclose and/or
omitted material facts from Plaintiffs and other members of the
Nationwide Class and New Jersey Subclass.

53. Defendant intended that Plaintiff and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission by signing up for one of the T-Mobile rate plans which promised lifetime price stability.

54. Defendant intended that Plaintiff and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission.

55. Defendant's omissions were objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that Defendant knew about and failed to disclose that it intended to raise rates once the three-year period following the T-Mobile/Sprint merger imposed by regulators expired was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of a new wireless plan.

56. Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

57. As a direct and proximate result of Defendant's violations of the NJCFA, Plaintiff and the other members of the Nationwide Class and New Jersey Subclass have suffered ascertainable losses, which include but are not limited to, the increased cost of their wireless plans improperly imposed by T-Mobile in violation of their promise as described in this Complaint. Further, based on the intentionally dishonest nature

of Defendant's conduct, which was directed at the Class and Subclass, Defendant should also be held liable to the Class and Subclass for punitive damages in the form of treble damages and Attorneys' fees in accordance with the NJCFA.

### SECOND COUNT

#### (Common Law Fraud)
#### (On behalf of the Nationwide Class)

58. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

59. The above-described conduct and actions constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Defendant in inducing Plaintiffs and the Class and Subclasses to sign up for the legacy wireless plans with the intention of breaching the promise that the rates quoted would remain in effect for life.

60. T-Mobile undertook active and ongoing steps to intentionally conceal its intent to raise rates for Plaintiffs and other members of the Nationwide Class and Subclasses once it was released from the restrictions imposed by the regulators in connection with the T-Mobile/Sprint merger.

61. T-Mobile intended that Plaintiffs and the other members of the Class and Subclasses rely upon the above-described misrepresentations, concealment and omissions.

62. Plaintiffs and other Class and Subclass Members justifiably relied upon Defendant's misrepresentations, concealment and omissions to their damage and detriment.

63. Plaintiffs and the Class and Subclasses suffered the damages described in this Complaint as a proximate result thereof.

### THIRD COUNT

#### (Negligent Misrepresentation)
#### (On Behalf of the Nationwide Class)

64. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

65. T-Mobile made material misrepresentations as described by advertising that the price of the legacy plans would remain in effect for as long as Plaintiffs and other Class Members wanted to stay in the plans. Defendant knew, or should have known, that these statements were inaccurate.

66. T-Mobile intended its material misstatements to induce Plaintiffs and the Class and Subclasses to rely upon them, and Defendant expected Plaintiffs and the Class and Subclass to rely upon them.

67. Plaintiffs and the Class and Subclass reasonably relied on the misstatements when they signed up for the legacy plans.

68.   Plaintiffs and the Class and Subclass suffered the damages described in this Complaint as a proximate result thereof.

### FOURTH COUNT

**(Common Law False Advertising)**
**(On behalf of the Nationwide Class)**

69. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

70.   In its advertisements about the legacy plans, Defendants made a false and misleading statement, or representation of fact. Namely, that the prices for each plan would remain in effect, and would not be changed for a customer's lifetime or until a customer elected to leave the plan.

71.   Defendant actually deceived or had a tendency to deceive a substantial segment of its audience.

72.   Defendant's deception was material in that it was likely to influence the purchasing decision of consumers.

73.   The statements concerned goods, services, or commercial activities in interstate commerce.

74.   Plaintiffs and the Class have been and are likely to continue to be injured as a result of the false advertising.

### FIFTH COUNT

### VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

**(GA. CODE ANN § 10-1-370 *et seq.*)**
**(On behalf of the Georgia Subclass)**

37

75.  Plaintiff Hyaduck, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

76.  Plaintiff brings this claim individually and on behalf of a Class of Georgia residents who signed up for one of T-Mobile's legacy plans with a lifetime price lock guaranty who had the cost of their plans raised once T-Mobile was released from the restrictions imposed by the regulators in connection with the T-Mobile/Sprint merger.

77.  Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10-1-373(a).

78.  Defendant T-Mobile, Plaintiff Hyaduck, and Georgia Subclass members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

79.  In January 2017, T-Mobile officials represented that certain specific wireless plans, specifically T-Mobile ONE Plan, Simple-Choice plan, Magenta®, Magenta® Max,  Magenta® 55 + , Magenta® Amplified and Magenta® Military Plan included a promised life-time price guarantee.

80.   T-Mobile advertised this price lock guarantee and that only the customer could cancel the contract, not T-Mobile. The Company referred to this deal as an "UnContract" and indicated in press releases and videos, print advertising and on television that customers signing up for these specific plans could keep their plans for life. However, T-Mobile had no intention of keeping these low rates for wireless service in place indefinitely.

81.   T-Mobile increased the price on these Plans without the consent of Hyaduck and the Georgia Sub-class, in violation of the promises previously made by T-Mobile.

82.   Defendant T-Mobile failed to disclose to Plaintiff and the Georgia subclass members that T-Mobile had no intention of maintaining the price-lock once restrictions on raising wireless prices for life as had been promised+.

83.   As a direct and proximate result of T-Mobile's violation of the UDTPA Plaintiff Hyaduck and the Georgia subclass have been suffered a monetary injury.

84.   Plaintiff Hyaduck and members of the proposed Georgia Subclass seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

<u>SIXTH COUNT</u>

<u>VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
73 P.S. §201-1, et seq</u>

(On Behalf of the Pennsylvania Subclass)

39

85.   Plaintiff Dwyer, on behalf of himself and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

86.   Plaintiff is a "person" within the meaning of PUTPA, 73 P.S. §201-2(2).

87.   T-Mobile is a "person" within the meaning of PUTPA, 73 P.S. §201-2(2).

88.   PUTPA prohibits engaging in any "unfair or deceptive acts or practices" either at, prior to, or subsequent to a consumer transaction. See 73 P.S. §201-2(4) and 73 P.S. §203. Defendant's conduct constitutes "unfair or deceptive acts or practices" pursuant to the statute, including:

(a)   Representing that services have characteristics, uses, or benefits that they do not have, §201-4(v);

(b)   Advertising services with intent not to sell them as advertised, §201-4(ix)

(c)   Failing to comply with the terms of any written … warranty given to the buyer at, prior to, or after a contract for the purchase of services is made, §201-4(xiv), and

(d)   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding, §201-4(xxi).

89.   Defendant violated PUTPA as set forth above, through false or misleading representations through advertising and other express and implied statements regarding the lifetime price lock of the legacy wireless plans, and failed to disclose

to Plaintiff Dwyer, and the Pennsylvania Subclass that T-Mobile had no intention of maintaining the price-lock for life as had been promised.

90.   Defendant engaged in deceptive trade practices when it failed to disclose material information concerning the T-Mobile plans which it knew about at the time of sale, allowing unsuspecting purchasers to continue enter into these legacy plans which were falsely represented.

91.   Defendant's unfair or defective acts or practices were likely to deceive reasonable consumers about the true nature of the plans being offered by T-Mobile. Defendant intentionally and knowingly misrepresented material facts regarding the T-Mobile legacy plans with the intent to mislead the Plaintiff Dwyer and members of the Pennsylvania Sub-class.

92.   The Pennsylvania Sub-class suffered, and continues to suffer, an ascertainable loss caused by the Defendants' failure to disclose material information.

93. The Pennsylvania Subclass is entitled to recover three times their actual damages, costs and reasonable attorneys' fees pursuant to 73 P.S. §201-9.2.

94.   Plaintiff Dwyer and the Pennsylvania Subclass also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and a positive injunction requiring that T-Mobile reinstitute the legacy plans for all Plaintiffs and Class members wishing to reinstitute their plans.

**SEVENTH COUNT**

**NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(On behalf of the Nevada Subclass)**

95. Plaintiff Kahhaan, on behalf of himself and the Nevada Sub-class and all others similarly situated incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

96. The Nevada Deceptive Trade Practices Act makes it unlawful to make "a false representation as to the characteristics. . . uses, benefits, . . .of. .. services for sale or lease . . . and represent that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model." Nev. Rev. Stat. 598.0915.

97. Additionally, Nev. Rev. Stat. 598.0915(15) provides: "A person engages in a deceptive trade practice if, in the course of his or her business or occupation, he or she [k]nowingly makes any other false representation in a transaction."

98. T-Mobile knowingly engaged in deceptive trade practices in the course of its business by knowingly making false representations in its transactions regarding the "UnContract" and price lock guaranty for the legacy plans referenced above by representing that the cost of these specific T-Mobile Plans would remain in effect for the life of the purchasers at their option Defendant was engaging in a misrepresentation of material

fact through publication, radio, television . e-mail, YouTube and press releases, since T-Mobile had no intention of keeping a price lock on these plans and indeed raised the rates to be paid by Kahhaan and the Nevada class once the three year period imposed by regulators as a condition of the T-Mobile-Sprint merger was lifted.

99.  NRS 41.600(1) provides that an action may be brought by any person who is a victim of consumer fraud.

100. NRS 41 600(2) defines "consumer "fraud" as a deceptive trade practice as defined above.

101. Plaintiff and the Nevada class are entitled to recover actual damages, consequential damages and punitive damages pursuant to NRS 41.600(3)a) as well as reasonable attorney's fees and costs pursuant to NRS 41.600(3)(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant, T-Mobile, for the following:

1.   An order certifying Plaintiffs' claims as a class action, appointing Plaintiffs as representatives and appointing their counsel to be counsel for the Class and Sub-Classes;

2.   A constructive trust on and restitution of all amounts obtained by Defendant as a result of its violation of the statutory claims plead above, and Defendant's misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.     All recoverable compensatory, punitive, and other damages sustained by Plaintiffs and Class and Sub-Class members;

4.     Actual and/or statutory damages for injuries suffered by Plaintiffs and Class members in the maximum amount permitted by applicable law;

5.     An injunction (1) enjoining Defendant's wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above; (2) directing Defendant to engage in a corrective notice campaign; and (3) directing Defendant to refund to Plaintiffs and Class Members the difference between what they paid and the amount that they should have been charged under the legacy plans had T-Mobile not wrongfully raised the rates;

6.     Statutory pre-judgment and post-judgment interest on any amounts;

7.     Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.     Such other relief as the Court may deem just and proper.

## VII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all causes of action so triable.


Dated: July __, 2024            By:<u>*s/Bruce H. Nagel*</u>
                                   BRUCE H. NAGEL
                                   Randee M. Matloff
                                   NAGEL RICE, LLP
                                   103 Eisenhower Parkway
                                   Roseland, New Jersey 07068
                                   973-618-0400

bnagel@nagelrice.com
rmatloff@nagelrice.com

Joseph Santoli, Esq.
340 Devon Court
Ridgewood, New Jersey 07450
201-926-9200
josephsantoli002@gmail.com

# EXHIBIT A



June 4, 2024

**FILED ELECTRONICALLY**

Federal Communications Commission
Consumer Inquiries and Complaints Division
Consumer and Governmental Affairs Bureau
45 L Street, NE
Washington, D.C. 20554


To Whom It May Concern:

T-Mobile USA, Inc. ("T-Mobile") is in receipt of your correspondence regarding T-Mobile's recent rate plan monthly recurring charge update.

As costs and inflation continue to rise, for the first time in nearly a decade, T-Mobile has made some small adjustments to the pricing of some of our older rate plans. On May 22, 2024, T-Mobile began notifying customers enrolled in older rate plans that their plan's monthly recurring cost will increase as of their June or July 2024 billing statement.

T-Mobile notified all impacted customers, by way of text message and email, of how the change specifically impacts their account, including how much their current rate plan will increase, when to expect the increase, and where they can find more information. The price increase ranges between $2.00 to $5.00 per line. All plan types, benefits, and due dates will remain the same. If any customer is interested in shopping for a new rate plan or would like to review our current rate plan offerings, we encourage them to contact Customer Care or visit T-Mobile.com/cell-phone-plans.

Regarding these changes, we are aware some customers have inquired about T-Mobile's *Un-contract* and *Price Lock*. With *Un-contract*, T-Mobile committed to its customers that if we were to increase prices and customers chose to leave as a result, T-Mobile would pay the customers' final month's recurring service charge, as long as we are notified within 60 days. Consistent with that commitment, customers who activated on an eligible rate plan between January 5, 2017 and April 27, 2022, can request to have their final month's qualifying service charge reimbursed if their rate plan price increases and they choose to cancel service. Customers simply need to *request reimbursement within 60 days of the price increase.*

As for customers with concerns about T-Mobile's *Price Lock* guarantee, it is important to note that customers with *Price Lock* are not impacted by the change. On April 28, 2022, T-Mobile began offering *Price Lock* on new account activations on qualifying rate plans. For customers who activated on a qualifying plan between April 28, 2022 and January 17, 2024, *Price Lock* guarantees that accounts activated with a qualifying rate plan, within the enrollment period, would not be subject to a price increase, so long as the account remained in good standing and the customer remained on the qualifying rate plan. If a customer migrates to a new plan not



Federal Communications Commission
June 4, 2024
Page 2 of 2

covered by *Price Lock*, the *Price Lock* guarantee will fall off the account given the customer is no longer on a qualifying rate plan. Lines covered by the April 28, 2022 to January 17, 2024 *Price Lock* guarantee are exempt from the monthly recurring rate plan changes.

Based upon the foregoing, we respectfully request that this complaint against T-Mobile be closed.

Very truly yours,


**T-MOBILE USA, INC.**