THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER ODDO, HARRY HYADUCK, SR., LARRY KAHHAN, GERALD DWYER, and SAM MARCUS, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, Inc.,<br><br>Defendant. | Case No. 2:25-cv-01651-RAJ<br><br>**DEFENDANT T-MOBILE'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>ORAL ARGUMENT REQUESTED<br><br>Noted for Consideration: April 7, 2026 |



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF CONTENTS


I. INTRODUCTION ........ 8

II. STATEMENT OF FACTS ........ 9

A. Plaintiffs Are Current T-Mobile Customers. ........ 9

B. Plaintiffs Repeatedly Agreed to Arbitrate Disputes with T-Mobile. ........ 9

III. ARGUMENTS AND AUTHORITIES ........ 14

A. The FAA Applies and Requires Enforcement of Plaintiffs' Arbitration Agreements. ........ 14

B. All Plaintiffs Entered Binding Arbitration Agreements with T-Mobile and Must Arbitrate Their Claims. ........ 16

(1) Plaintiffs agreed to arbitrate by signing contracts with T-Mobile. ........ 17

(2) Plaintiffs agreed to arbitrate through their conduct. ........ 18

C. Plaintiffs' Arbitration Agreements Delegate All Remaining Issues to the Arbitrator. ........ 23

(1) Plaintiffs' Claims Fall Within the Scope of Their Arbitration Agreements. ........ 26

(2) Plaintiffs' Arbitration Agreements are Valid and Enforceable Under State Laws. ........ 27

(3) No Plaintiff Timely Opted Out of His Arbitration Agreements ........ 27

D. This Court Should Stay This Action Pending the Completion of Arbitration. ........ 30

IV. CONCLUSION ........ 30




CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agyenim-Boateng v. T-Mobile Ne. LLC*,
No. 5:25-CV-183-BO-BM, 2025 WL 3277336 (E.D.N.C. Oct. 10, 2025)............20, 25

*Ahlstrom v. DHI Mortg. Co. GP, Inc.*,
No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018)......................28

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ..........................................................................................16

*Alvarez v. Experian Info. Sols., Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023), *aff'd*, No. 19-CV-3343 (JS)(JMW), 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024) ..............................................................22

*Arbogast v. Chicago Cubs Baseball Club, LLC*,
194 N.E.3d 534 (Ill. App. Ct. 2021)......................................................................19

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
612 F. App'x 430 (9th Cir. 2015)..........................................................................16

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .....................................................................................15, 16

*Batiste v. Atlanta Gas Co.*,
No. 1:15-CV-4144-ELR-JSA, 2016 U.S. Dist. LEXIS 90524 (N.D. Ga. June 13, 2016)..................................................................................................................17

*Bd. of Managers of Courtyards at Woodlands Condo. Ass'n v. IKO Chicago, Inc.*,
697 N.E.2d 727 (Ill. 1998)....................................................................................17

*Bellard v. T-Mobile USA, Inc.*,
No. 2:25-CV-07138, 2025 WL 3165686 (C.D. Cal. Sept. 19, 2025)...........................25

*Bennett v. T-Mobile USA, Inc.*,
No. 2:22-cv-01805-LK, 2024 WL229580 (W.D. Wash. Jan. 22, 2024)...............passim

*BioOrigyn, LLC v. Fairhaven Health, LLC*,
No. 2:20-cv-00285-RAJ, 2021 WL 2255122 (W.D. Wash. June 3, 2021)..................16

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)...............................................................................25



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Burgess v. Buddy's Nw. LLC*,
No. C15-5785 BHS, 2016 WL 7387099 (W.D. Wash. Dec. 21, 2016) .......................17

*Bushley v. Credit Suisse First Bos.*,
360 F.3d 1149 (9th Cir. 2004) .......................8, 9

*BZ Clarity Tent Sub LLC v. Ross Mollison Int'l Pty, Ltd.*,
No. 215-CV-1065-JCM-CWH, 2016 WL 3536620 (D. Nev. June 28, 2016) ............17

*Certified Fire Prot. Inc. v. Precision Constr. Inc.*,
283 P.3d 250 (Nev. 2012) .......................17

*Cir. City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......................16

*Cochran v. Eason*,
180 S.E.2d 702 (Ga. 1971) .......................18

*Collett v. Ancestry.com DNA LLC*,
No. 19-CV-03743-RS, 2019 WL 13253477 (N.D. Cal. Dec. 19, 2019) .......................27

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......................16

*Ekin v. Amazon Servs., LLC*,
84 F. Supp. 3d 1172 (W.D. Wash. 2014) .......................26

*Extremity Healthcare, Inc. v. Access to Care Am., LLC*,
793 S.E.2d 529 (Ga. Ct. App. 2016) .......................17

*Fed. Deposit Ins. Corp. v. Rayman*,
No. 92 C 3688, 1996 WL 254283 (N.D. Ill. May 13, 1996) .......................17

*Fraher v. Verizon Wireless Servs., LLC*,
No. 21-CV-00763-H-JLB, 2021 WL 2525732 (S.D. Cal. June 21, 2021) .......................15

*Frye v. T-Mobile USA, Inc.*,
No. 21-cv-61653-KMM, 2022 WL 22628805 (S.D. Fla. Jan. 13, 2022) .......................27

*Ghouri v. AmSher Collection Servs. Inc.*,
No. 1:22-cv-00503, 2022 WL 11964565 (E.D. Va. Oct. 19, 2022) .......................15, 27

*Glavin v. JPMorgan Chase Bank, N.A.*,
No. 23-1708, 2024 WL 1536739 (E.D. Pa. Apr. 9, 2024) .......................17



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Goldberg v. Sweet*,
488 U.S. 252 (1989) .......... 15

*Goldfarb v. Solimine*,
245 A.3d 570 (N.J. 2021) .......... 17

*Gonzales v. Sitel Operating Corp.*,
No. 219-CV-00876-GMN-VCF, 2020 WL 96900 (D. Nev. Jan. 7, 2020) .......... 17

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .......... 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 24

*Hintze v. Pershing Direct Brokerage Servs.*,
940 F.2d 668 (9th Cir. 1991) .......... 15

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 23, 24

*Hrapczynski v. Bristlecone, Inc.*,
No. 20-cv-06014, 2021 WL 3209852 (E.D. Pa. July 29, 2021) .......... 18

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
4:23-md-03073-BCW (W.D. Mo. 2025), ECF 86 .......... 25

*Juarez v. T-Mobile USA, Inc.*,
No. 2:24-cv-00700-SPG, slip op. (C.D. Cal. Aug. 23, 2024) .......... 24

*Kong v. Allied Pro. Ins. Co.*,
750 F.3d 1295 (11th Cir. 2014) .......... 15

*Lloyd v. Retail Equation, Inc.*,
No. CV 21-17057, 2022 WL 18024204 (D.N.J. Dec. 29, 2022) .......... 22

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) .......... 26

*Melena v. Anheuser-Busch, Inc.*,
847 N.E.2d 99 (Ill. 2006) .......... 17

*Middleton v. T-Mobile US, Inc.*,
No. 1:20-cv-03276, 2022 WL 16828226 (E.D.N.Y. Aug. 24, 2022) .......... 18



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Moreno v. T-Mobile USA, Inc.*,
No. 2:22-CV-00843-JHC, 2023 WL 401913 (W.D. Wash. Jan. 25, 2023) ................. 25

*Mortensen v. Bresnan Commc'ns*, LLC,
722 F.3d 1151 (9th Cir. 2013) ................. 27

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ................. 16

*Nicosia v. Amazon.com, Inc.*,
815 F. App'x 612 (2d Cir. 2020) ................. 22

*Noah v. T-Mobile USA, Inc.*,
No. C24-0885-JCC, 2024 U.S. Dist. LEXIS 195060
(W.D. Wash. Oct. 25, 2024) ................. 18

*Optimum Prods. v. HBO*,
839 F. App'x 75 (9th Cir. 2020) ................. 26

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ................. 24

*Peter W. Kero, Inc. v. Terminal Const. Corp.*,
78 A.2d 814 (N.J. 1951) ................. 17

*Petrie v. Haddock*,
119 A.2d 45 (Pa. 1956) ................. 17

*Preston v. Ferrer*,
552 U.S. 346 (2008) ................. 15

*Pulse Techs., Inc. v. Notaro*,
67 A.3d 778 (Pa. 2013) ................. 17

*Rendon v. T-Mobile USA, Inc.*,
No. 2:24-cv-01666-SPG, slip op. (C.D. Cal. Aug. 30, 2024) ................. 20

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ................. 23

*Roitman v. T-Mobile USA Inc.*,
No. 23-CV-6159 (ENV) (LKE), 2025 WL 3156503
(E.D.N.Y. July 28, 2025) ................. 18



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Saadeh v. T-Mobile USA, Inc.*,
No. 2:21-cv-12871 (BRM) (JSA), 2022 WL 193968 (D.N.J. Jan. 21, 2022) .............27

*Selig v. Phila. Title Ins. Co.*,
111 A.2d 147 (Pa. 1955) .............18

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020) .............27

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .............26

*Skuse v. Pfizer, Inc.*,
236 A.3d 939 (N.J. 2020) .............17

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .............8

*Stockling v. Evicore Healthcare MSI, LLC*,
No. 23-21855, 2024 WL 3409444 (D.N.J. July 15, 2024) .............17

*Trico Env't Servs., Inc. v. Knight Petroleum Co.*,
849 S.E.2d 538 (Ga. 2020) .............17

*U.S. Home Corp. v. Michael Ballesteros Tr.*,
415 P.3d 32 (Nev. 2018) .............19

*Vargison v. Paula's Choice, LLC*,
No. 2:24-CV-00342-TL (W.D. Wash. Jan. 30, 2025), *opinion clarified*, 2025 WL 822659 (W.D. Wash. Mar. 13, 2025) .............21

**STATUTES**

9 U.S.C. § 2 .............14, 15

9 U.S.C. § 3 .............8, 30

9 U.S.C. § 4 .............8



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Pursuant to 9 U.S.C. §§ 3 and 4 (the Federal Arbitration Act or "FAA"), Defendant T-Mobile USA, Inc. ("T-Mobile") moves this Court for an Order compelling arbitration of the claims of Plaintiffs Christopher Oddo, Harry Hyaduck, Sr., Larry Kahhan, Gerald Dwyer, and Sam Marcus ("Plaintiffs") and staying all proceedings pending arbitration.[1]

## I. INTRODUCTION

The five named plaintiffs assert claims against T-Mobile challenging alleged increases T-Mobile made to their monthly wireless service charges. But Plaintiffs agreed to arbitrate these claims against T-Mobile by signing written contracts with arbitration provisions and by continuing to use and pay for service after receiving notice of T-Mobile's Terms and Conditions. As set forth below, T-Mobile has satisfied its burden of proof on the sole issue properly before this Court: contract formation. Under the arbitration agreements, any questions of arbitrability, including scope, enforceability, and any alleged opt-outs, are delegated to the arbitrator.

Even if the Court were to address arbitrability, the result is the same. T-Mobile's arbitration agreements broadly cover all disputes in any way related to or concerning T-Mobile's services, bills, or charges. Plaintiffs' claims—challenging alleged increases to monthly wireless service charges—fall squarely within that scope. The agreements are also enforceable. They have been repeatedly enforced by this Court and others in this District. And all Plaintiffs' opt-out attempts were untimely.

This Court should not relieve Plaintiffs of the contractual obligation to arbitrate that they willingly undertook. Instead, under the FAA, this Court's role is to enforce Plaintiffs' arbitration agreements and move this dispute into arbitration as quickly as possible. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 (9th Cir. 2004) ("The Federal Arbitration Act represents Congress's intent to move the parties to an arbitrable

[1] T-Mobile previously moved to compel arbitration of Plaintiffs Oddo, Hyaduck, Kahhan, and Dwyer's claims while this case was pending in the District of New Jersey, ECF No. 11, but the court denied the motion without prejudice so that it could first resolve personal jurisdiction. ECF No. 14. After the court resolved the jurisdictional issue by transferring the case to this Court, ECF No. 49, T-Mobile now renews its motion to compel arbitration.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

dispute out of court and into arbitration as quickly and easily as possible.") (citation modified). T-Mobile's Motion should therefore be granted.

## II. STATEMENT OF FACTS

### A. Plaintiffs Are Current T-Mobile Customers.

Plaintiffs are five current, long-term T-Mobile customers from five different states who bring this putative class action asserting various claims related to their T-Mobile wireless rate plans. (*See generally* ECF No. 69, Amended Complaint ("Am. Compl.") ¶ 1; Declaration of Judy Sanchez filed concurrently herewith ("Sanchez Decl.") ¶ 4.) Plaintiff Oddo is a New Jersey resident who has been a T-Mobile customer since 2011. (Am. Compl. ¶ 1; Sanchez Decl. ¶ 69.) Plaintiff Hyaduck is a Georgia resident who has been a T-Mobile customer since 2021. (Am. Compl. ¶ 1; Sanchez Decl. ¶ 75.) Plaintiff Kahhan is a Nevada resident who has been a T-Mobile customer since 2013. (Am. Compl. ¶ 1; Sanchez Decl. ¶ 79.) Plaintiff Dwyer is a Pennsylvania resident who has been a T-Mobile customer since 2017. (Am. Compl. ¶ 1; Sanchez Decl. ¶ 86.) And Plaintiff Marcus is a New York resident who has been a T-Mobile customer since 2016. (Am. Compl. ¶ 1; Sanchez Decl. ¶ 90.)[2] Plaintiffs' status as T-Mobile customers not only forms the underpinnings of their claims; it also is the reason that this putative class action cannot proceed in this Court but rather must be resolved through arbitration.

### B. Plaintiffs Repeatedly Agreed to Arbitrate Disputes with T-Mobile.

Every Plaintiff is a T-Mobile customer, whose relationship with T-Mobile is governed by contract. T-Mobile's contracts—in all of their formulations—have one thing in common: they require customers to arbitrate their disputes with T-Mobile rather than litigate them in Court. Plaintiffs were informed of their arbitration obligations repeatedly and prominently in easy to understand terms, and Plaintiffs went on to enter into multiple contracts with T-Mobile that require them to arbitrate.

***First***, Plaintiffs Oddo, Dwyer, Hyaduck, and Marcus signed numerous contracts with T-

[2] For purposes of this Motion, T-Mobile takes as true Plaintiffs' complaint allegations regarding their residence. T-Mobile reserves the right to challenge those allegations should this case proceed.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Mobile containing conspicuous arbitration agreements. For example, Plaintiffs Oddo, Hyaduck, and Dwyer signed agreements to purchase wireless service ("Service Agreement") that prominently include the following language on the first page: T-Mobile requires "**ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION**." (Sanchez Decl. ¶¶ 72, 77, 88 (emphasis in original).) The Service Agreements these Plaintiffs signed also incorporate by reference T-Mobile's Terms and Conditions (at times, "T&Cs") and make plain that Plaintiffs agreed to be bound by them: "Your 'Agreement' with T-Mobile includes: (a) this Service Agreement; (b) T-Mobile's 'Terms and Conditions'; and (c) any terms specific to your Rate Plan or service." (*Id.*; Sanchez Decl., Exs. 16, 28–29, 33.) Every version of the T&Cs since Plaintiffs first activated their T-Mobile service has included a prominent, easy-to-understand arbitration agreement that covers disputes in any way related to or concerning the Plaintiffs' agreements with T-Mobile or T-Mobile's services, devices, products, bills, or charges. (Sanchez Decl. ¶¶ 16, 29, 46, 51; *see id.* at Exs. A–B, D–U.) T-Mobile's T&Cs also include prominent class action and jury trial waivers, provisions delegating issues of arbitrability to the arbitrator,[3] and instructions on how to opt out of arbitration by following a simple process. (*Id.* ¶ 51.)

In addition to signing Service Agreements, Plaintiffs Oddo, Hyaduck, and Dwyer also signed installment purchase contracts ("Equipment Installment Plans" or "EIPs") and/or lease agreements ("Lease Agreements"). (*Id.* ¶¶ 73–74, 78, 89.) Plaintiffs' EIPs and Lease Agreements each include an arbitration agreement, class action and jury trial waivers, instructions on how to opt out of arbitration, and a provision incorporating the AAA rules. (*Id.*) The mandatory arbitration agreements contained in these contracts explicitly require arbitration of all claims and disputes, including those "IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES

[3] The 2025 and 2023 T&Cs include express delegation provisions, and every relevant version of the T&Cs incorporates the consumer rules of the American Arbitration Association ("AAA"), (Sanchez Decl. ¶¶ 20, 33, 51). Courts have widely held such incorporation to constitute clear and unmistakable intent to delegate issues of arbitrability, including the enforceability of the agreement, to the arbitrator. *See* Section III.C, *infra*.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

OR PRODUCTS, INCUDING ANY BILLING DISPUTES" or "OUR SERVICES, . . . BILLS OR CHARGES." (*Id.* (emphasis in original).)

Furthermore, Plaintiff Marcus signed a purchase contract with T-Mobile for a SIM card, which incorporates T-Mobile's Terms and Conditions and alerted him that "[i]f you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions." (*Id.* ¶ 93.) The purchase contract further alerted Marcus that "T-Mobile REQUIRES ARBITRATION OF DISPUTES" and directed him to review the provided link to T-Mobile's T&Cs. (*Id.*)

***Second,*** all Plaintiffs agreed to and accepted T-Mobile's T&Cs through their conduct—including the arbitration agreement contained therein. Every version of the T&Cs that has been in effect since Plaintiffs activated service with T-Mobile has clearly notified Plaintiffs that certain conduct would constitute acceptance, including "activating," "using," or "paying for" T-Mobile's services. (*Id.* ¶¶ 14, 27, 44; *see* Sanchez Decl., Exs. A–B, D–U.) Plaintiffs' allegations show—and T-Mobile's records confirm—that Plaintiffs all activated T-Mobile service and have used and paid for it for years. (Sanchez Decl. ¶¶ 69, 71, 75–76, 79, 85, 86–87, 90, 92.) Indeed, Plaintiffs have been put on notice of changes to T-Mobile's T&Cs and consistently agreed to the T&Cs by activating, using, and paying for T-Mobile's services. (*Id.* ¶¶ 11–13, 23–25, 36–42.)

Most recently, T-Mobile updated its Terms and Conditions in 2025 (the "2025 T&Cs"). (*Id.* ¶ 8.) This was eleven months after T-Mobile filed its initial motion to compel arbitration in the District of New Jersey, which notified Plaintiffs (once again) of their arbitration agreements. *See* ECF No. 11. Before the 2025 T&Cs took effect, T-Mobile conducted a messaging campaign to notify customers of the upcoming changes via an SMS text message, email, and/or direct mail notice. (*Id.* ¶ 10.) T-Mobile's records reflect that T-Mobile delivered an SMS text message to Plaintiffs' lines of service that stated, "We've updated our Terms and Conditions and Privacy Notices. Get the details and learn about your options in the Privacy Dashboard at secure.t-mobile.com/terms." (*Id.* ¶ 11.) The website link directed the customer to T-Mobile's Privacy Dashboard website that contained a statement in bold, "We've updated our Terms & Conditions,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Privacy Notices, and Privacy Dashboard", provided a link to the 2025 T&Cs, and encouraged customers to read them. (*Id.*)

The 2025 T&Cs notify customers of the arbitration agreement in the very first introductory paragraph and also that they will accept the T&Cs by using or paying for T-Mobile services. (*Id.* ¶ 9.) All Plaintiffs continued to use their T-Mobile services after receiving this notification. (*Id.* ¶ 13.) To ensure all customers were aware of the 2025 updates, T-Mobile also notified Plaintiffs of the updated terms on their first bills following the roll out of the 2025 T&Cs. (*Id.* ¶ 12.) The bill statement provided as follows: "We've updated our Terms and Conditions and Privacy Notices. Get the details and learn about your options in the Privacy Dashboard at secure.t-mobile.com/terms." (*Id.*; *see* Sanchez Decl., Exs. 1–5.) As with the website link from the SMS notifying Plaintiffs of the 2025 T&Cs, this link directed the customer to T-Mobile's Privacy Dashboard website that contained a statement in bold, "We've updated our Terms & Conditions, Privacy Notices, and Privacy Dashboard," included a link to the 2025 T&Cs, and encouraged customers to read them. (Sanchez Decl. ¶ 12.)

The 2025 T&Cs include a mandatory arbitration provision under the large, bolded header "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**" (*Id.* ¶ 16.) The arbitration provision—in a manner nearly identical to all other relevant versions of the T&Cs—states in pertinent part:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit. See the "How can I dispute my charges?" section for details on the billing dispute process.
>
> ***Individualized Dispute Resolution and Arbitration.*** **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ALL CLAIMS AND DISPUTES BETWEEN YOU AND T-MOBILE WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THIS INCLUDES, BUT IS NOT LIMITED TO, CLAIMS AND DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES,**



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**OUR SERVICES, DEVICES, OR PRODUCTS, AND BILLS OR CHARGES. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND RELEVANT SUBSTANTIVE LAW, MUST ENFORCE APPLICABLE STATUTES OF LIMITATION, DEFENSES, AND PRIVILEGES, AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).**

This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below).

****************************************************

The arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflict with these T&Cs, in which case these T&C swill govern. The AAA rules are available at www.adr.org.

****************************************************

The arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either the Agreement or the arbitration clause, and whether any claim is subject to arbitration.

**<u>Class and Mass Action Waiver.</u> YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, MASS, OR CONSOLIDATED ACTION (THE "CLASS AND MASS ACTION WAIVER"). If you opt out of the arbitration provision as specified above, this Class and Mass Action Waiver provision will not apply to you. Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, mass, or representative proceeding without having complied with the opt out requirements in these T&Cs.**



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> **************************************************
>
> **<u>Jury Trial Waiver</u>.** If a claim proceeds in court rather than through arbitration, **YOU AND WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.**

(*Id.* ¶¶ 16–17, 19–21) (emphasis in original).)

T-Mobile similarly updated its T&Cs in 2023 and 2021 (the "2023 T&Cs" and "2021 T&Cs," respectively). As in the case of the 2025 T&Cs, T-Mobile notified Plaintiffs of them via a messaging campaign that explained to customers that they accepted the updated terms by continuing to use or paying for their T-Mobile service. (*Id.* ¶¶ 23–24, 36–41.) T-Mobile's records show that it sent such an email to each Plaintiff notifying them of the updated 2023 T&Cs and what would constitute acceptance. (*Id.* ¶ 24.) T-Mobile's records also reflect that it sent each Plaintiff both an email and an SMS message notifying them of the updated 2021 T&Cs and the means of acceptance. (*Id.* ¶¶ 38, 40.) In addition, Plaintiffs' first bill after the 2021 T&Cs took effect also included notice of the updated T&Cs described above. (*Id.* ¶¶ 41–42.) Both the 2023 and 2021 T&Cs include a prominent, easy-to-understand arbitration agreement requiring individual arbitration of "all claims and disputes" that are "in any way related to or concerning" Plaintiffs' agreements with T-Mobile and T-Mobile's services, devices, or products, including "billing disputes." (*Id.* ¶¶ 29, 46.) The 2023 and 2021 T&Cs also clearly inform customers that they would accept the T&Cs by using or paying for T-Mobile services, products, or devices. (*Id.* ¶¶ 27, 44.) Each Plaintiff continued to use their T-Mobile services after these T&Cs took effect, respectively. (*Id.* ¶¶ 25, 42.)

## III. <u>ARGUMENTS AND AUTHORITIES</u>

### A. The FAA Applies and Requires Enforcement of Plaintiffs' Arbitration Agreements.

The FAA applies to all written arbitration agreements in "contract[s] *evidencing* a transaction *involving* commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995) (emphases added) (quoting 9 U.S.C. § 2). Plaintiffs' agreements with T-Mobile are governed by the FAA because they relate to the provision of wireless services across state lines,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

thereby affecting interstate commerce. *See Goldberg v. Sweet,* 488 U.S. 252, 254–55 (1989) (noting telecommunications industry constitutes interstate commerce).

The interstate commerce nexus is also satisfied because Plaintiffs are citizens of different states than T-Mobile. T-Mobile is a Delaware corporation with its principal place of business in Washington and is therefore a citizen of both Delaware and Washington. (Am. Compl. ¶ 2; Sanchez Decl. ¶ 2); *see Hintze v. Pershing Direct Brokerage Servs.*, 940 F.2d 668 (9th Cir. 1991). And no Plaintiff is a citizen of Delaware or Washington, meaning the interstate commerce requirement is plainly satisfied. (*See* Am. Compl. ¶ 1.) Courts consistently hold that contracts between citizens of different states involve interstate commerce and trigger the application of the FAA. *See, e.g.*, *Fraher v. Verizon Wireless Servs., LLC*, No. 21-CV-00763-H-JLB, 2021 WL 2525732, at *2 n.2 (S.D. Cal. June 21, 2021) ("[T]he contract at issue, one for cell phone services between citizens of different states, clearly involves commerce . . . ."); *Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) (finding contract involved interstate commerce and FAA applied because the parties to the contract were citizens of different states); *Ghouri v. AmSher Collection Servs. Inc.*, No. 1:22-cv-00503 (RDA/JFA), 2022 WL 11964565, at *5 (E.D. Va. Oct. 19, 2022) (enforcing T-Mobile's arbitration agreement under FAA where "the Contract represents an agreement by two parties residing in two separate states involving a service extending across multiple jurisdictions," and the "nature of the parties' agreement necessitates interstate commerce"). In addition, T-Mobile's T&Cs and many of the Plaintiffs' individual contracts expressly provide that the FAA governs their arbitration agreements. (Sanchez Decl. ¶¶ 19, 32, 49, 73–74, 78, 89; *id.* at Exs. D–U); *see also Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (applying FAA's procedural rules based on choice-of-law clause).

The FAA preempts state law and requires enforcement of arbitration agreements by providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has interpreted the FAA "as reflecting both a 'liberal federal policy favoring arbitration,' . . . and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T*



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation modified). As the Supreme Court has explained, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Id.* at 344 (second alteration in original). Time after time, the Supreme Court has recognized this strong public policy in favor of arbitration. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000). To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."). Thus, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also BioOrigyn, LLC v. Fairhaven Health, LLC*, No. 2:20-cv-00285-RAJ, 2021 WL 2255122, at *3 (W.D. Wash. June 3, 2021) ("Any doubts as to the scope of an arbitration agreement should be resolved in favor of arbitrability."). In sum, the FAA applies here and requires enforcement of Plaintiffs' arbitration agreements.

### B. All Plaintiffs Entered Binding Arbitration Agreements with T-Mobile and Must Arbitrate Their Claims.

The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. *Bennett v. T-Mobile USA, Inc.*, No. 2:22-cv-01805-LK, 2024 WL229580, at *4 (W.D. Wash. Jan. 22, 2024). As discussed below, T-Mobile's T&Cs delegate that second inquiry to the arbitrator (though Plaintiffs' claims clearly fall within the scope of their arbitration agreements in any case). The threshold question— and the only one for the Court to decide—is whether the parties formed an agreement to arbitrate; that issue is governed by state law. *Id.* at *6; *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 431 (9th Cir. 2015). Under all applicable states' laws, Plaintiffs entered into valid agreements to arbitrate. The essential elements of a contract are offer, acceptance, and



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

consideration.[4] *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021); *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 283 P.3d 250, 255 (Nev. 2012); *Pulse Techs., Inc. v. Notaro*, 67 A.3d 778, 783 (Pa. 2013); *Trico Env't Servs., Inc. v. Knight Petroleum Co.,* 849 S.E.2d 538, 544 (Ga. 2020); *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006).

As set forth further below, Plaintiffs formed an agreement to arbitrate with T-Mobile by signing contracts containing arbitration agreements and/or by accepting T-Mobile's T&Cs through specified conduct, such as using or paying for their T-Mobile service.

**(1) Plaintiffs agreed to arbitrate by signing contracts with T-Mobile.**

Plaintiffs Oddo, Dwyer, Hyaduck, and Marcus all signed contracts containing binding arbitration agreements. Under each applicable state's laws, it is axiomatic that parties are bound by the contracts they sign. *See, e.g.*, *Extremity Healthcare, Inc. v. Access to Care Am., LLC*, 793 S.E.2d 529, 535 (Ga. Ct. App. 2016); *Peter W. Kero, Inc. v. Terminal Const. Corp.*, 78 A.2d 814, 817 (N.J. 1951); *Petrie v. Haddock*, 119 A.2d 45, 47 (Pa. 1956); *Burgess v. Buddy's Nw. LLC*, No. C15-5785 BHS, 2016 WL 7387099, at *2 (W.D. Wash. Dec. 21, 2016); *BZ Clarity Tent Sub LLC v. Ross Mollison Int'l Pty, Ltd.*, No. 215-CV-1065-JCM-CWH, 2016 WL 3536620, at *2 (D. Nev. June 28, 2016); *Fed. Deposit Ins. Corp. v. Rayman*, No. 92 C 3688, 1996 WL 254283, at *3 (N.D. Ill. May 13, 1996). As such, courts consistently enforce signed arbitration agreements. *See, e.g.*, *Stockling v. Evicore Healthcare MSI, LLC*, No. 23-21855, 2024 WL 3409444, at *3 (D.N.J. July 15, 2024); *Batiste v. Atlanta Gas Co.*, No. 1:15-CV-4144-ELR-JSA, 2016 U.S. Dist. LEXIS 90524, at *24 (N.D. Ga. June 13, 2016), *R. & R. adopted*, 2016 U.S. Dist. LEXIS 90786 (N.D. Ga. July 6, 2016); *Glavin v. JPMorgan Chase Bank, N.A.*, No. 23-1708, 2024 WL 1536739, at *2 (E.D. Pa. Apr. 9, 2024); *Gonzales v. Sitel Operating Corp.*, No. 219-CV-00876-GMN-VCF, 2020 WL 96900, at *2 (D. Nev. Jan. 7, 2020); *Bd. of Managers of*

[4] Under the 2025 T&Cs, the governing law is "the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which [the customers'] billing address in [T-Mobile's] records is located." (Sanchez Decl. ¶ 19.) T-Mobile's EIPs and Lease Agreements contain identical choice-of-law language. (*Id.* at ¶¶ 73–74, 78, 89.) While the analysis of contract formation implicates different state laws, the relevant states' laws are substantially similar as they relate to the elements of contract formation. (*Id.* at ¶ 5 (listing Plaintiffs' billing addresses).)



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Courtyards at Woodlands Condo. Ass'n v. IKO Chicago, Inc.*, 697 N.E.2d 727, 731 (Ill. 1998)

Plaintiffs Oddo, Dwyer, and Hyaduck executed Service Agreements containing an express arbitration provision and incorporating the then-current T&Cs, which also include an arbitration provision. (Sanchez Decl. ¶¶ 72, 77, 88.) Furthermore, these Plaintiffs signed Lease Agreements and EIPs that also include arbitration agreements. (*Id.* at ¶¶ 73–74, 78, 89.) Additionally, Plaintiff Marcus signed a purchase contract that includes an arbitration agreement and incorporates the T&Cs. (*Id.* ¶ 93.) Accordingly, these Plaintiffs' signatures on their contracts constitute assent to be bound by the arbitration agreements included and/or incorporated therein. *See, e.g.*, *Bennett*, 2024 WL 229580 at *6 (compelling arbitration of T-Mobile customer based on signed service agreement, EIP, and receipt); *Roitman v. T-Mobile USA Inc.*, No. 23-CV-6159 (ENV) (LKE), 2025 WL 3156503, at *10 (E.D.N.Y. July 28, 2025) (same); *Noah v. T-Mobile USA, Inc.*, No. C24-0885-JCC, 2024 U.S. Dist. LEXIS 195060, at *3 (W.D. Wash. Oct. 25, 2024) (same based on signed service agreement); *Middleton v. T-Mobile US, Inc.*, No. 1:20-cv-03276, 2022 WL 16828226, at *9 (E.D.N.Y. Aug. 24, 2022) (same based on signed receipts). T-Mobile's records indicate that Plaintiff Kahhan activated his T-Mobile service at a Costco store in February 2013. (Sanchez Decl. ¶ 80.) Under T-Mobile's regular practice and procedure, Plaintiff Kahhan could not have activated his T-Mobile service without signing a Service Agreement containing an express arbitration provision and accepting T-Mobile's T&Cs (including the arbitration agreement). (*Id.* ¶ 81.)

**(2) Plaintiffs agreed to arbitrate through their conduct.**

In addition to signing contracts, each Plaintiff accepted and agreed to be bound by T-Mobile's T&Cs—and the arbitration agreements included therein—by activating, using, and paying for T-Mobile service. Under all applicable states' laws, a party may manifest its assent to a contract through conduct. *See also Hrapczynski v. Bristlecone, Inc.*, No. 20-cv-06014, 2021 WL 3209852, at *5 (E.D. Pa. July 29, 2021) ("In Pennsylvania, acceptance of a contract 'may be manifested by conduct as well as by words.'" (quoting *Selig v. Phila. Title Ins. Co.*, 111 A.2d 147, 151 (Pa. 1955))); *Cochran v. Eason*, 180 S.E.2d 702, 704 (Ga. 1971) ("Assent to the terms



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

of a contract may be given other than by signatures."); *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 36 (Nev. 2018) ("Though arbitration agreements often appear in conventional two-party contracts, they can also arise from other written records where signatures are not required."); *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 950 (N.J. 2020) ("New Jersey contract law recognizes that in certain circumstances, conduct can constitute contractual assent."); *Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534, 543 (Ill. App. Ct. 2021) ("[I]t is also well settled that a party may, by acts and conduct, indicate assent to the terms of a written contract and become bound by its provisions, even though the party has not signed it.") (citation modified).

In July 2025, T-Mobile notified each Plaintiff via an SMS message that it was updating its T&C's effective August 1, 2025. (Sanchez Decl. ¶ 11.) T-Mobile also provided notice of the updated T&Cs to each Plaintiff on their August 2025 bill. (*Id.* ¶¶ 12–13.) The SMS message informed Plaintiffs that T-Mobile "updated our Terms and Conditions and Privacy Notices" and instructed them to "[g]et the details and learn about your options in the Privacy Dashboard at secure.t-mobile.com/terms." (*Id.* ¶ 11.) The website link directed Plaintiffs to T-Mobile's Privacy Dashboard website that contained a statement in bold, "We've updated our Terms & Conditions, Privacy Notices, and Privacy Dashboard", encouraged plaintiff to review the 2025 T&Cs, and provided a link thereto. (*Id.*) The first bill provided to customers after the 2025 T&Cs went into effect likewise stated, "We've updated our Terms and Conditions and Privacy Notices. Get the details and learn about your options in the Privacy Dashboard at secure.t-mobile.com/terms." (*Id.* ¶ 12.)

The 2025 T&Cs notified customers in the opening section that arbitration is required, followed by a detailed arbitration provision under a large, bolded header stating, "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE**?" (*Id.* ¶ 16 (emphasis in original).) Furthermore, the 2025 T&Cs clearly notified Plaintiffs how to accept—or not to accept—the T&Cs. (*Id.* ¶ 14.) Accordingly, all Plaintiffs received prominent and conspicuous notice of the 2025 T&Cs. And all Plaintiffs accepted the 2025 T&Cs by using T-Mobile's services after August 1, 2025.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(*Id.* ¶ 13.) Plaintiffs also accepted the 2023 T&Cs and the 2021 T&Cs by continuing to use T-Mobile service after being notified doing so would constitute acceptance, as described in detail above. (*Id.* ¶¶ 25, 42.)

Courts have regularly compelled T-Mobile customers to arbitrate claims based on the customer's acceptance of T-Mobile's T&Cs by conduct. This Court's decision in *Franck v. T-Mobile USA, Inc.*, is instructive. No. 2:24-cv-00234-RAJ, 2024 WL 4188971, at *2 (W.D. Wash. Sept. 12, 2024) (Jones, J). There, the Court found that the plaintiff assented to the arbitration provision in T-Mobile's 2023 T&Cs by continuing to use and "making payments following T-Mobile's notifying its customers of the updated contractual language." *Id.* Likewise, in *Gavrilovic v. T-Mobile USA.*, the court found that the plaintiff accepted the 2021 T&Cs by using his cell phone and having payments made to T-Mobile on his behalf. No. 21-12709, 2022, WL1086136, at *3–4 (E.D. Mich. Mar. 25, 2022). The court reasoned that the 2021 T&Cs "gave unambiguous notice that they contained an arbitration provision" and the Court rejected the plaintiff's argument that he was not bound by the them because he "never saw or read them," "never saw a billing statement which flagged the March 2021 Terms and Conditions," and did not personally pay his phone bill. *Id.* at *4; *see also Rendon v. T-Mobile USA, Inc.*, No. 2:24-cv-01666-SPG, slip op. at 5–6 (C.D. Cal. Aug. 30, 2024) (compelling arbitration after finding that T-Mobile had notified the plaintiff of the new May 2023 T&Cs via email, the email contained links to the full May 2023 T&Cs, and that plaintiff continued using her service after May 15, 2023); *Agyenim-Boateng v. T-Mobile Ne. LLC*, No. 5:25-CV-183-BO-BM, 2025 WL 3277336, at *4 (E.D.N.C. Oct. 10, 2025) (similar). The same analysis applies here. Plaintiffs paid for and used T-Mobile services after receiving notice that T-Mobile was updating its T&Cs in 2021, 2023, and 2025 and that doing so constituted agreement to the terms. (Sanchez Decl. ¶¶ 13, 25, 42, 71, 76, 85, 87.) Plaintiffs are therefore bound by the clear and conspicuous arbitration agreement contained in T-Mobile's T&Cs (along with their other agreements), and their claims are not properly before the Court.

Plaintiffs' acceptance of the 2025 T&C's during the course of this litigation only



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

underscores Plaintiffs' arbitration obligations. T-Mobile first filed a Motion to Compel Arbitration in this case on September 6, 2024, while it was pending in the District of New Jersey. ECF No. 11. T-Mobile explained that Plaintiffs Oddo, Hyaduck, Dwyer, and Kahhan (the "Transferred Plaintiffs") were bound by T-Mobile's 2021 and 2023 T&Cs because they accepted them by continuing to use their T-Mobile service after receiving notice of those updated Terms and Conditions. *Id.* at 12–17, 31–35. T-Mobile also attached copies of these (and prior T&Cs) containing arbitration agreements as exhibits to the supporting declaration of Judy Sanchez. *See* ECF 11-5 through 11-24.[5] The Transferred Plaintiffs were thus indisputably aware—through the very litigation they launched—that continued use and payment of their T-Mobile services after receiving notice of a change in the T&Cs would constitute acceptance. And when T-Mobile notified them in 2025 that "We've updated our Terms and Conditions" once again, they accepted the 2025 T&Cs through their conduct once more.

This is unquestionable assent to the 2025 T&Cs under this Court's recent decision in *Vargison v. Paula's Choice, LLC*, No. 2:24-CV-00342-TL, at *2 (W.D. Wash. Jan. 30, 2025), *opinion clarified*, 2025 WL 822659 (W.D. Wash. Mar. 13, 2025). There, three of the named plaintiffs made purchases on the defendant's website after the defendant filed a motion to compel arbitration in litigation between them, seeking to enforce the arbitration provision contained in the terms of use, which customers were "oblige[d] . . . to accept . . . when making purchases on its website." *Id.* at *1. The Court reasoned that "Plaintiffs' continuing to make purchases despite the ongoing litigation—particularly as it relates to notice and acceptance of the Terms of Use—is conduct that a reasonable person would understand to constitute assent." *Id.* at *2 (citation modified). Accordingly, the Court held that the post-motion purchases sufficiently evidenced the plaintiffs' notice of and assent to the website's terms of use:

> As Named Plaintiffs in this case, and specifically as the subjects of the instant motion to compel, these three Plaintiffs were put on

[5] This belies the Amended Complaint's allegation that the Transferred Plaintiffs have not "received a copy of T-Mobile's Terms and Conditions indicating that there was a mandatory arbitration provision and class action waiver . . . at any time [] through the present." Am. Compl. ¶ 44.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> notice of the existence of the arbitration agreement (and their acceptance thereof upon making a purchase) when Paula's Choice raised the issue in the ongoing litigation. . . . These three Plaintiffs' post-motion purchases demonstrate their assent to the website's updated Terms of Use, including the arbitration provision.

*Id.*

The Second Circuit reached the same result, applying Washington law, in *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 613–14 (2d Cir. 2020). This case further underscores the significance of Plaintiffs' acts of acceptance in the context of this litigation. There, the plaintiff sued Amazon, and Amazon moved to compel arbitration, taking the position that plaintiff accepted Amazon's terms and conditions by making purchases through its website. *Id.* at 614. After Amazon filed its motion, the plaintiff made at least twenty-seven purchases through Amazon's website. *Id.* Based on these acts of acceptance after undisputed notice in the litigation, the Court enforced the arbitration agreement, holding the plaintiff accepted the terms and conditions through his conduct. *Id.* at 614.

This Court should reach the same conclusion here. There is no dispute that the Transferred Plaintiffs were put on notice of the arbitration provision contained in T-Mobile's T&Cs when T-Mobile filed its first Motion to Compel Arbitration on September 6, 2024 (in addition to all the prior conspicuous notifications). The Transferred Plaintiffs knew that they had previously accepted the 2021 and 2023 T&Cs by using and paying for services after notification of the updates. Then, T-Mobile notified them by text message and bill of the updated 2025 T&Cs and clearly informed them that doing so constituted acceptance to the 2025 T&Cs. (Sanchez Decl. ¶¶ 10–14; *id.* at Exs. 1–5 (Transferred Plaintiffs' August 2025 bills for their T-Mobile service).) And, ***again,*** the Transferred Plaintiffs used and paid for T-Mobile serviceThe Transferred Plaintiffs therefore cannot reasonably claim that they lacked notice of the 2025 T&Cs or that they did not agree to them. *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 27 (E.D.N.Y. 2023) (relying on *Nicosia* and stating that "[t]here is no reasonable basis to find that Plaintiff has not assented to arbitration with Experian" because "Plaintiff has continued to utilize CreditWorks and consent to the TOU throughout the litigation with full knowledge of



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the Arbitration Agreement.") , *aff'd*, No. 19-CV-3343 (JS)(JMW), 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024); *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *12 (D.N.J. Dec. 29, 2022) (finding that under New Jersey law plaintiff had actual notice of arbitration agreement by "complet[ing] the 'checkout flow' process several times after [defendant] moved to compel arbitration" in a different forum). In addition to accepting the 2025 T&Cs, Plaintiff Hyaduck entered an EIP for an iPhone on September 6, 2025—over a month after the 2025 T&Cs took effect—containing an arbitration agreement.[6] (Sanchez Decl. ¶ 78.)

In sum, T-Mobile has established that Plaintiffs formed agreements to arbitrate with T-Mobile when they (i) signed contracts containing express arbitration agreements and/or incorporating T-Mobile's T&Cs and (ii) accepted and agreed to be bound by T-Mobile's T&Cs by using and paying for T-Mobile service after being notified that doing so would constitute assent through T-Mobile's messaging campaigns and the instant litigation. As set forth in more detail below, Plaintiffs' arbitration agreements delegate all other issues to the arbitrator, including issues of scope and enforceability. Because T-Mobile has satisfied its burden of proof on the sole issue of contract formation, the Court should enter an order compelling Plaintiffs to pursue their claims in arbitration.

### C. Plaintiffs' Arbitration Agreements Delegate All Remaining Issues to the Arbitrator.

The only issue for the Court to decide is one of contract formation because Plaintiffs' arbitration agreements include clear and unmistakable provisions that delegate questions of arbitrability to the arbitrator. The Supreme Court has held that when parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, such provisions must be enforced. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and internal quotation marks omitted); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("The delegation provision is an agreement to arbitrate threshold issues concerning

[6] Plaintiff Hyaduck's September 6, 2025 EIP lists the "buyer" as and is signed by Joshua Hyaduck" and states that it is "on behalf of Harry Hyaduck." (Sanchez Decl., Ex. 32)



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." (citing *Howsam*, 537 U.S., at 83–85)). Indeed, the Supreme Court has explained that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Here, all Plaintiffs agreed to the express delegation clause contained in the 2025 and 2023 T&Cs, which provides that "[t]he arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either the Agreement or the arbitration clause, and whether any claim is subject to arbitration." (Sanchez Decl. ¶ 20 (2025 T&Cs); *id.* ¶ 33 (virtually identical language in 2023 T&Cs)); *see Juarez v. T-Mobile USA, Inc.*, No. 2:24-cv-00700-SPG, slip op. at 14 (C.D. Cal. Aug. 23, 2024) (finding that T-Mobile 2023 T&Cs expressly delegate arbitrability). Furthermore, every applicable version of the T&Cs (and Plaintiffs Oddo, Dwyer, and Hyaduck's EIPs and Lease Agreements) provides that arbitrations will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration commenced. (Sanchez Decl. ¶¶ 21, 34, 50–51, 73–74, 78, 89.) The Ninth Circuit and courts across the country have repeatedly held that incorporating the AAA rules reflects a "clear and unmistakable" intent to delegate questions of arbitrability to the arbitrator, which include issues related to the scope and enforceability of the contract. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). Accordingly, this Court and others have held that the T-Mobile T&Cs delegate arbitrability by incorporating the AAA rules. *Bennett*, 2024 WL229580, at *8 (recognizing that "[t]he Ninth Circuit has held that incorporation of the AAA rules by reference often 'constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability'" and enforcing the delegation



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

clause in T-Mobile's 2021 T&Cs (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015))); *Franck,* 2024 WL 4188971, at *3 (enforcing delegation provision in T-Mobile's 2023 T&Cs); *Agyenim-Boateng,* 2025 WL 3277336, at *4 (same); *Noah*, 2024 U.S. Dist. LEXIS 195060, at *3 (enforcing delegation clause in T-Mobile's 2021 T&Cs); *Roitman*, WL 3156503, at *10 (same); *Moreno v. T-Mobile USA, Inc.*, No. 2:22-CV-00843-JHC, 2023 WL 401913, at *6 (W.D. Wash. Jan. 25, 2023) (enforcing delegation provision in T-Mobile's 2017 T&Cs); *Bellard v. T-Mobile USA, Inc.*, No. 2:25-CV-07138, 2025 WL 3165686, at *1 (C.D. Cal. Sept. 19, 2025).

"In a contract that delegates arbitrability to an arbitrator, the court's role is narrow." *Moreno*, 2023 WL 401913, at *6. Because of the delegation provisions in Plaintiffs' contracts and the T&Cs, this Court's role is only to determine whether the Parties agreed to arbitrate in the first instance. Questions of arbitrability—including whether Plaintiffs' claims fall within the scope of the arbitration agreements and challenges to the enforceability or conscionability of those agreements—must be decided by the arbitrator, not the Court. *See In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 4:23-md-03073-BCW (W.D. Mo. 2025), ECF 86 (recognizing that T-Mobile's T&Cs delegate questions of arbitrability, including "whether the agreement is invalid, unenforceable, or unconscionable," to the arbitrator, and that contract formation is the only issue for the Court); *Moreno*, 2023 WL 401913, at *6 (holding plaintiffs' argument that the arbitration agreement is substantively unconscionable was delegated to arbitrator under T-Mobile's 2017 T&Cs). Accordingly, with T-Mobile's evidence of contract formation, once the Court determines that Plaintiffs formed an agreement to arbitrate, the Court must "move the parties . . . into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357. But even if the Court were to consider these issues, as set forth below, the result would be the same—Plaintiffs' claims fall squarely within the scope of their fully enforceable arbitration agreements.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**(1) Plaintiffs' Claims Fall Within the Scope of Their Arbitration Agreements.**

Plaintiffs' arbitration agreements are broadly worded and cover the claims asserted against T-Mobile. For example, the 2025 T&Cs require the parties to arbitrate "all claims or disputes" "related to or concerning . . . [T-Mobile's] services, . . . bills or charges."[7] (Sanchez Decl. ¶ 16.) Similarly, the EIP and Lease Agreements require arbitration of "any and all claims or disputes in any way related to or concerning" T-Mobile's "services, . . . including any billing disputes." (*Id.* ¶¶ 73–74, 78, 89.) This Court has recognized the broad scope of the language included in T-Mobile's arbitration provision, holding it evidences an "intent to arbitrate all aspects of all disputes." *See, e.g.*, *Bennett,* 2024 WL 229580, at *21 (citation modified); *see also Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (arbitration clauses using the phrase "arising out of or relating to" an agreement are intended by parties to cover a much broader scope of disputes). Indeed, the Ninth Circuit held that an arbitration provision that "broadly state[d] that '[a]ny dispute arising out of, in connection with or relating to this Agreement shall be submitted for binding and final arbitration'" meant that "factual allegations need only 'touch matters' covered by the contract." *Optimum Prods. v. HBO*, 839 F. App'x 75, 77 (9th Cir. 2020) (second alteration in original) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1178 (W.D. Wash. 2014) (enforcing an arbitration provision that applied to "any dispute or claim relating in any way" given the broad scope created by the language). Moreover, strong federal public policy concerning the "liberal reading of arbitration agreements" also dictates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 n.27.

Here, Plaintiffs' claims challenge T-Mobile's alleged increases to the rates it charged and billed Plaintiffs for their wireless service plans. Those claims relate directly to T-Mobile's

[7] The 2023 and 2021 T&Cs likewise contain a broad arbitration provision covering "any and all claims or disputes […] in any way relating to or concerning the agreement" or "billing disputes." (Sanchez Decl. ¶¶ 29, 46.)



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

services, charges and billing practices and therefore fall squarely within the scope of the Plaintiffs' arbitration agreements. Accordingly, Plaintiffs' claims must be arbitrated.

**(2) Plaintiffs' Arbitration Agreements are Valid and Enforceable Under State Laws.**

Should Plaintiffs try to challenge the enforceability of their arbitration agreements, that again is an issue delegated to the arbitrator. But as an initial matter, Plaintiffs would bear the burden of establishing that their arbitration agreements are unenforceable or unconscionable. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1059 (9th Cir. 2020) ("As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." (quoting *Mortensen v. Bresnan Commc'ns*, LLC, 722 F.3d 1151, 1157 (9th Cir. 2013))). And this Court—and courts throughout the country—have enforced T-Mobile's arbitration agreement in the face of such challenges. *See Bennett*, 2024 WL 229580, at *15; *Franck,* 2024 WL 4188971, at *8; *Noah*, 2024 U.S. Dist. LEXIS 195060, at *3; *Moreno*, 2023 U.S. Dist. LEXIS 12911, at *16; *Saadeh v. T-Mobile USA, Inc.*, No. 2:21-cv-12871 (BRM) (JSA), 2022 WL 193968, at *4 (D.N.J. Jan. 21, 2022); *Frye v. T-Mobile USA, Inc.*, No. 21-cv-61653-KMM, 2022 WL 22628805, at *2–3 (S.D. Fla. Jan. 13, 2022); *Ghouri*, 2022 WL 11964565, at *5; *Gavrilovic*, 2022 WL 1086136, at *4; *Roitman.*, 2025 WL 3156503, at *10. Plaintiffs' arbitration agreements are valid and enforceable, and the Court should compel arbitration as it and numerous other courts have done on similar motions.

**(3) No Plaintiff Timely Opted Out of His Arbitration Agreements.**

Finally, Plaintiffs allege they have opted out of the arbitration provision in their contracts with T-Mobile. Plaintiffs are not disputing that contracts exist between them and T-Mobile. Nor could they, because the wireless service T-Mobile provides is governed by Terms and Conditions, which Plaintiffs accepted on multiple occasions. Instead, Plaintiffs allege that they opted out of one provision of their contracts—the arbitration agreements that preclude them from litigating in this forum. However, whether Plaintiffs validly opted out of their arbitration obligations is a delegated question of the arbitration agreement's existence or validity. *Collett*



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*v. Ancestry.com DNA LLC*, No. 19-CV-03743-RS, 2019 WL 13253477, at *3 (N.D. Cal. Dec. 19, 2019) ("[A]n arbitrator, not a court, must decide whether the opt-out was valid" because "whether plaintiffs successfully opted out of the contract is an issue of contract termination, not formation."); *Ahlstrom v. DHI Mortg. Co. GP, Inc.*, No. 17-CV-04383-BLF, 2018 WL 6268876, at *3 (N.D. Cal. Nov. 30, 2018) ("Given that Ahlstrom validly accepted the arbitrability provision, then, the question of whether he validly terminated his acceptance of the MAA [by opting out] is delegated to the arbitrator as an ancillary formation issue.").

Even if the Court were to consider Plaintiffs' claim they opted out of arbitration (and it should not), Plaintiffs did not timely opt out. As noted above, the T&Cs provided Plaintiffs the opportunity to opt out of the arbitration agreement within a specified time period. (Sanchez Decl. ¶¶ 51, 94.) Any opt out received after that deadline is invalid. (*Id.* ¶ 94.)

The Transferred Plaintiffs allege—and T-Mobile's records confirm—that they first submitted opt out requests in June 2024. (*Id.* ¶¶ 95–96; Sanchez Decl., Ex. 37 (extracted data of all opt out requests received from Plaintiffs).) These opt out requests were submitted years after their deadline to opt out and are therefore invalid:

- Plaintiff Oddo first activated his T-Mobile service in December 2011. Under the then-applicable T&Cs (July 2011 T&Cs), he was required to opt out "within thirty days" of activation. (*Id.* ¶ 96(a).) His deadline to opt out expired in January 2012. Plaintiff Oddo's June 2024 opt out attempt was therefore more than 12 years late.
- Plaintiff Dwyer first activated his T-Mobile service in August 2017. Under the then-applicable T&Cs (September 2016 T&Cs), he was required to opt out "within 30 days from the earlier of the date [he] purchased a device from [T-Mobile] or the date [he] activated a new line of service." (*Id.* ¶ 96(b).) His deadline to opt out expired in September 2017, at the latest. Plaintiff Dwyer's June 2024 opt out attempt was therefore nearly 7 years late.
- Plaintiff Kahhan first activated his T-Mobile service in February 2013. Under the then-applicable T&Cs (December 2011 T&Cs), he was required to opt out "within 30 days



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

from the date when [he] activated a new line of service." (*Id.* ¶ 96(c).) His deadline to opt out expired in March 2013. Plaintiff Kahhan's June 2024 opt out attempt was therefore over 11 years late.

- Plaintiff Hyaduck first activated his T-Mobile service in January 2021. Under the then-applicable T&Cs (September 2020 T&Cs), he was required to opt out "within 30 days from the earlier of the date [he] purchased a device from [T-Mobile] or the date [he] activated a new line of service." (*Id.* ¶ 96(d).) His deadline to opt out expired in February 2021, at the latest. Plaintiff Hyaduck's June 2024 opt out attempt was therefore 3 years late.[8]

Plaintiff Marcus also failed to timely opt out of arbitration. He first activated his T-Mobile service in February 2016. (*Id.* ¶¶ 90, 97(a).) Under the then-applicable T&Cs (February 2016 T&Cs), he was required to opt out "within 30 days from the earlier of the date [he] purchased a device from [T-Mobile] or the date [he] activated a new line of service." (*Id.* ¶ 97(a).) Therefore, Plaintiff Marcus was required to opt out by March 2016, at the latest. He did not attempt to opt out until February 2017, which was eleven months after his deadline expired. (*Id.* ¶ 97(a); *see* Sanchez Decl, Ex. 37.)

In addition, Plaintiff Marcus did not submit opt out requests for 23 lines associated with his account, including 9 of his active lines.[9] (Sanchez Decl. ¶ 98.) This alone forecloses any argument that he opted out of his arbitration obligations. When Plaintiff Marcus accepted the Terms and Conditions by using and paying for these lines, he agreed to arbitrate "all claims and disputes" between [him] and T-Mobile"—not just claims related to those particular lines.[10]

---

[8] The line that Plaintiff Hyaduck attempted to submit an opt out request for is not a T-Mobile line. (Sanchez Decl. ¶ 96(d)(i).)

[9] Marcus appears to concede that he did not attempt to opt out of every line by alleging that he opted out of only the "majority" of the lines on his account. (Am. Compl. ¶ 46.)

[10] The broad nature of T-Mobile's arbitration agreements is why every version of T-Mobile's T&Cs in effect since Marcus first activated service in February 2016 informed him that he "must opt out by the Opt Out Deadline ***for each line of Service***." (Sanchez Decl., Exs. A–B, D–L (emphasis added).)



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(Sanchez Decl., Ex. A (2025 T&Cs); *see id.* at Exs. A–B, D–L (similarly broad language in T&Cs dating back to when Plaintiff Marcus first activated service).) Thus, despite any other untimely opt out attempts for other lines, Marcus's failure to opt out of these lines means he remains bound to arbitrate his claims here.

### D. This Court Should Stay This Action Pending the Completion of Arbitration.

Because Plaintiffs are bound to arbitrate their disputes, this action should be stayed. The FAA requires a stay of this action pending arbitration. 9 U.S.C. § 3. ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . , the court in which such suit is pending, upon being satisfied that the issue . . . is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."). Absent a stay, T-Mobile will suffer prejudice by being forced to litigate in this forum despite Plaintiffs' agreements to arbitrate. T-Mobile therefore asks the Court to stay this action pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, T-Mobile respectfully requests the Court grant this Motion to Compel Arbitration and stay this case pending the outcome of arbitration.

DATED: January 16, 2026

I certify that this memorandum contains 8,280 words, in compliance with the Local Civil Rules.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

CORR CRONIN LLP

*s/ Michael Moore*
Michael A. Moore, WSBA No. 27047
Thomas J. Bone, WSBA No. 43965
1015 Second Avenue, Floor 10
Seattle, WA 98104
Tel: (206) 625-8600
Fax: (206) 625-0900
mmoore@corrcronin.com
jbone@corrcronin.com

*s/ Kristine M. Brown*
Kristine McAlister Brown (*Pro Hac Vice*)
David Carpenter (*Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
kristy.brown@alston.com
david.carpenter@alston.com

*Attorneys for Defendant T-Mobile USA, Inc.*