THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER ODDO, HARRY HYADUCK, SR., LARRY KAHHAN, GERALD DWYER, and SAM MARCUS, on behalf of themselves and all other persons similarly situated,

Plaintiffs,

v.

T-MOBILE USA, INC.,

Defendant.

Case No. 2:25-cv-01651-RAJ

**DECLARATION OF JUDY SANCHEZ IN SUPPORT OF T-MOBILE'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**

I, Judy Sanchez, declare:

1.      My name is Judy Sanchez.  I am over the age of 18 and am competent to make this declaration.  I am employed as a custodian of records for T-Mobile USA, Inc. ("T-Mobile"), working in Legal Affairs: Small Claims, Arbitration, Records in Albuquerque, New Mexico. The facts set forth herein are based upon my personal knowledge, my familiarity with T-Mobile's policies and practices, and upon my review of business records of T-Mobile, which records were made by, or from information transmitted by, a person with knowledge of the event described therein, at or near the time of the event described, and are kept in the ordinary course of the regularly conducted business activity of such person and T-Mobile, and it is the regular practice of that business activity to make such records.  If called as a witness to testify regarding

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  these facts, I could and would do so competently.

2  ## Background About T-Mobile

3      2.     T-Mobile USA, Inc. is incorporated in Delaware and has its principal place of

4  business in Washington.

5      3.     T-Mobile USA, Inc. provides wireless communication services throughout the

6  United States.

7  ## Plaintiffs Are Current T-Mobile Customers

8      4.     T-Mobile's records reflect that Plaintiffs Oddo, Hyaduck, Kahhan, Dwyer, and

9  Marcus (collectively, "Plaintiffs") are current T-Mobile customers.

10      5.     Plaintiff Oddo's billing address is in New Jersey, Plaintiff Hyaduck's billing

11  address is in Georgia, Plaintiff Kahhan's billing address is in Nevada, Plaintiff Dwyer's billing

12  address is in Pennsylvania, and Plaintiff Marcus' billing address is in Illinois.

13      6.     It is T-Mobile's regular practice and procedure to require customers to agree to

14  T-Mobile's Terms and Conditions when they activate a new line of service.  If a customer fails

15  to sign a Service Agreement or otherwise accept T-Mobile's Terms and Conditions (including

16  the arbitration agreement), T-Mobile does not activate the new line of service for the customer.

17  ## T-Mobile's 2025 Terms and Conditions

18      7.     T-Mobile updates the Terms and Conditions governing its relationships with its

19  customers from time to time.

20      8.     From August 1, 2025 to the present, T-Mobile's August 2025 Terms and

21  Conditions were in effect.  Attached hereto as **Exhibit A** is a true and correct copy of T-Mobile's

22  August 2025 Terms and Conditions ("2025 T&Cs").

23      9.     The 2025 T&Cs notify customers of the arbitration agreement in the very first

24  unnumbered paragraph:

25

26

27  DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 2

1
2
3
4

> Thanks for choosing T-Mobile! We are pleased that you selected us as your wireless provider. Please use this page as a reference for questions about your T-Mobile services. These Terms & Conditions, as updated from time to time ("T&Cs"), contain important information about your relationship with us, including requiring individual mandatory binding arbitration of disputes, instead of class actions or jury trials.

5 **Exhibit A** at 2.

6
7
10.      In July 2025, T-Mobile sent active account holders notice via email, SMS text message, or direct mail of the updated 2025 T&Cs.

8
9
10
11
12
13
14
15
11.      T-Mobile's records reflect that SMS text messages were sent to active T-Mobile lines for Plaintiff Oddo, Plaintiff Hyaduck, Plaintiff Dwyer, Plaintiff Kahhan, and Plaintiff Marcus in July 2025.  The SMS text message stated, "We've updated our Terms and Conditions and Privacy Notices.  Get the details and learn about your options in the Privacy Dashboard at secure.t-mobile.com/terms."   The website link directed Plaintiffs to T-Mobile's Privacy Dashboard website that contained a statement in bold "We've updated our Terms & Conditions, Privacy Notices, and Privacy Dashboard," provided a link to the 2025 T&Cs, and encouraged customers to read them.

16
17
18
19
20
21
22
23
24
25
12.      T-Mobile also provided every customer with notification of the updated 2025 T&Cs on their first bill following the update.  If the customer opted into electronic billing, the notice was provided on the e-bill.  If the customer received paper bills, the notification appeared on the paper bill.  The bill statement provided as follows: "We've updated our Terms and Conditions and Privacy Notices. Get the details and learn about your options in the Privacy Dashboard at secure.t-mobile.com/terms."   Like the website link included in the SMS text messages sent to Plaintiffs, the website link directed Plaintiffs to T-Mobile's Privacy Dashboard website that contained a statement in bold, "We've updated our Terms & Conditions, Privacy Notices, and Privacy Dashboard," provided a link to the 2025 T&Cs, and encouraged customers to read them.

26
27
13.      T-Mobile's records reflect that Plaintiffs were notified of the updated 2025 T&Cs

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 3

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

on their first bill after the 2025 T&Cs took effect.  Attached hereto are true and correct copies of the first, second to last, and last pages of the August 2025 bill for Plaintiff Oddo (**Exhibit 1**), Plaintiff Hyaduck (**Exhibit 2**), Plaintiff Kahhan (**Exhibit 3**), Plaintiff Dwyer (**Exhibit 4**), and Plaintiff Marcus (**Exhibit 5**).  These bills show that Plaintiffs continued to use and pay for T-Mobile services after the 2025 T&Cs took effect.

14.    The 2025 T&Cs notify customers how to accept—or not to accept—the 2025 T&Cs:

> You accept these T&Cs by doing any of the following things:
>
> - Giving us a written or electronic signature or confirmation, or telling us orally that you accept;
> - Activating, using or paying for the Service, Product, or Device; or
> - Opening the Device box.
>
> If you don't want to accept these T&Cs, don't do any of these things.

**Exhibit A** at 3.

15.    "Device" is defined in the 2025 T&Cs to include "[a]ny equipment for which we provide Services or which we provide to you to be used with our Services, like a phone, handset, tablet, or accessory."  **Exhibit A** at 3.

16.    The 2025 T&Cs include a mandatory arbitration provision under the large, bolded header "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**"  **Exhibit A** at 10.  The arbitration provision states in pertinent part:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit. See the "How can I dispute my charges?" section for details on the billing dispute process.
>
> ***Individualized Dispute Resolution and Arbitration.*** **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ALL CLAIMS AND DISPUTES BETWEEN YOU AND T-MOBILE WILL BE RESOLVED BY INDIVIDUAL**

**BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THIS INCLUDES, BUT IS NOT LIMITED TO, CLAIMS AND DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES, OR PRODUCTS, AND BILLS OR CHARGES. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND RELEVANT SUBSTANTIVE LAW, MUST ENFORCE APPLICABLE STATUTES OF LIMITATION, DEFENSES, AND PRIVILEGES, AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).**

This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below).

**Exhibit A** at 10 (emphasis in original).

17.     The 2025 T&Cs have a class and mass action waiver and a jury trial waiver that provide as follows:

**Class and Mass Action Waiver. YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, MASS, OR CONSOLIDATED ACTION (THE "CLASS AND MASS ACTION WAIVER"). If you opt out of the arbitration provision as specified above, this Class and Mass Action Waiver provision will not apply to you. Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, mass, or representative proceeding without having complied with the opt out requirements in these T&Cs.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 5

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

> **Jury Trial Waiver.** If a claim proceeds in court rather than through arbitration, **YOU AND WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.**

**Exhibit A** at 12 (emphasis in original).

18.     The 2025 T&Cs provide an option to opt out of the arbitration requirements within a prescribed 30-day period by calling T-Mobile or online at www.t-mobiledisputeresolution.com:

> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT INSTEAD OF BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF (1) THE DATE YOU PURCHASED A PRODUCT OR DEVICE FROM US OR (2) THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (together, the "Opt Out Deadline").** You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-855-572-0776 or online at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue all claims in arbitration or small claims court.**

**Exhibit A** at 10-11 (emphasis in original).

19.     The 2025 T&Cs contain a choice of law provision stating:

> The Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which your billing address in our records is located, without regard to the conflicts of laws rules of that state or jurisdiction. Foreign laws do not apply. Arbitration or court proceedings must be in the county and state or jurisdiction in which your billing address in our records is located, but not outside the U.S. or Puerto Rico.

**Exhibit A** at 12.

20.     The 2025 T&Cs state that "[t]he arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either the Agreement or the arbitration clause, and whether any claim is subject to arbitration." **Exhibit A** at 12.

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

21.    The 2025 T&Cs also provide that "[t]he arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflict with these T&Cs, in which case these T&Cs will govern. The AAA rules are available at www.adr.org." **Exhibit A** at 11.

### T-Mobile's 2023 Terms and Conditions

22.    From May 15, 2023 to July 31, 2025, T-Mobile's May 2023 Terms and Conditions were in effect.  Attached hereto as **Exhibit B** is a true and correct copy of T-Mobile's May 2023 Terms and Conditions ("2023 T&Cs").

23.    In April 2023, all active T-Mobile account holders were sent notice via email or SMS text message of the updated 2023 T&Cs, which explained that account holders accept the updated May 2023 Terms and Condition by using their service after May 15, 2023.   A true and correct copy of this email is attached hereto as **Exhibit C**.

24.    T-Mobile's records reflect that email messages were sent to Plaintiff Oddo, Plaintiff Hyaduck, Plaintiff Dwyer, Plaintiff Kahhan, and Plaintiff Marcus in April 2023.

25.    T-Mobile's records reflect that Plaintiffs continued to use and pay for T-Mobile service after the 2023 T&Cs took effect.  Attached hereto are true and correct copies of the first and last pages of the first bill following the roll out of the 2023 T&Cs for Plaintiff Oddo (**Exhibit 6**), Plaintiff Hyaduck (**Exhibit 7**), Plaintiff Kahhan (**Exhibit 8**), and Plaintiff Dwyer (**Exhibit 9**), and Plaintiff Marcus (**Exhibit 10**).

26.    The 2023 T&Cs notify customers of the arbitration agreement in the very first unnumbered paragraph:

> Thanks for choosing T-Mobile! We are pleased that you selected us as your wireless provider. Please use this page as a reference for questions about your service and the terms and conditions of service that govern the service(s) you purchased from us. These Terms & Conditions ("T&Cs") contain important information about your relationship with us, including individual mandatory binding arbitration of disputes between us, instead of class actions or jury

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 7

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

trials. By Accepting these T&Cs, you agree, on behalf of yourself, any person on your account, an Authorized User, and any person you allow to use the Services, Product, or your Device, to be bound by these provisions.

**Exhibit B** at 1.

27.     The 2023 T&Cs notify customers how to accept—and not to accept—the 2023 T&Cs:

You accept these T&Cs by doing any of the following things:

- giving us a written or electronic signature or confirmation, or telling us orally that you accept;
- activating, using or paying for the Service or a Device; or
- opening the Device box.

If you don't want to accept these T&Cs, don't do any of these things.

**Exhibit B** at 2.

28.     "Device" is defined in the 2023 T&Cs to include "[a]ny equipment for which we provide Service or which we provide to you to be used with our Service, like a phone, handset, tablet, SIM card, or accessory." **Exhibit B** at 3.

29.     The 2023 T&Cs include a mandatory arbitration provision under the large, bolded header "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**"  **Exhibit B** at 6.  The arbitration provision states in pertinent part:

By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit.

***Individualized Dispute Resolution and Arbitration.*** **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS**

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 8

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES AN RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES** [sic]

This includes any claims against other parties relating to Services, Products, or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third- party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below).

**Exhibit B** at 6-7 (emphasis in original).

30.     The 2023 T&Cs have class and mass action waivers and a jury trial waiver that provide as follows:

> **Class and Mass Action Waiver. YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, MASS, OR CONSOLIDATED ACTION. If you opt out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you. Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, mass, or representative proceeding without having complied with the opt out requirements above.**
>
> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
>
> **Jury Trial Waiver.** If a claim proceeds in court rather than through arbitration, **YOU AND WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.**

**Exhibit B** at 9-10 (emphasis in original).

31.     The 2023 T&Cs provide an option to opt out of the arbitration requirements within a prescribed 30-day period by calling T-Mobile or online at www.t-

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 9

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

mobiledisputeresolution.com:

> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A PRODUCT OR DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline")**. You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or online at <u>www.T-Mobiledisputeresolution.com</u>. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue your claim in arbitration or small claims court**.

**Exhibit B** at 7 (emphasis in original).

32.     The 2023 T&Cs also contain a choice of law provision stating:

> This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which your billing address in our records is located, without regard to the conflicts of laws rules of that state or jurisdiction. Foreign laws do not apply. Arbitration or court proceedings must be in the county and state or jurisdiction in which your billing address in our records is located, but not outside the U.S. or Puerto Rico.

**Exhibit B** at 10.

33.     The 2023 T&Cs state that "[t]he arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration." **Exhibit B** at 9.

34.     The 2023 T&Cs also provide that "[t]he arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflict with our agreement in these T&Cs, in which case these T&Cs will govern. The AAA rules are available at www.adr.org." **Exhibit B** at 8.

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 10

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**T-Mobile's March 2021 Terms and Conditions**

35.    From March 1, 2021 to May 14, 2023, T-Mobile's March 2021 Terms and Conditions were in effect.  Attached hereto as **Exhibit D** is a true and correct copy of T-Mobile's March 2021 Terms and Conditions ("2021 T&Cs").

36.    T-Mobile sent notice of the 2021 T&Cs to all active T-Mobile customers, including all legacy Sprint customers, via three different means.  First, T-Mobile sent e-mails to all primary account holders during the period February 24, 2021 through March 12, 2021.  These e-mails were delivered in English and Spanish depending on the customers' language preference and contained a link to the 2021 T&Cs.  The e-mail sent to primary account holders stated:

> We've also updated our Terms and Conditions, effective March 1, 2021.  These updates relate to our network and dispute resolution practices.  By using your service after the effective date, you'll agree to the updated Terms and Conditions.
>
> We encourage you to read the **T-Mobile Privacy Notice** [website link] and the **Terms & Conditions** [website link].  If you have any questions, please email us at privacy@t-mobile.com, or call us toll-free at 888-211-4727.

37.    The website link directed the customer to T-Mobile's 2021 T&Cs located at https://www.t-mobile.com/responsibility/legal/terms-and-conditions.

38.    T-Mobile's records reflect that emails were sent to Plaintiff Oddo, Plaintiff Hyaduck, Plaintiff Kahhan, Plaintiff Dwyer, and Plaintiff Marcus in February and/or March 2021.

39.    Second, T-Mobile sent an SMS text message to all active service lines (primary account holder and all active phone numbers on the account) between March 9, 2021 and April 2, 2021.  Again, T-Mobile sent the SMS in both English and Spanish depending on the customers' language preference.  The SMS stated "We're updating our Terms & Conditions. Visit t-mo.co/terms15 for details."  The website link directed the customer to T-Mobile's 2021 T&Cs.

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

40.     T-Mobile's records reflect that SMS text messages were sent to active T-Mobile lines for Plaintiff Oddo, Plaintiff Hyaduck, Plaintiff Kahhan, Plaintiff Dwyer, and Plaintiff Marcus in March 2021.

41.     Third, T-Mobile provided every customer with notification of the updated 2021 T&Cs on their first bill following the update.  If the customer opted into electronic billing, the notice was provided on the e-bill.  If the customer received paper bills, the notification appeared on the paper bill.  The notice on the bills provided the website address to access the 2021 T&Cs.

42.     T-Mobile's records reflect that Plaintiffs were notified of the updated 2021 T&Cs on their first bill after the 2021 T&Cs took effect.  Attached hereto are true and correct copies of the first and last pages of the first bill following the roll out of the 2021 T&Cs for Plaintiff Oddo (**Exhibit 11**), Plaintiff Hyaduck (**Exhibit 12**), Plaintiff Kahhan (**Exhibit 13**), Plaintiff Dwyer (**Exhibit 14**), and Plaintiff Marcus (**Exhibit 15**).  These bills show that Plaintiffs continued to use and pay for T-Mobile services after the 2021 T&Cs took effect.

43.     The 2021 T&Cs notify customers of the arbitration agreement in the very first unnumbered paragraph:

> Thanks for choosing T-Mobile.  Please read these Terms & Conditions ("T&Cs"), which contain important information about your relationship with T-Mobile, including mandatory arbitration of disputes between us, instead of class actions or jury trials.  You will become bound by these provisions once you accept these T&Cs.

**Exhibit D** at 1.

44.     The 2021 T&Cs also notify customers how to accept—and not to accept—the 2021 T&Cs:

> You accept these T&Cs by doing any of the following things:
>
> - giving us a written or electronic signature or confirmation, or telling us orally that you accept;
> - activating, using or paying for the Service or a Device; or
> - opening the Device box.

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 12

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

If you don't want to accept these T&Cs, don't do any of these things.

**Exhibit D** at 2.

45.    "Device" is defined in the 2021 T&Cs to include "[a]ny equipment for which we provide Service or which we provide to you to be used with our Service, such as a phone, handset, tablet, SIM card, or accessory." **Exhibit D** at 2.

46.    The 2021 T&Cs include a mandatory arbitration provision under the large, bolded header "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**" **Exhibit D** at 3.  The arbitration provision states in pertinent part:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit. For additional terms and conditions governing a dispute between us, including how to dispute Charges assessed to you on your bill, choice of law, disclaimers of certain warranties, limitations of liabilities, and your indemnification obligations, see "Other Terms Regarding Dispute Resolution" below.
>
> **<u>Dispute Resolution and Arbitration.</u> YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 13

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

ATTORNEYS' FEES).

**Exhibit D** at 3-4 (emphasis in original).

47. The 2021 T&Cs have a class action waiver and a jury trial waiver that provide as follows:

> **Class Action Waiver.  YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS, REPRESENTATIVE, MASS, OR CONSOLIDATED ACTION.**
>
> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
>
> **Jury Trial Waiver.** If a claim proceeds in court rather than through arbitration, **YOU AND WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.**

**Exhibit D** at 3-4, 6 (emphasis in original).

48. The 2021 T&Cs provide an option to opt out of the arbitration requirements within a prescribed 30-day period by calling T-Mobile or online at www.t-mobiledisputeresolution.com:

> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline")**. You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or online at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue your claim in arbitration or small claims court**.

**Exhibit D** at 4 (emphasis in original).

49. The 2021 T&Cs also contain a choice of law provision stating:

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 14

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3
4

This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which your billing address in our records is located, without regard to the conflicts of laws rules of that state or jurisdiction. Foreign laws do not apply. Arbitration or court proceedings must be in the county and state or jurisdiction in which your billing address in our records is located, but not outside the U.S.; or Puerto Rico.

**Exhibit D** at 29.

50.     The 2021 T&Cs also provide that "[t]he arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflicts with our agreement in these T&Cs, in which case these T&Cs will govern. The AAA rules are available at www.adr.org." **Exhibit D** at 5.

## Previous Terms and Conditions

51.     Every version of T-Mobile's Terms and Conditions that has been effect since Plaintiffs first activated service with T-Mobile has included an arbitration agreement, class action waiver, jury trail waiver, opt out provision, and has incorporated the AAA rules.

52.     From September 1, 2020 to February 28, 2021, T-Mobile's September 2020 Terms and Conditions were in effect.  Attached hereto as **Exhibit E** is a true and correct copy of the September 2020 Terms and Conditions.

53.     From June 2, 2019 through August 31, 2020, T-Mobile's June 2019 Terms and Conditions were in effect.  Attached hereto as **Exhibit F** is a true and correct copy of the June 2019 Terms and Conditions.

54.     From August 22, 2018 through June 1, 2019, T-Mobile's August 22, 2018 Terms and Conditions were in effect.  Attached hereto as **Exhibit G** is a true and correct copy of the August 22, 2018 Terms and Conditions.

55.     From August 10, 2018 through August 21, 2018, T-Mobile's August 10, 2018 Terms and Conditions were in effect.  Attached hereto as **Exhibit H** is a true and correct copy

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 15

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

of the August 10, 2018 Terms and Conditions.

56.     From September 20, 2017 through August 9, 2018, T-Mobile's September 2017 Terms and Conditions were in effect.  Attached hereto as **Exhibit I** is a true and correct copy of the September 2017 Terms and Conditions.

57.     From September 1, 2016 to September 19, 2017, T-Mobile's September 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit J** is a true and correct copy of the September 2016 Terms and Conditions.

58.     From March 17, 2016 through August 31, 2016, T-Mobile's March 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit K** is a true and correct copy of the March 2016 Terms and Conditions.

59.     From February 17, 2016 through March 16, 2016, T-Mobile's February 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit L** is a true and correct copy of the February 2016 Terms and Conditions.

60.     From January 25, 2016 through February 16, 2016, T-Mobile's January 2016 Terms and Conditions were in effect.  Attached hereto as **Exhibit M** is a true and correct copy of the January 2016 Terms and Conditions

61.     From November 14, 2015 through January 24, 2016, T-Mobile's November 2015 Terms and Conditions were in effect.  Attached hereto **Exhibit N** is a true and correct copy of the November 2015 Terms and Conditions.

62.     From June 12, 2015 through November 13, 2015, T-Mobile's June 2015 Terms and Conditions were in effect.  Attached hereto as **Exhibit O** is a true and correct copy of the June 2015 Terms and Conditions.

63.     From March 18, 2015 through June 11, 2015, T-Mobile's March 2015 Terms and Conditions were in effect.  Attached hereto as **Exhibit P** is a true and correct copy of the March 2015 Terms and Conditions.

64.     From November 10, 2014 through March 17, 2015, T-Mobile's November 2014

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 16

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1     Terms and Conditions were in effect.  Attached hereto as **Exhibit Q** is a true and correct copy

2     of the November 2014 Terms and Conditions.

3         65.     From March 27, 2014 through November 9, 2014, T-Mobile's March 2014 Terms

4     and Conditions were in effect.  Attached hereto as **Exhibit R** is a true and correct copy of the

5     March 2014 Terms and Conditions.

6         66.     From October 20, 2013 through March 26, 2014, T-Mobile's October 2013

7     Terms and Conditions were in effect.  Attached hereto as **Exhibit S** is a true and correct copy of

8     the October 2013 Terms and Conditions.

9         67.     From December 30, 2011 to October 19, 2013, T-Mobile's December 2011

10    Terms and Conditions were in effect.  Attached hereto as **Exhibit T** is a true and correct copy of

11    the December 2011 Terms and Conditions.

12        68.     From July 24, 2011 to December 29, 2011, T-Mobile's July 2011 Terms and

13    Conditions were in effect.  Attached hereto as **Exhibit U** is a true and correct copy of the July

14    2011 Terms and Conditions.

15                              **Plaintiff Christopher Oddo**

16        69.     T-Mobile's records reflect that Plaintiff Christopher Oddo is a current T-Mobile

17    customer, who first activated service in December 2011. At that time the July 2011 Terms and

18    Conditions were in effect.  *See* **Exhibit U**.

19        70.     Per T-Mobile's regular practice and procedure, Plaintiff Oddo would not have

20    been able to activate the line of service in December 2011 if he did not sign a Service Agreement

21    or otherwise accept and agree to T-Mobile's Terms and Conditions (including the arbitration

22    agreement).

23        71.     T-Mobile's records reflect that Plaintiff Oddo paid for and used T-Mobile

24    services after March 1, 2021, May 15, 2023, and August 1, 2025, which are the effective dates

25    of the 2021 T&Cs, 2023 T&Cs, and 2025 T&Cs, respectively.  *See* **Exhibit 11**; **Exhibit 6**;

26    **Exhibit 1**.

27    DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
      T-MOBILE'S MOTION TO COMPEL ARBITRATION
      AND STAY ACTION
      Case No. 2:25-cv-01651-RAJ – Page 17

**Corr Cronin llp**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

72.    T-Mobile's records reflect that Plaintiff Oddo executed a Service Agreement on March 2, 2017.  Attached as **Exhibit 16** is a true and correct copy of the Service Agreement that Plaintiff Oddo signed on March 2, 2017.  The Service Agreement incorporates by reference T-Mobile's Terms and Conditions.  **Exhibit 16** at 1.  The Service Agreement also informed Plaintiff Oddo that: (1) he was agreeing to T-Mobile's Terms and Conditions and provided the website and phone number to access the then-current Terms and Conditions, which included an arbitration agreement; and (2) T-Mobile requires "**ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION**.  For details see www.T-Mobile.com/terms-conditions." **Exhibit 16** at 1 (emphasis in original).

73.    T-Mobile's records reflect that Plaintiff Oddo also signed JUMP! ON DEMAND Lease Agreements ("Lease Agreements") with T-Mobile on August 10, 2016, September 21, 2016, October 17, 2016, March 31, 2017, August 12, 2018, and October 24, 2019.  True and correct copies of the Lease Agreements are attached hereto as **Exhibit 17** (August 10, 2016); **Exhibit 18** (September 21, 2016); **Exhibit 19** (October 17, 2016); **Exhibit 20** (March 31, 2017); **Exhibit 21** (August 12, 2018); and **Exhibit 22** (October 24, 2019).  Each of these Lease Agreements that Plaintiff Oddo signed stated that "[t]his Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located, without regard to the conflicts of laws rules of that state."  **Exhibit 17** at 7; **Exhibit 18** at 6; **Exhibit 19** at 6; **Exhibit 20** at 6; **Exhibit 21** at 6; and **Exhibit 22** at 6.  The Lease Agreements each contained: (1) a requirement to arbitrate "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS JUMP! ON DEMAND LEASE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCUDING ANY BILLING DISPUTES"; (2) an option to opt out of the arbitration provision within a specified time period; (3) a jury trial waiver; (4) a class action waiver; and (5) a provision incorporating the AAA rules.  **Exhibit 17** at 5-6; **Exhibit 18** at 4-5; **Exhibit 19** at 4-5; **Exhibit 20** at 4-5; **Exhibit 21** at 4-5; and **Exhibit 22** at 4-

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 18

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

5 (emphasis in original).

74.    T-Mobile's records reflect that Plaintiff Oddo also signed five Equipment Installment Plan contracts ("EIP") with T-Mobile, one on November 8, 2017, April 27, 2021, and October 19, 2021, respectively, and two on November 16, 2021.  True and correct copies of the EIPs are attached hereto as **Exhibit 23** (November 8, 2017); **Exhibit 24** (April 27, 2021); **Exhibit 25** (October 19, 2021); **Exhibit 26** (November 16, 2021); and **Exhibit 27** (November 16, 2021).  These EIPs stated that "[t]his agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located, without regard to the conflicts of laws rules of that state."  **Exhibit 23** at 5; **Exhibit 24** at 5; **Exhibit 25** at 5; **Exhibit 26** at 5; and **Exhibit 27** at 5 (emphasis in original).  The EIPs each included: (1) a requirement to arbitrate "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCUDING ANY BILLING DISPUTES"; (2) an option to opt out of the arbitration provision within a specified time period; (3) a jury trial waiver; (4) a class action waiver; and (5) a provision incorporating the AAA rules. **Exhibit 23** at 2-3; **Exhibit 24** at 3-4; **Exhibit 25** at 3-4; **Exhibit 26** at 3-4; and **Exhibit 27** at 3-4 (emphasis in original).

### **Plaintiff Harry Hyaduck**

75.    T-Mobile's records reflect that Plaintiff Harry Hyaduck is a current T-Mobile customer, who first migrated from Sprint to T-Mobile on or around January 14, 2021.  At that time, T-Mobile's September 2020 Terms and Conditions were in effect.  *See* **Exhibit E**.

76.    T-Mobile's records reflect that Plaintiff Hyaduck paid for and used T-Mobile services after March 1, 2021, May 15, 2023, and August 1, 2025, which are the effective dates of the 2021 T&Cs, 2023 T&Cs, and 2025 T&Cs, respectively.  *See* **Exhibit 12**; **Exhibit 7**; **Exhibit 2**.

77.    T-Mobile's records reflect that Plaintiff Hyaduck executed Service Agreements

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 19

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

on January 14, 2021 and January 15, 2021.  True and correct copies of the Service Agreements are attached hereto as **Exhibit 28** (January 14, 2021) and **Exhibit 29** (January 15, 2021).  The Service Agreements incorporate by reference T-Mobile's Terms and Conditions.  **Exhibit 28** at 1; **Exhibit 29** at 1.  The January 14, 2021 Service Agreement also informed Plaintiff Hyaduck that: (1) he was agreeing to T-Mobile's Terms and Conditions and provided the website and phone number to access the then-current Terms and Conditions, which included an arbitration agreement; and (2) "**T-MOBILE REQUIRES ARBITRATION OF DISPUTES UNLESS YOU PREVIOUSLY OPTED-OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS.**"  **Exhibit 28** at 1 (emphasis in original).  The January 15, 2021 Service Agreement also informed Plaintiff Hyaduck that: (1) he was agreeing to T-Mobile's Terms and Conditions and provided the website and phone number to access the then-current Terms and Conditions, which included an arbitration agreement; and (2) "**T-Mobile requires ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION**.  For details see www.T-Mobile.com/terms-conditions."  **Exhibit 29** at 1 (emphasis in original).

78.    T-Mobile's records reflect that Plaintiff Hyaduck executed two EIPs with T-Mobile on January 15, 2021 and one EIP on September 6, 2025.  True and correct copies of the EIPs are attached hereto as **Exhibit 30** (January 15, 2021); **Exhibit 31** (January 15, 2021); and **Exhibit 32** (September 6, 2025).  These EIPs stated that "[t]his agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located, without regard to the conflicts of laws rules of that state."  **Exhibit 30** at 5; **Exhibit 31** at 5; **Exhibit 32** at 6.  These EIPs included: (1) an arbitration agreement; (2) an option to opt out of the arbitration provision within a specified time period; (3) a jury trial waiver; (4) a class action waiver; and (5) a provision incorporating the AAA rules.  **Exhibit 30** at 3; **Exhibit 31** at 3; **Exhibit 32** at 3-4.  The arbitration agreement in the September 6, 2025 EIP provided that "**ALL CLAIMS AND DISPUTES BETWEEN YOU AND T-**

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 20

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**MOBILE WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THIS INCLUDES, BUT IS NOT LIMITED TO, CLAIMS AND DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, AND BILLS OR CHARGES.**"  **Exhibit 32** at 3 (emphasis in original).  The arbitration agreement in the January 15, 2021 EIPs stated that it requires arbitration of "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCUDING ANY BILLING DISPUTES."  **Exhibit 30** at 3; **Exhibit 31** at 3 (emphasis in original).

### Plaintiff Larry Kahhan

79.     T-Mobile's records reflect that Plaintiff Larry Kahhan is a current T-Mobile customer, who first activated service in February 2013.  At that time, T-Mobile's December 2011 Terms and Conditions were in effect. *See* **Exhibit T**.

80.     T-Mobile's records indicate that Plaintiff Kahhan activated his T-Mobile service at a Costco store.  As with other T-Mobile authorized retailers, Plaintiff Kahhan would have been required to sign a written agreement at the Costco store that incorporated by reference the T-Mobile Terms and Conditions in effect at the time in order to activate service.

81.     Per T-Mobile's regular practice and procedure, Plaintiff Kahhan would not have been able to activate the line of service in February 2013 if he did not sign a Service Agreement or otherwise accept and agree to T-Mobile's Terms and Conditions (including the arbitration agreement).

82.     As the primary account holder on his T-Mobile account, T-Mobile sent Plaintiff Kahhan an SMS text message that notified Plaintiff of the updated 2025 T&Cs, provided a link to the 2025 T&Cs, and encouraged him to read them, as discussed generally in Paragraph 11.  T-

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 21

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Mobile's records reflect that the SMS text message was delivered to active T-Mobile lines for Plaintiff Kahhan in July 2025.  Additionally, attached hereto as **Exhibit 3** is a true and correct copy of the first, second to last, and last pages of Plaintiff Kahhan's bill containing the notification of the updated 2025 T&Cs, which also provided a link to the 2025 T&Cs, and encouraged him to read them, as discussed in Paragraph 12.

83.    As the primary account holder on his T-Mobile account, T-Mobile sent Plaintiff Kahhan an email notifying him of the updated 2023 T&Cs and informing him that he accepted them by continuing to use or paying for his T-Mobile service, as discussed in Paragraphs 23 and 24.  T-Mobile's records reflect that the email message was delivered to Plaintiff Kahhan in April 2023.

84.    As the primary account holder on his T-Mobile account, T-Mobile sent Plaintiff Kahhan multiple forms of notification of the updated 2021 T&Cs as discussed in Paragraphs 36 through 42. T-Mobile's records reflect multiple SMS text messages containing a website link that directed him to the 2021 T&Cs were sent to Plaintiff Kahhan.  In addition, attached hereto as **Exhibit 13** is a true and correct copy of the first and last pages of Plaintiff Kahhan's bill containing the notification of the updated 2021 T&Cs.

85.    T-Mobile's records reflect that Plaintiff Kahhan paid for and used T-Mobile services after March 1, 2021, May 15, 2023, and August 1, 2025, which are the effective dates of the 2021 T&Cs, 2023 T&Cs, and 2025 T&Cs, respectively.  *See* **Exhibit 13**; **Exhibit 8**; **Exhibit 3**.

### Plaintiff Gerald Dwyer

86.    T-Mobile's records reflect that Plaintiff Gerald Dwyer is a current T-Mobile customer, who first activated service in August 2017.  At that time, T-Mobile's September 2016 Terms and Conditions were in effect. *See* **Exhibit J**.

87.    T-Mobile's records reflect that Plaintiff Dwyer paid for and used T-Mobile services after March 1, 2021, May 15, 2023, and August 1, 2025, which are the effective dates

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 22

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

of the 2021 T&Cs, 2023 T&Cs, and 2025 T&Cs, respectively. *See* **Exhibit 14**; **Exhibit 9**; **Exhibit 4**.

88.     T-Mobile's records reflect that Plaintiff Dwyer executed a Service Agreement on August 26, 2017.  Attached as **Exhibit 33** is a true and correct copy of the Service Agreement that Plaintiff Dwyer signed on August 26, 2017.  The Service Agreement incorporates by reference T-Mobile's Terms and Conditions.  **Exhibit 33** at 1.  The Service Agreement also informed Plaintiff Dwyer that: (1) he was agreeing to T-Mobile's Terms and Conditions and provided the website and phone number to access the then-current Terms and Conditions, which included an arbitration agreement; and (2) "**T-Mobile requires ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION**.  For details see www.T-Mobile.com/terms-conditions."  **Exhibit 33** at 1 (emphasis in original).

89.     T-Mobile's records reflect that Plaintiff Dwyer signed two EIPs with T-Mobile on December 31, 2019.  True and correct copies of the EIPs are attached hereto as **Exhibit 34** and **Exhibit 35**.  These EIPs stated that "[t]his agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located, without regard to the conflicts of laws rules of that state."  **Exhibit 34** at 5; and **Exhibit 35** at 5.  These EIPs included: (1) a requirement to arbitrate "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCUDING ANY BILLING DISPUTES"; (2) an option to opt out of the arbitration provision within a specified time period; (3) a jury trial waiver; (4) a class action waiver; and (5) a provision incorporating the AAA rules.  **Exhibit 34** at 3; **Exhibit 35** at 3 (emphasis in original).

## **Plaintiff Sam Marcus**

90.     T-Mobile's records reflect that Plaintiff Sam Marcus is a current T-Mobile customer, who first activated service in February 2016.  At that time, T-Mobile's February 2016 T&Cs were in effect.  *See* **Exhibit L**.

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 23

**Corr Cronin llp**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

91.     Per T-Mobile's regular practice and procedure, Plaintiff Marcus would not have been able to activate the line of service in February 2016 if he did not sign a Service Agreement or otherwise accept and agree to T-Mobile's Terms and Conditions (including the arbitration agreement).

92.     T-Mobile's records reflect that Plaintiff Marcus paid for and used T-Mobile services after March 1, 2021, May 15, 2023, and August 1, 2025, which are the effective dates of the 2021 T&Cs, 2023 T&Cs, and 2025 T&Cs, respectively.  *See* **Exhibit 15**; **Exhibit 10**; **Exhibit 5**.

93.     T-Mobile's records reflect that Plaintiff Marcus signed a purchase contract for a SIM card device on November 13, 2019.  Attached as **Exhibit 36** is a true and correct copy of the November 13, 2019 purchase contract that Plaintiff Marcus signed.  Plaintiff Marcus' purchase contract incorporates by reference T-Mobile's Terms and Conditions.  **Exhibit 36** at 1. The purchase contract informed Plaintiff Marcus that: (1) "[i]f you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions"; and (2) "T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS. For details see T-Mobile's Terms and Conditions at www.TMobile.com/terms-conditions." **Exhibit 36** at 1 (emphasis in original).

### Plaintiffs' Opt Out Requests

94.     Every version of T-Mobile's Terms and Conditions in effect since Plaintiffs first activated service has included a provision which informed customers that they could opt out of arbitration within a specified time period and that any opt out request received after the deadline would not be valid.  *See* **Exhibits A-B**, **D-U**.

95.     T-Mobile records and retains requests to opt out submitted by customers in the ordinary course of business.  Attached as **Exhibit 37** is a true and correct copy of extracted data

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 24

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

from T-Mobile's records of the opt out requests received from Plaintiffs.

96.    T-Mobile's records reflect that Plaintiffs Oddo, Hyaduck, Dwyer, and Kahhan submitted opt out requests in June 2024.

    a.    Plaintiff Oddo first activated his T-Mobile service in December 2011. Under the then-applicable T&Cs (July 2011 T&Cs), he was required to opt out "within thirty days" of activation. **Exhibit U** at 3. Plaintiff Oddo's June 2024 opt out attempt was more than 12 years after he first activated service.

    b.    Plaintiff Dwyer first activated his T-Mobile service in August 2017. Under the then-applicable T&Cs (September 2016 T&Cs), he was required to opt out "within 30 days from the earlier of the date [he] purchased a device from [T-Mobile] or the date [he] activated a new line of service." **Exhibit J** at 14. Plaintiff Dwyer's June 2024 opt out attempt was nearly 7 years after he first activated service.

    c.    Plaintiff Kahhan first activated his T-Mobile service in February 2013. Under the then-applicable T&Cs (December 2011 T&Cs), he was required to opt out "within 30 days from the date when [he] activated a new line of service." **Exhibit T** at 3. Plaintiff Kahhan's June 2024 opt out attempt was more than 11 years after he first activated service.

    d.    Plaintiff Hyaduck first activated his T-Mobile service in January 2021. Under the then-applicable T&Cs (September 2020 T&Cs), he was required to opt out "within 30 days from the earlier of the date [he] purchased a device from [T-Mobile] or the date [he] activated a new line of service." **Exhibit E** at 5. Plaintiff Hyaduck's June 2024 opt out attempt was more than 3 years after he first activated service.

        i.    Plaintiff Hyaduck's June 2024 opt out corresponds to line 770-471-2354. T-Mobile's records reflect that this line is not associated with T-Mobile

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 25

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   and is not a line on Hyaduck's T-Mobile account.

2       97.     T-Mobile's records reflect that Plaintiff Marcus has submitted eight opt out

3   requests over the course of his relationship with T-Mobile.

4           a.   Plaintiff Marcus submitted opt out requests in February 2017 after activating lines

5               847-736-9596, 312-543-4647, and 847-867-6525.  The line ending in 9596 was

6               activated in February 2016, when Marcus first activated service with T-Mobile.

7               When this line was activated, T-Mobile's February 2016 Terms and Conditions

8               were in effect.  The lines ending in 4647 and 6525 were activated in September

9               2016, when T-Mobile's September 2016 Terms and Conditions were in effect.

10              Under both the February 2016 and September 2016 Terms and Conditions, he

11              was required to opt out "within 30 days from the earlier of the date [he] purchased

12              a device from [T-Mobile] or the date [he] activated a new line of service."

13              **Exhibit L** at 13; **Exhibit J** at 14.  Plaintiff Marcus' opt out request for the line

14              ending in 9596 was nearly 1 year after the line was activated, and his opt out

15              requests for the lines ending in 4647 and 6525 were nearly 5 months after the

16              lines were activated.

17          b.   Plaintiff Marcus submitted opt out requests in January 2020 after activating lines

18              914-261-9621 and 224-322-1824.  These lines were activated in January 2020,

19              when T-Mobile's June 2019 Terms and Conditions were in effect.  Under the

20              June 2019 Terms and Conditions, he was required to opt out "within 30 days from

21              the earlier of the date [he] purchased a device from [T-Mobile] or the date [he]

22              activated a new line of service."  **Exhibit F** at 19.  These opt out requests were

23              2 months after Marcus purchased the SIM card device from T-Mobile reflected

24              in **Exhibit 36** on November 13, 2019.

25          c.   Plaintiff Marcus submitted an opt out request in February 2020 after activating

26              line 405-740-0201. This line was activated in February 2020, when T-Mobile's

27  DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 26

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

June 2019 Terms and Conditions were in effect.  Under the June 2019 Terms and Conditions, he was required to opt out "within 30 days from the earlier of the date [he] purchased a device from [T-Mobile] or the date [he] activated a new line of service." **Exhibit F** at 19.  This opt out request was 3 months after Marcus purchased the SIM card device from T-Mobile reflected in **Exhibit 36** on November 13, 2019.

d.  Plaintiff Marcus submitted an opt out request in February 2021 after activating line 646-410-3409.  This line was activated in January 2021, when T-Mobile's September 2020 Terms and Conditions were in effect.  Under the September 2020 Terms and Conditions, he was required to opt out "within 30 days from the earlier of the date [he] purchased a device from [T-Mobile] or the date [he] activated a new line of service." **Exhibit E** at 5.  This opt out request was more than 1 year after Marcus purchased the SIM card device from T-Mobile reflected in **Exhibit 36** on November 13, 2019.

e.  Plaintiff Marcus submitted an opt out request in May 2025 after activating line 224-349-9354.  This line was activated in April 2025, when T-Mobile's May 2023 Terms and Conditions were in effect.  Under T-Mobile's May 2023 Terms and Conditions, he was required to opt out "within 30 days from the earlier of the date [he] purchased a product or device from [T-Mobile] or the date [he] activated a new line of service." **Exhibit B** at 7.  This opt out request was more than five years after Marcus purchased the SIM card device from T-Mobile reflected in **Exhibit 36** on November 13, 2019.

98.    T-Mobile does not have a record of any opt out request submitted for 23 lines associated with Plaintiff Marcus' T-Mobile account, including 9 of his active lines.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 27

**Corr Cronin llp**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2   EXECUTED on *January 16, 2026*

3                           *Judy Sanchez*

4                          Judy Sanchez

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF JUDY SANCHEZ IN SUPPORT OF
T-MOBILE'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION
Case No. 2:25-cv-01651-RAJ – Page 28

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900