THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER ODDO, HARRY HYADUCK, SR., LARRY KAHHAN, GERALD DWYER, and SAM MARCUS, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | No. 2:25-cv-01651-RAJ<br><br>**DEFENDANT T-MOBILE'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>NOTED FOR CONSIDERATION:<br>April 7, 2026<br><br>ORAL ARGUMENT REQUESTED |



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF CONTENTS


I. INTRODUCTION ..... 6

II. ARGUMENT AND AUTHORITIES ..... 7

A. All Five Plaintiffs Accepted T-Mobile's T&Cs Through Conduct. ..... 7

B. It is Undisputed Three Plaintiffs Also Entered Into Written Agreements to Arbitrate. ..... 10

C. The Parties Agreed to Delegate All Remaining Issues to the Arbitrator. ..... 12

1. Plaintiffs' Opt-Out Challenges Do Not Implicate Contract Formation and Are Therefore Delegated. ..... 12

2. Even if the Court Considered Plaintiffs' Opt-Out Challenges, They Fail. ..... 14

a. Plaintiffs' Contracts Are Not Illusory Even if They Could Not Opt Out. ..... 14

b. It Was Not Impossible for Plaintiffs to Opt Out. ..... 15

III. CONCLUSION ..... 17




CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Agha v. Uber Techs., Inc.*,
730 F. Supp. 3d 756 (N.D. Ill. 2024) ........ 16

*Agyenim-Boatenghlstrom v. T-Mobile Ne. LLC*,
2025 WL 3277336 (E.D.N.C. Oct. 10, 2025) ........ 7, 8

*Ahlstrom v. DHI Mortgage Co.*,
2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) ........ 14

*Alaska Airlines, Inc. v. Carey*,
2008 WL 1767720 (W.D. Wash. Apr. 15, 2008) ........ 15

*Babaeva v. J. Crew Grp.*,
2023 WL 7346079 (N.D. Cal. Nov. 6, 2023) ........ 8

*Bacon v. Avis Budget Group*
959 F.3d 590 (3d Cir. 2020) ........ 11

*Bennett v. T-Mobile USA, Inc.*,
2024 WL229580 (W.D. Wash. Jan. 22, 2024) ........ 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 17

*Chambers v. Groome Transp. of Ala.*,
41 F. Supp. 3d 1327 (M.D. Ala. 2014) ........ 9

*Collett v. Ancestry DNA LLC*,
2019 WL 13253477 (N.D. Cal. Dec. 19, 2019) ........ 13, 14

*Dominguez v. T-Mobile USA, Inc.*,
2017 WL 8220598 (C.D. Cal. Jan. 18, 2017) ........ 11

*Duling v. Mid. Am Credit Union*,
530 P.3d 737 (Kan. Ct. App. 2022) ........ 13

*Franck v. T-Mobile USA, Inc.*,
2024 WL 4188971 (W.D. Wash. Sept. 12, 2024) ........ 7

*Gavrilovic v. T-Mobile U.S., Inc.*,
2022 WL 1086136 (E.D. Mich. March 26, 2022) ........ 7, 8

*Hernandez v. T-Mobile US, Inc.*,
No. 26-1430 (8th Cir.) ........ 12



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Hiotakis v. Celebrity Cruises Inc.*,
2011 WL 2148978 (S.D. Fla. May 31, 2011) .... 11

*In re T-Mobile 2022 Customer Data Security Breach Litigation*,
2026 WL 493643 (W.D. Mo. Feb. 9, 2026) .... 12, 13, 14

*In re Wyze Data Incident Litig.*,
2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) .... 11

*Ireland-Gordy v. Tile, Inc.*,
2026 WL 594859 (9th Cir. Mar. 3, 2026) .... 8

*Juarez v. T-Mobile USA, Inc.*,
2024 WL 5424366 (C.D. Cal. Aug. 23, 2024) .... 8

*Lend Lease (US) Constr. v. Zurich Am. Ins.*,
28 N.Y.3d 675 (2017) .... 15

*Lipsett v. Banco Popular North America*,
2022 WL 17547444 (S.D.N.Y. Dec. 9, 2022) .... 14

*Mohammad v. T-Mobile USA, Inc.*,
2018 WL 6249910 (E.D. Cal. Nov. 29, 2018) .... 9

*Ohanian v. Apple, Inc.*
2021 WL 871501 (S.D.N.Y. Mar. 9, 2021) .... 11, 12

*Paxson v. Live Nation Ent., Inc.*,
778 F. Supp. 3d 1113 (D. Nev. 2025) .... 9

*Pruett v. WESTconsin Credit Union*,
998 N.W. 2d 529 (Wis. Ct. App. 2023) .... 13

*Register.com v. Verio, Inc.*
356 F.3d 393 (2d Cir. 2004) .... 11

*Reno v. W. Cab Co.*,
2020 WL 5606897 (D. Nev. Sep. 18, 2020) .... 15

*Rendon v. T-Mobile USA, Inc.*,
No. 2:24-cv-01666-SPG, slip op. (C.D. Cal. Aug. 30, 2024) .... 7, 8

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) .... 11

*Sanfilippo v. Match Grp. LLC*,
2021 WL 4440337 (9th Cir. Sep. 28, 2021) .... 9

*Schuller v. Compass Mins. Int'l, Inc.*,
2025 WL 3640220 (D. Kan. Dec. 16, 2025) .... 15



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Thomas v. Barclays Bank Del.*,
2021 WL 9649851 (W.D. Wash. Mar. 2, 2021) ........ 17

*Trianco, LLC v. Int'l Bus. Machs. Corp.*,
271 F. App'x 198 (3d Cir. 2008) ........ 15

*Vargison v. Paula's Choice, LLC*,
2025 WL 346197 (W.D. Wash. Jan. 30, 2025) ........ 9

*Wallens v. Milliman Fin. Risk Mgmt. LLC*,
509 F. Supp. 3d 1204 (C.D. Cal. 2020) ........ 9

*Williams v. Insomnia Cookies*,
715 F. Supp. 3d 1205 (E.D. Mo. 2024) ........ 17



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. INTRODUCTION

The only issue before the Court is whether Plaintiffs formed a contract with T-Mobile containing an arbitration provision. T-Mobile need only prove one such contract for each Plaintiff. It has more than carried that burden, establishing that Plaintiffs repeatedly agreed to arbitration.

This Court's inquiry should begin and end with Plaintiffs' acceptance of T-Mobile's Terms and Conditions ("T&Cs") by using and paying for T-Mobile service after being notified such conduct constituted acceptance. Plaintiffs do not controvert T-Mobile's evidence of notice or their own acceptance. And there is no getting around the fact the T&Cs require arbitration.

T-Mobile also produced signed written contracts for Plaintiffs Oddo, Hyaduck, and Dwyer containing arbitration provisions that these Plaintiffs admit signing. Doc. 70 ("Motion" or "Mot."). With respect to Plaintiff Kahhan, T-Mobile also introduced pattern and practice evidence establishing he would have been required to sign a written agreement that incorporated the T&Cs in effect at the time in order to activate service, and Plaintiffs have not put forth evidence controverting that fact. These written contracts provide an additional ground for compelling arbitration.

With no question regarding contract formation, Plaintiffs' Opposition ("Opp."), Doc. 75, lobs a wide range of arguments as to why their contracts with T-Mobile should not be enforced, focusing on the arbitration opt-out provision in their contracts. None of those arguments impacts contract formation. Under the broad delegation provision in Plaintiffs' contracts, these arguments must be decided by an arbitrator. In any event, Plaintiffs' challenges to the enforceability of their contracts fail as a matter of law.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## II. ARGUMENT AND AUTHORITIES

### A. All Five Plaintiffs Accepted T-Mobile's T&Cs Through Conduct.

T-Mobile submitted undisputed evidence that all five Plaintiffs received notice of updates to T-Mobile's T&Cs—by email and SMS in 2021, by email in 2023, by SMS in 2025, and again on the first bill issued after the 2021 and 2025 updates. Doc. 72 ¶¶ 10–13, 23–24, 36–42. These notices informed Plaintiffs of the update and provided a link to the updated terms. *Id.* ¶¶ 11–12, 23–24, 36–42; Doc. 72-40. T-Mobile also submitted undisputed evidence that Plaintiffs ***accepted and assented to*** these updated T&Cs by continuing to use and pay for service after receiving those notices. Doc. 72 ¶¶ 13, 25, 42. Each Plaintiff assented to T-Mobile's 2021, 2023, and 2025 T&Cs through their conduct and should be compelled to arbitrate on that point alone.

The courts in the cases T-Mobile identified—*Franck*, *Gavrilovic*, *Rendon*, and *Agyenim-Boateng*—each concluded that continued use after notice of updated terms constituted assent to those terms and compelled the plaintiffs to arbitrate. Mot. at 20. Plaintiffs incorrectly argue that *Franck* has "no discussion by the court of acceptance of contractual terms through a person's conduct." Opp. at 11–12.[1] The court expressly held that Franck "assented to the most recent version of the T&Cs after making payments following T-Mobile's notifying its customers of the updated contractual language." 2024 WL 4188971, at *2 (W.D. Wash. Sept. 12, 2024). Plaintiffs also mischaracterize the *Gavrilovic* decision, where the court expressly found that the plaintiff "accepted T-Mobile's March 2021 Terms and Conditions . . . through his conduct" without regard to the fact he had a written contract with Sprint and without evidence that the plaintiff received T-Mobile's T&Cs when he first became a T-Mobile

[1] Plaintiffs misconstrue why T-Mobile cited *Franck*, arguing that if they "never had a reasonable opportunity to review the terms of the[ir] Service Agreements sufficient to constitute knowledge and assent, the fact that they later paid bills does not correct this contract formation deficiency." Opp. at 11. This later conduct—accepting updated T&Cs by continuing to use and pay for service after receiving notices of the new T&Cs—constitutes a wholly separate arbitration agreement, not "correction" of a prior agreement. Mot. at 18–23.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

customer. 2022 WL 1086136 (E.D. Mich. Mar. 26, 2022). And Plaintiffs do not address *Agyenim-Boateng* or *Rendon*, where courts found assent to T-Mobile's 2023 T&Cs based on clear, emailed notice of the updates and the customers' continued use. Mot. at 20. In *Agyenim-Boateng*, the court rejected the plaintiffs' argument that T-Mobile had to produce a signed agreement to arbitrate and held instead that the same clear email notice of the 2023 T&Cs update Plaintiffs received here, followed by continued use and payment, was enough to establish asset to T-Mobile's 2023 T&Cs. 2025 WL 3277336, at *4 (E.D.N.C. Oct. 10, 2025).

Plaintiffs' arguments against acceptance through conduct are limited and insufficient. Plaintiffs cite no authority that T-Mobile's update notices had to separately mention arbitration or explain how to opt out. Opp. at 12. They also identify no authority that T-Mobile's text messages and emails must inform Plaintiffs they had to read the updated T&Cs or "do anything else." *Id.* As discussed above, multiple courts have considered arguments just like these and compelled T-Mobile customers to arbitrate based on acceptance through conduct. And the Ninth Circuit recently enforced an agreement to arbitrate under similar circumstances. Specifically, the court held that the plaintiff assented to updated terms (including the arbitration and delegation provisions) based on the plaintiff's use of defendant's app after receiving an email titled "Updated Terms of Service and Privacy Policy," which hyperlinked to the updated terms and identified what constituted assent. *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026) (reversing and remanding to district court to compel arbitration and "leave all issues, including arbitrability and scope, to an arbitrator"). Other courts have done the same. *See, e.g.*, *Babaeva v. J. Crew Grp.*, 2023 WL 7346079, at *2 (N.D. Cal. Nov. 6, 2023) (finding plaintiff assented to defendant's updated terms and conditions, including arbitration requirement, after receiving email titled "Important updates to our Terms & Conditions"). Here, notifications T-Mobile sent to Plaintiffs similarly advised them of the updated terms, provided hyperlinks to review them, and informed them how to accept them.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Doc. 72 ¶¶ 10–13, 23–24, 36–42. Because each Plaintiff continued to use their service after receiving such notice, they assented to the terms and must arbitrate their claims.

Finally, Plaintiffs argue, again incorrectly, that nothing in the record establishes their claims are retroactively subject to the 2025 T&Cs, which they accepted after this lawsuit was originally filed. Opp. at 12, n.6. Whether Plaintiffs' pre-2025 claims fall within the scope of the arbitration provision of the 2025 T&Cs does not relate to assent but presents a separate question delegated to the arbitrator. *See Juarez v. T-Mobile USA, Inc.*, 2024 WL 5424366, at *4–7 (C.D. Cal. Aug. 23, 2024).[2] But as discussed in the Motion, *Vargison v. Paula's Choice, LLC*, No. 2:24-CV-00342-TL, 2025 WL 346197, at *2 (W.D. Wash. Jan. 30, 2025), confirms that a plaintiff may assent to updated terms during the pendency of litigation by continuing to use the service after notice of the update.[3] Plaintiffs cite no authority to the contrary, and there is no dispute that all five Plaintiffs received notice of the 2025 T&Cs and continued to use T-Mobile's service, thereby assenting to them. Accordingly, there can be no dispute that all five Plaintiffs assented to T-Mobile's updated T&Cs, including the arbitration provision, by continuing to use and pay for T-Mobile's service after receiving notice of those updates. This alone requires T-Mobile's Motion to be granted.

---

[2] Were the Court to decide this issue, courts throughout the country consistently have held that agreements with broad arbitration provisions apply to pre-existing claims even without specifically referencing them. *See, e.g.*, *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1213 (C.D. Cal. 2020); *Mohammad v. T-Mobile USA, Inc.*, 2018 WL 6249910, at *7 (E.D. Cal. Nov. 29, 2018); *Sanfilippo v. Match Grp. LLC*, 2021 WL 4440337, at *2 (9th Cir. Sep. 28, 2021); *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1345 (M.D. Ala. 2014).

[3] Plaintiffs make note of the fact that the newly created *Vargison* arbitration provision expressly referred to "disputes or claims that arise or have arisen". 2025 WL 346197, at *2. Opp. at 12 n.6. T-Mobile's arbitration provision is incredibly broad, such that it also encompasses preexisting claims. And Plaintiffs' offhand reference in a footnote to *Paxson v. Live Nation Ent., Inc.*, 778 F. Supp. 3d 1113, 1130 (D. Nev. 2025) has no bearing on the retroactive application of the 2025 T&Cs. Opp. at 12 n.6. The issue there was whether the arbitration agreement failed for lack of consideration because the defendant reserved the right to unilaterally change its terms of use without notice. This is not the case here, where Plaintiffs had notice of the updated T&Cs and accepted them through conduct.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**B. It is Undisputed Three Plaintiffs Also Entered Into Written Agreements to Arbitrate.**

T-Mobile also produced unrebutted evidence that Dwyer, Hyaduck, and Oddo signed Service Agreements, EIPs, and/or Leases.[4] Plaintiffs seemingly argue that any arbitration requirement appears only in T-Mobile's T&Cs, which were not properly incorporated into their signed agreements. Opp. at 8, 11. This is wrong. The contracts that these Plaintiffs admit signing also expressly require arbitration separate and apart from the T&Cs. Mot. at 9–11; Doc. 72, ¶¶ 72–74, 77–78, 88–89. Specifically, their Service Agreements state in bold, capitalized letters that "**T-MOBILE REQUIRES ARBITRATION OF DISPUTES**", and their EIPs and Leases similarly state in capitalized letters that "[W]E AND YOU EACH AGREE THAT . . . ALL CLAIMS . . . WILL BE RESOLVED BY BINDING ARBITRATION . . . ." Doc. 72 ¶¶ 72–74, 77–78, 88–89.[5]

Critically, these Plaintiffs admit signing these contracts. Opp. at 11. That is enough to establish these Plaintiffs' assent to arbitration; a party who signs a contract containing an arbitration provision is bound by it. Mot. at 18–19. Plaintiffs do not address the authorities T-Mobile cited compelling arbitration based on the same or nearly identical T-Mobile contracts. Opp. at 6–13.[6]

---

[4] Marcus submitted an affidavit claiming he did not purchase a SIM card and disputing his number of T-Mobile lines. Doc. 77 ¶¶ 1, 9. Even if true, Marcus agreed to arbitrate by accepting the 2021, 2023, and 2025 T&Cs. Mot. 18–20; Doc. 72 ¶¶ 11, 13, 24, 92. And he could not have activated T-Mobile service without signing a Service Agreement or accepting T-Mobile's T&Cs. Doc. 72 ¶ 91.

[5] Plaintiffs claim T-Mobile must produce their original Service Agreements, arguing that later agreements are insufficient to establish incorporation of the T&Cs into the originals. Opp. at 8. This ignores the fact that they have signed agreements containing standalone arbitration agreements. And Plaintiffs do not cite any law requiring T-Mobile to prove every contract Plaintiffs entered to enforce later contracts they do not deny forming.

[6] Plaintiffs seek to impose a burden that does not exist by arguing T-Mobile "does not provide any evidence that any sales associate informed them of the alleged terms of arbitration." Opp. at 9. "It was plaintiffs' duty to read the contract and obtain an explanation if they did not understand it." *Bennett v. T-Mobile USA, Inc.*, No. 2:22-cv-01805-LK, 2024 WL229580, at *13 (W.D. Wash. Jan. 22, 2024).

Plaintiffs also argue that "paying bills during the term of their contract does not alter any of this analysis" because they "never had a reasonable opportunity to review the terms of the Service Agreement." Opp. at 11. This argument confuses how Plaintiffs contracted with T-Mobile. Plaintiffs accepted the Service Agreements by



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs also misstate the law on incorporation by reference and cite inapposite cases to support the burdens they seek to impose on T-Mobile. *Bacon v. Avis Budget Group* addressed whether a signed contract contained an arbitration provision at all, not incorporation by reference. 959 F.3d 590, 600–02 (3d Cir. 2020). And Plaintiffs misstate *Register.com v. Verio, Inc.* by quoting the draft dissent and ignoring that the court found mutual assent by conduct. 356 F.3d 393, 401–04 (2d Cir. 2004).

T-Mobile also established that Kahhan would have been required to sign a written agreement that incorporated the T&Cs in effect at the time in order to activate service. Mot. at 18; Doc. 72 ¶ 80. Courts routinely rely on this type of evidence to establish contract formation. Mot. at 17; *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1192 (W.D. Wash. 2024); *In re Wyze Data Incident Litig.*, 2020 WL 6202724, at *3 (W.D. Wash. Oct. 22, 2020); *Dominguez v. T-Mobile USA, Inc.*, 2017 WL 8220598, at *5 n.3 (C.D. Cal. Jan. 18, 2017); *Hiotakis v. Celebrity Cruises Inc.*, 2011 WL 2148978, at *5 (S.D. Fla. May 31, 2011).

In response to this evidence (Opp. at 10), Plaintiffs argue that T-Mobile permits service without signed contracts, citing *Ohanian v. Apple, Inc.*, which involved a Russian national who bought a single SIM card and "unequivocally denied" ever receiving the form that would have alerted him to the arbitration agreement. 2021 WL 871501, at *3 (S.D.N.Y. Mar. 9, 2021), ECF No. 124 ¶¶ 8, 54. Kahhan does not present any evidence denying he signed a service agreement or accepted the T&Cs.[7]

---

signing them. Mot. at 17–18. They accepted the 2021, 2023, and 2025 T&Cs—which are separate agreements—by paying bills and continuing to use T-Mobile services. *Id.* at 18–23.

[7] Plaintiffs also rely on a recent decision from *In re T-Mobile 2022 Customer Data Security Breach Litigation*, 2026 WL 493643 (W.D. Mo. Feb. 9, 2026) ("*In re T-Mobile 2022*"). Opp. at 9. There, T-Mobile presented pattern and practice evidence as to the form of agreement that Plaintiff Smith would have signed. The court found that T-Mobile's argument that Smith would have been required to sign the agreement was "contradicted by the fact that the Service Agreements presented to the Court are unsigned." 2026 WL 493643, at *7. T-Mobile respectfully submits that case was wrongly decided and has appealed the ruling to the Eighth Circuit, *Hernandez v. T-Mobile US, Inc.*, No. 26-1430 (8th Cir.).



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

T-Mobile's evidence that these four Plaintiffs signed or would have signed contracts that require arbitration provide an additional basis for compelling arbitration of their claims.

**C. The Parties Agreed to Delegate All Remaining Issues to the Arbitrator.**

**1. Plaintiffs' Opt-Out Challenges Do Not Implicate Contract Formation and Are Therefore Delegated.**

The only issue for the Court to decide is contract formation because Plaintiffs' arbitration agreements include clear and unmistakable provisions delegating all other questions to the arbitrator. *See, e.g.*, Doc. 72 ¶¶ 20, 33. Plaintiffs do not dispute their arbitration agreements contain these broad delegation provisions. Mot. at 23–24; Opp. at 21–22. Rather, Plaintiffs respond by arguing that the delegation provision "is meaningless if the parties did not agree to it." Opp. at 21. But T-Mobile has established Plaintiffs entered contracts with T-Mobile requiring arbitration and delegating challenges just like the ones Plaintiffs make here to the arbitrator. Plaintiffs make a number of arguments regarding T-Mobile's opt-out provision and claim they amount to issues of contract formation. They do not.

Plaintiffs wrongly rely on the Western District of Missouri's recent decision in *In re T-Mobile 2022* granting in part and denying in part T-Mobile's motion to compel arbitration. There, thirteen plaintiffs argued their T-Mobile contracts were illusory because they could not opt out. The court refused to consider this argument for 11 of 13 plaintiffs, holding that "questions about the opt-out provision pertain to enforceability and are delegated to arbitration." 2026 WL 493643, at *6. The court did consider two plaintiffs' illusoriness challenges despite the delegation provision because it erroneously found T-Mobile's "sole evidence of assent" was their failure to opt out of arbitration; therefore, whether they could opt out was a formation question for the court. *Id.*

Plaintiffs seek to portray their arguments as falling within *In re T-Mobile 2022*'s narrow exception, suggesting T-Mobile's sole evidence of assent here is the failure to opt out. Opp. at 13. This argument fails for numerous reasons:



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- T-Mobile has ***never*** argued that Plaintiffs here assented to their contracts by failing to opt out of arbitration, much less that the failure to opt out is the "sole evidence of assent." T-Mobile's evidence of assent is that Plaintiffs signed contracts that include standalone arbitration agreements and acceptance of T-Mobile's 2021, 2023, and 2025 T&Cs through conduct. Mot. at 16–23. Even ignoring that it is incorrect, the *In re T-Mobile 2022* court's holding is factually inapposite to this case.
- The cases *In re T-Mobile 2022* cited are distinguishable for the same reason—each involved contracts that expressly specified failure to opt out as an act of acceptance. *Duling v. Mid. Am Credit Union*, 530 P.3d 737 (Kan. Ct. App. 2022) and *Pruett v. WESTconsin Credit Union*, 998 N.W. 2d 529 (Wis. Ct. App. 2023). None of Plaintiffs' contracts specifies failure to opt out as a means of acceptance. Mot. at 19–20; Doc. 72 ¶¶ 14, 27, 44.
- T-Mobile's opt-out provision allows customers to terminate their arbitration obligations ***after*** they assent to them. Opting out concerns "contract termination, not formation." *Collett v. Ancestry DNA LLC*, 2019 WL 13253477, at *3 (N.D. Cal. Dec. 19, 2019). Whether Plaintiffs could have or successfully did opt out of their arbitration agreements has nothing to do with whether Plaintiffs assented to arbitration in the first place; rather, it concerns whether they could avail themselves of a later opportunity to terminate the arbitration obligation.[8] Indeed, Plaintiffs acknowledge they were required to first agree to T-Mobile's arbitration agreement in order to opt out. Opp. at 17–18 ("By virtue of simply activating a line of service, a customer has already agreed to arbitration . . . .

---

[8] Plaintiffs' attempted distinctions of *Collett*, 2019 WL 13253477—to which *In re T-Mobile 2022* cited for its holding that opt out issues are generally delegated—and *Ahlstrom v. DHI Mortgage Co.*, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) fail because they rest on the same flawed premise that their illusoriness challenge concerns contract formation. Opp. at 21 n.13.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> [A] customer must accept [T-Mobile's] T&Cs before being given an opportunity to opt out.").

For these reasons, *In re T-Mobile 2022*'s inapplicable and erroneous "sole evidence" exception has no impact here.

In addition, Plaintiffs wrongly rely on *Lipsett v. Banco Popular North America*, 2022 WL 17547444 (S.D.N.Y. Dec. 9, 2022), to support their claim that they did not assent to arbitration because they could not opt out. Opp. at 15. *Lipsett* involved a unilateral modification to the plaintiffs' bank agreements without notice that added an arbitration agreement. 2022 WL 17547444, at *1–3. The court held that the plaintiff did not assent to the new arbitration provision because he was not notified of it or the opt out provision. It addressed the opt-out only because, under bank-specific case law governing unilateral contract modifications, the plaintiff's ability to opt out was "dispositive of whether a contract was formed." *Id.* at *7. That reasoning does not apply here, where Plaintiffs' ability to opt out bears on termination or enforceability—not formation.

**2. Even if the Court Considered Plaintiffs' Opt-Out Challenges, They Fail.**

If the Court addresses Plaintiffs' opt-out challenges (it should not), it should reject them. Plaintiffs' principal argument is their contracts are "illusory and not enforceable because it is impossible for customers to opt out." Opp. at 13. This is factually and legally wrong.

a. *Plaintiffs' Contracts Are Not Illusory Even if They Could Not Opt Out.*

Plaintiffs' arguments are built upon the incorrect premise that if they could not opt out effectively, then their contracts with T-Mobile are illusory. An illusory contract is one totally lacking consideration because it imposes no obligation to perform or makes performance totally discretionary for one of the parties. *See Alaska Airlines, Inc. v. Carey*, 2008 WL 1767720, at *1 (W.D. Wash. Apr. 15, 2008); *Lend Lease (US) Constr. v. Zurich Am. Ins.*, 28 N.Y.3d 675, 684 (2017); *Trianco, LLC v. Int'l Bus. Machs. Corp.*, 271 F. App'x 198, 203 (3d Cir. 2008);



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Reno v. W. Cab Co.*, 2020 WL 5606897, at *2 (D. Nev. Sep. 18, 2020). There can be no genuine dispute that Plaintiffs' contracts with T-Mobile are supported by consideration. Plaintiffs' contracts with T-Mobile include binding, bilateral obligations, and neither party has discretion to avoid those contractual obligations. Among other things, T-Mobile agrees to provide Plaintiffs with services, and Plaintiffs pay for those services.[9] This consideration supports the entire contract, including the arbitration provision. Indeed, Plaintiffs' payment for T-Mobile wireless phone service—as required by their contracts—is the bedrock of their claims. *See* Doc. 69 ¶ 53(b)(9)(e). Plaintiffs do not cite any case law finding that a contract unquestionably supported by consideration (like Plaintiffs' contracts here) is nonetheless illusory based on one party's purported inability to utilize one of the contract's provisions. This is not surprising: it is blackletter law that whether a contract is supported by consideration is not assessed on a provision-by-provision basis. *See Schuller v. Compass Mins. Int'l, Inc.*, 2025 WL 3640220, at *4 (D. Kan. Dec. 16, 2025). In fact, "a contract may be supported by adequate consideration, and hence be enforceable, even if one of the promises by a party is illusory." *Id.*

b. *It Was Not Impossible for Plaintiffs to Opt Out.*

Plaintiffs assert for a variety of reasons that it is impossible to comply with T-Mobile's opt-out provision. Opp. at 13–19. As explained above, these challenges are delegated to the arbitrator. But even if the Court were to consider them, they should be rejected. In particular, T-Mobile established all Plaintiffs failed to opt out within 30 days of their initial activation of service. Mot. at 27–30. That is not disputed. And failing to timely opt out of even one of their arbitration agreements requires Plaintiffs to arbitrate their claims because of the broad scope of their arbitration agreements. In their Opposition, Plaintiffs premise their opt-out challenges on their argument that, because they failed to timely opt out of their initial agreement, it is

[9] Likewise, for Plaintiffs' EIPs, T-Mobile provides Plaintiffs with mobile phones, and in exchange, Plaintiffs pay for those phones.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

impossible to opt-out of subsequent agreements. Opp. at 13–16. But Plaintiffs have skipped a step. Plaintiffs do not come forward with any evidence that it was impossible to timely opt out of their initial agreements. This should end the inquiry.[10]

Plaintiffs also claim it was impossible to opt out because they did not know they had the option to opt out. *Id.* at 15–16. T-Mobile has proven Plaintiffs had notice of and accepted T-Mobile's arbitration agreement. *See* Section II.A., *supra.* Plaintiffs do not come forward with any evidence supporting their claim of lack of knowledge. *See* Opp. at 15–16, 24. They thus have not created a genuine issue of fact sufficient to defeat T-Mobile's Motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Williams v. Insomnia Cookies*, 715 F. Supp. 3d 1205, 1212 (E.D. Mo. 2024) ("The nonmoving party . . . must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture.").

Next, Plaintiffs contend the opt-out receipt renders the provision illusory because it does not confirm timeliness of the opt out request. Opp. at 18–19. That argument also fails. The receipt merely acknowledges submission; an opt-out is either timely or untimely under the governing agreements. *See* Docs. 76-1–76-6. Plaintiffs cite no authority requiring real-time confirmation or explaining how an acknowledgment makes compliance "impossible." Opp. at 19.

Plaintiffs may not like the wording and effect of the opt-out provision they agreed to (often multiple times over), but they do not cite a single case requiring an opt provision to

---

[10] Hyaduck points to T-Mobile's merger with Sprint as the reason he claims it was impossible for him to opt out. Opp. at 23–24. His argument is a red herring. Hyaduck executed two Service Agreements with T-Mobile in January 2021 when he activated his T-Mobile service. Mot. at 18, 29; Doc. 72 ¶ 77. He had 30 days—until February 2021—to opt out under the plain terms of those agreements. Mot. at 29; Doc. 72 ¶ 96(d). Hyaduck did not submit an opt out request until June 2024—more than three years late. *Id.* Moreover, as for Marcus, because he did not timely opt out after first activating service, his claim that he timely opted out of other lines of service (Opp. at 25–26) is irrelevant. *See, e.g.*, *Agha v. Uber Techs., Inc.*, 730 F. Supp. 3d 756, 766 (N.D. Ill. 2024) ("The Court [] joins several other courts in concluding that the plaintiffs' subsequent opt-outs cannot undo their previous acceptance of an obligation to arbitrate if the express terms of the opt-out clause provide otherwise.").



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

include any particular terms. In fact, T-Mobile is not required to include an opt-out provision at all. *See Thomas v. Barclays Bank Del.*, 2021 WL 9649851, at *8 (W.D. Wash. Mar. 2, 2021) (holding opt-out provision not required for enforceable arbitration agreement and noting the plaintiff "failed to cite any authority demonstrating that the lack of an opt-out provision renders the arbitration provision procedurally unconscionable").

## III. CONCLUSION

Based on the foregoing, T-Mobile respectfully requests that the court grant T-Mobile's Motion to Compel Arbitration and Stay Action.

DATED: April 7, 2026

I certify that this memorandum contains 4,192 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Michael Moore*
Michael A. Moore, WSBA No. 27047
Thomas J. Bone, WSBA No. 43965
1015 Second Avenue, Floor 10
Seattle, WA 98104
Tel: (206) 625-8600
Fax: (206) 625-0900
mmoore@corrcronin.com
jbone@corrcronin.com

*s/ Kristine Brown*
Kristine McAlister Brown (*Pro Hac Vice*)
David Carpenter (*Pro Hac Vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
kristy.brown@alston.com
david.carpenter@alston.com

*Attorneys for Defendant T-Mobile USA, Inc.*