The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER ODDO, HARRY HYADUCK, SR., LARRY KAHHAAN and GERALD DWYER, SAM MARCUS, on behalf of themselves and all other persons similarly situated,

Plaintiffs,

v.

T-MOBILE USA INC,

Defendants.

No. 2:25-cv-01651-RAJ

**PLAINTIFFS' MOTION FOR RECONSIDERATION**

NOTE ON MOTION CALENDAR: October 13, 2026

## I. INTRODUCTION

Pursuant to LCR 7(h), Plaintiffs respectfully move for reconsideration of the Court's September 29, 2026 Order compelling arbitration, Dkt. 82 ("Order"). The Order compelled arbitration on the basis that Plaintiffs "accepted" T-Mobile's 2023 Terms & Conditions ("T&C")'s by continuing to use and pay for the wireless service they already had after T-Mobile sent them an email regarding arbitration. Order at 10–12. Four months after briefing on T-Mobile's motion closed, the Ninth Circuit rejected that theory of assent. In *Rickes v. Thermo Fisher Scientific, Inc.*, No. 25-5138, 2026 WL 2255243 (9th Cir. Aug. 5, 2026) (attached as Exhibit A), the Ninth Circuit held that proof a company emailed an arbitration agreement, coupled with the recipient's continuation of an existing relationship without



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

opting out, "is not enough to establish mutual assent." *Id.* at *1. Objective evidence that the recipient engaged with the email and took some affirmative step to view the terms and conditions is required.

The record here is materially indistinguishable. T-Mobile is able to show only that it sent an email to Plaintiffs. There is no evidence in the record that establishes that Plaintiffs opened it, clicked its hyperlink, or otherwise interacted with the 2023 T&Cs. The only conduct directed at T-Mobile's arbitration terms that the record does show is that each Plaintiff opted out of them. Based on the holding in *Rickes,* T-Mobile's motion must be denied.

Plaintiffs therefore ask the Court to vacate the Order and deny T-Mobile's motion to compel arbitration. Alternatively, Plaintiffs ask the Court to hold the motion in abeyance as to those Plaintiffs pending limited discovery and a trial on formation under 9 U.S.C. § 4.

## II. RELEVANT BACKGROUND

T-Mobile's motion was fully briefed on April 7, 2026. Dkt. 80. The Ninth Circuit decided *Rickes* on August 5, 2026. On September 29, 2026, this Court issued its decision compelling arbitration. This Court found that all five Plaintiffs accepted the 2023 T&Cs "through their conduct." Order at 10. This Court reasoned that the fact "[t]hat Plaintiffs may not have followed the link does not negate their assent." *Id.* at 12. The Court stated that because T-Mobile "emailed each Plaintiff" that its T&Cs would change on May 15, 2023, the email stated "[b]y using your service after that date, you'll agree to the updated Terms and Conditions," and the Plaintiffs continued to use and pay for service, Plaintiffs agreed to the terms and conditions. *Id.* at 11.

## III. ARGUMENT

Reconsideration is appropriate upon "a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h)(1). Here, reconsideration is



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

appropriate because Ninth Circuit authority that did not exist before briefing closed on T-Mobile's compels a different result than that reached by the Court here.

### A. *Rickes* is new authority that was unavailable when the Motion was briefed, and it runs counter to this Court's basis for compelling arbitration.

In *Rickes*, the Ninth Circuit rejected this Court's reasoning that taking no action in response to an email containing terms and conditions manifests asset. *See Rickes*, 2026 WL 2255243, at *1. But *Rickes*[1] was not decided until after Plaintiffs filed their opposition on March 10, 2026 and after the motion was fully briefed on April 7, 2026.

In *Rickes*, an employer moved to compel arbitration under an agreement it had distributed to its employees by email. *See Id.* The employer sent the plaintiff four emails regarding the agreement. *Id.* at *1. However, "its electronic records d[id] not show that Rickes viewed the emails, clicked the hyperlink to the agreement, or otherwise interacted with the arbitration materials." *Id.* The employer argued that the plaintiff accepted the agreement "by merely continuing his employment after failing to opt out within forty-five days." *Id.* The Ninth Circuit held that this "is not enough to establish mutual assent" because "silence alone does not constitute assent" and assent to electronically delivered terms is ordinarily inferred from "affirmative conduct such as 'clicking buttons,' 'checking boxes,' or otherwise interacting with the contractual terms." *Id.* at *1 (quoting *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017) & *Sellers v. JustAnswer LLC*,

---

[1] Although unpublished, it may be cited (*see* Ninth Cir. R. 36-3(b)), and the Order itself relied on unpublished Ninth Circuit dispositions in resolving this issue. Order at 11–12 (citing *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859 (9th Cir. Mar. 3, 2026), and *G.G. v. Valve Corp.*, 799 F. App'x 557 (9th Cir. 2020)). Moreover, while *Rickes* applied California law, it makes no difference here. Washington follows the objective manifestation theory of contracts and similarly requires mutual assent. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash.2d 171, 177–78 (2004). The Order itself drew its formation standard from *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 758 (9th Cir. 2022) and from *Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019), which applied Washington law, together with the Restatement. *See* Order at 10–11.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

73 Cal. App. 5th 444, 461 (2021)). The Ninth Circuit distinguished the employer's authorities because each involved "objective evidence of assent," such as a signed acknowledgment or "undisputed receipt and review of the agreement." *Id.* at *2. That same reasoning applies here because Defendant has failed to establish that there was any objective evidence of asset by Plaintiffs.

In *Rickes*, the Ninth Circuit relied on well-settled law that mutual asset requires more than just silence, and affirmative action must be taken to bind a party. *See id.* (citing *Norcia,* 845 F.3d at 1279 & *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 59 (9th Cir. 2014)). This Court's decision contradicts this very recent holding and the established case law that silence is not enough for assent.

Here, there is no evidence in the record that Plaintiffs took any action in response to T-Mobile's emails updating its terms and conditions. *First*, T-Mobile's records reflect that an email "was sent to each Plaintiff." Order at 12 (citing Dkt. 72 ¶¶ 24, 83). As in *Rickes*, T-Mobile offered no evidence that any of the Plaintiffs opened that one email, followed its link, or viewed the 2023 T&Cs.

*Second*, continuing to use and pay for existing phone service is no more a manifestation of assent than continuing to show up for work. Plaintiffs had been T-Mobile customers for years. *See* Order at 6–8. After May 15, 2023, they did exactly what they had done every month for years: continued to use their phone service. Conduct manifests assent only if the party "knows or has reason to know that the other party may infer from his conduct that he assents." Restatement (Second) of Contracts § 19(2) (1981). As this Court acknowledged, the consumer must "take some action that unambiguously manifests assent to [the terms]." Order at 11 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). Here, under new Ninth Circuit law, there is none. Paying a monthly phone bill is not an unambiguous manifestation of assent, as made clear by *Rickes*. T-Mobile cannot establish assent by declaring in its own email that continued use would constitute



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

agreement, without *also* demonstrating that Plaintiffs took some affirmative conduct such as 'clicking buttons,' 'checking boxes,' or otherwise interacting with the contractual terms." *See Rickes*, 2026 WL 2255243, at *3; *see also* Restatement (Second) of Contracts § 69 (silence and inaction operate as acceptance only in limited circumstances).

*Third*, the absence of a declaration from Plaintiffs does not fill the gap in T-Mobile's proof. The plaintiff in *Rickes* submitted a declaration, but it said only that he did not recall the emails and had not seen the agreement. *Rickes*, 2026 WL 2255243, at *1. The court did not rest its holding on that testimony. It held that continuing the relationship without additional affirmative conduct "is not enough to establish mutual assent," distinguishing such circumstance from those cases that contained "objective evidence of assent that is absent here." *Id.* at *2. T-Mobile's proofs suffer the same defect. T-Mobile "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence," and it failed to do so here. Order at 9 (quoting *Norcia*, 845 F.3d at 1283). To the extent that the Court impliedly required that Plaintiffs instead disprove receipt of T-Mobile's email was an error.

Nor do the Order's other authorities support a different result. The presumption that "parties to an agreement have read it," as stated in *G.G. v. Valve Corporation*, 799 F. App'x 557, 558, (9th Cir. 2020) does not address the issue of contract formation in the first instance. In *Ireland-Gordy v. Tile, Inc.,* 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026), the court recognized that some outward manifestation of assent through conduct must be found. But unlike here, where Plaintiffs did not interact with T-Mobile's website or an app, the plaintiffs in *Ireland-Gordy* downloaded and used an app on numerous occasions after the terms were updated, which the court found was assent to the updated terms. *Franck v. T-Mobile USA, Inc.*, 2024 WL 4188971, at *2 (W.D. Wash. Sept. 12, 2024), decided without the benefit of *Rickes*, did not dispute that assent manifested through continued use, but focused instead on whether the *pro se* plaintiff had the legal capacity. Finally, in *Rendon v.*



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*T-Mobile USA, Inc.*, 747 F. Supp. 3d 1314, 1319 (C.D. Cal. 2024), the court specifically considered that the plaintiff did not opt-out of arbitration, unlike Marcus here.

**B. The only affirmative conduct in the record is Plaintiffs' rejection of arbitration.**

*Rickes* also looks to what the recipient affirmatively did with respect to the arbitration terms. Here, every Plaintiff submitted a request to opt out of arbitration, and T-Mobile confirmed in writing that each request "has been processed." Order at 8; Dkt. 76-1 to 76-5. Marcus submitted eight opt-out requests, the first in 2017, and attests that he opted out of five lines within thirty days of activating them. Order at 8; Dkt. 77 ¶¶ 5–8; 76, Ex. E.

The Order mistakenly treated these opt-outs as attempts to terminate an existing agreement. Order at 13–14. That is not correct. Under *Rickes*, these opt-outs bear directly on whether a contract was formed at all. Mutual assent is determined objectively from the parties' outward manifestations. *Rickes*, 2026 WL 2255243, at *3. A company that has repeatedly received, processed, and confirmed a customer's written rejection of arbitration cannot reasonably infer from that customer's next bill payment that he has now agreed to arbitrate. If failing to opt out while continuing an existing relationship is not enough to manifest assent, as *Rickes* holds, then affirmatively opting out while continuing that relationship certainly cannot be.

Moreover, the Order found that Marcus' declaration does not affirmatively address the email notices sent by T-Mobile. Order at 12. The declaration does not need to – instead, it pointed out that Marcus affirmatively opted-out of arbitration, which establishes that an agreement to arbitrate was not formed.

**C. The Order should be vacated.**

Formation is always a question for the Court, even where the agreement contains a delegation clause. Order at 9 (citing *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021,



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

1030 (9th Cir. 2022)). Because assent cannot be found by continued use of service without more, Plaintiffs cannot be compelled to arbitrate their claims following *Rickes*. The Court should deny T-Mobile's motion and lift the stay.

Alternatively, if the Court concludes that receipt or review of the April 2023 email is material and disputed, it should proceed to trial on formation after permitting Plaintiffs to submit declarations and take the limited discovery they requested into T-Mobile's records. 9 U.S.C. § 4; *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670–72 (9th Cir. 2021).

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant the instant motion for reconsideration, vacate the Order, and deny T-Mobile's Motion to Compel Arbitration or, alternatively, set the question of contract formation for limited discovery and trial under 9 U.S.C. § 4.

* * *

I hereby certify that this memorandum contains 2,011 words in accordance with Local Civil Rules.

DATED this 13th day of October, 2026.

McNAUL EBEL PLLC

By: *s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA #52684
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-1816
kboyd@mcnaul.com

Greg M. Kohn, *pro hac vice*
Lisa R. Considine, *pro hac vice*
David J. DiSabato, *pro hac vice*
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
Phone: (973) 618-0400

gkohn@nagelrice.com
lconsidine@nagelrice.com
ddisabato@nagelrice.com

*Attorneys for Plaintiffs and the Proposed Class*